MICHAEL K. LINDSEY (Admitted *Pro Hac Vice*)
lindsey@gdllawfirm.com
JAMES M. SARNECKY (SBN 202465)
sarnecky@gdllawfirm.com
GAVRILOVICH, DODD & LINDSEY, LLP
4660 La Jolla Village Dr., Ste. 750
San Diego, CA 92122
Telephone: (858) 458-3607
Facsimile: (858) 458-9986

ROBERT F. RUYAK  (Admitted *Pro Hac Vice*)
robertr@ruyakcherian.com
BRITTANY V. RUYAK  (Admitted *Pro Hac Vice*)
brittanyr@ruyakcherian
RONALD R. WIELKOPOLSKI  (Admitted *Pro Hac Vice*)
ronw@ruyakcherian
RUYAKCHERIAN, LLP
1776 Eye St. NW, Suite 750
Washington, DC 20006
Telephone: (202) 838-1560

KORULA T. CHERIAN (SBN 133697)
sunnyc@ruyakcherian.com
ROBERT M. HARKINS, JR. (SBN 179525)
bobh@ruyakcherian.com
RUYAKCHERIAN, LLP
1936 University Ave, Suite 350
Berkeley, CA  94704
Telephone: (510) 944-0190

Attorneys for Plaintiff
CARUCEL INVESTMENTS, L.P.

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARUCEL INVESTMENTS, L.P., a Delaware limited partnership,<br><br>        Plaintiff,<br><br>   v.<br><br>NOVATEL WIRELESS, INC., a Delaware corporation; VERIZON COMMUNICATIONS INC., a Delaware corporation; and CELLCO PARTNERSHIP d/b/a VERIZON WIRELESS,<br><br>        Defendants. | Case No.  16-cv-0118-H-KSC<br><br>**PLAINTIFF CARUCEL INVESTMENTS, L.P.'S NOTICE OF APPEAL**<br><br>Judge: Hon. Marilyn L. Huff |

RuyakCherian LLP
1936 University Avenue, Suite 350
Berkeley, CA  94704

RuyakCherian LLP
1936 University Avenue, Suite 350
Berkeley, CA 94704

1   NOTICE IS HEREBY GIVEN that Plaintiff Carucel Investment, L.P.

2   ("Carucel") hereby appeals to the United States Court of Appeals for the Federal

3   Circuit from the following orders entered by the United States District Court for

4   the Northern District of California:

5   　　1.  Order Denying Plaintiff's Motion for Judgment as a Matter of Law

6   　　　　or, in the Alternative, for a New Trial, dated June 13, 2017 (Dkt.

7   　　　　356);

8   　　2.  Judgment in Favor of Defendants, dated Apr. 10, 2017 (Dkt. 336);

9   　　3.  Jury Instructions, dated Apr. 10, 2017 (Dkt. 334);

10   　　4.  Order: (1) Granting in Part and Denying in Part Plaintiff's Daubert

11   　　　　Motions [Doc. Nos. 163, 210]; (2) Denying Without Prejudice

12   　　　　Defendants' Daubert Motions [Doc. Nos. 154, 207]; (3) Denying

13   　　　　Without Prejudice Plaintiff's Motions in Limine; and [Doc. Nos.

14   　　　　232, 233, 234, 235.] (4) Granting in Part and Denying Part

15   　　　　Defendants' Motions in Limine [Doc. Nos. 238, 239, 240, 241, 242,

16   　　　　287] dated Apr. 3, 2017 (Dkt. 305); and

17   　　5.  Order Denying Without Prejudice Plaintiff's Daubert Motion to

18   　　　　Exclude Expert Testimony, dated Mar. 3, 2017 (Dkt. 227);

19   　　6.  Claim Construction Order, dated Sep. 19, 2016 (Dkt. 131); and

20   　　7.  Any order awarding costs in connection with the case.

21   Carucel also reserves the right to appeal from all preceding rulings and

22   orders merged into or subsumed by these orders.

23   Dated: July 13, 2017

24   　　　　　　　　　　　　　　　　*/s/ Robert Harkins*

25   　　　　　　　　　　　　　　　　Robert Harkins, Cal. Bar No. 179525
　　　　　　　　　　　　　　　　RuyakCherian LLP
26   　　　　　　　　　　　　　　　　1936 University Ave, Ste 350
　　　　　　　　　　　　　　　　Berkeley, CA 94704
27   　　　　　　　　　　　　　　　　Telephone: (510) 944-0190
　　　　　　　　　　　　　　　　bobh@ruyakcherian.com

28

# <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served this 13th day of July, 2017, with a copy of this document via the Court's EM/ECF system.  Any other counsel of record will be served by electronic mail, facsimile and/or first class mail on the same date.

*/s/ Robert Harkins*
Robert Harkins

RuyakCherian LLP
1936 University Ave, Ste 350
Berkeley, CA  94704
Telephone: (510) 944-0190
sunnyc@ruyakcherian.com

RuyakCherian LLP
1936 University Avenue, Suite 350
Berkeley, CA  94704

# U.S. District Court
## Southern District of California (San Diego)
## CIVIL DOCKET FOR CASE #: 3:16-cv-00118-H-KSC

Carucel Investments, L.P. v. Novatel Wireless, Inc. et al
Assigned to: Judge Marilyn L. Huff
Referred to: Magistrate Judge Karen S. Crawford
Case in other court: Florida Southern, 0:15-cv-61116
Cause: 35:0271 Patent Infringement

Date Filed: 01/19/2016
Date Terminated: 04/10/2017
Jury Demand: Defendant
Nature of Suit: 830 Patent
Jurisdiction: Federal Question

Early Neutral Evaluation Conference:
Case Management Conference:
Status Hearing:
Status Conference:
Mandatory Settlement Conference:

Settlement Conference: 12/14/2016
Settlement Disposition Conference:
Pretrial Conference:
Final Pretrial Conference:
Trial Date:

**Plaintiff**

**Carucel Investments, L.P.**
*a Delaware limited partnership*

represented by **Brittany Vacek Ruyak**
RuyakCherian LLP
1776 Eye Street NW
Suite 750
Washington, DC 20006
202-838-1565
Email: brittanyr@ruyakcherian.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**James M Sarnecky**
Gavrilovich, Dodd & Lindsey, LLP
4660 La Jolla Village Drive, Ste. 750
San Diego, CA 92122
United Sta
(760) 707-6031
Fax: (858) 458-9986
Email: sarnecky@gdllawfirm.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Michael K. Lindsey**
Gavrilovich, Dodd & Lindsey, LLP
3303 North Showdown Place
Tuscon, AZ 85749

520-760-8268
Email: lindsey@gdllawfirm.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Oliver Alan Ruiz**
Malloy & Malloy, P.L.
2800 S.W. 3rd Avenue
Miami, FL 33129
305-858-8000
Fax: 305-858-0008
Email: oruiz@malloylaw.com
*TERMINATED: 04/04/2016*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Robert Francis Ruyak**
RuyakCherian LLP
1776 Eye Street NW
Suite 750
Washington, DC 20006
202-838-1561
Email: robertr@ruyakcherian.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Ronald R Wielkopolski**
RuyakCherian LLP
1776 Eye Street NW
Suite 750
Washington, DC 20006
202-838-1561
Email: ronw@ruyakcherian.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Don Francis Livornese**
Ruyak Cherian LLP
222 N. Sepulveda Blvd
Suite 2000
El Segundo, CA 90245
(310)586-7689
Email: donl@ruyakcherian.com
*ATTORNEY TO BE NOTICED*

**Korula T Cherian**
RuyakCherian LLP
1936 University Avenue
Suite 350
Berkeley, CA 94704
510-944-0185
Email: sunnyc@ruyakcherian.com
*ATTORNEY TO BE NOTICED*

**Marc LeRoy Pinckney**
8677 Villa La Jolla Drive, Stephanie 230
La Jolla, CA 92037
858-777-3090
Email: marcpinckney@gmail.com
*ATTORNEY TO BE NOTICED*

**Robert Michael Harkins , Jr**
RuyakCherian LLP
1936 University Ave, Ste 350
Berkeley, CA 94704
(510) 944-0187
Email: bobh@ruyakcherian.com
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Novatel Wireless Inc**              represented by    **Amardeep Lal Thakur**
*a Delaware corporation*                                Quinn Emanuel Urquhart & Sullivan LLP
                                                        865 nSouth Figueroa Street
                                                        10th Floor
                                                        Los Angeles, CA 90017
                                                        (213) 443-3000
                                                        Fax: (213) 443-3100
                                                        Email: amarthakur@quinnemanuel.com
                                                        *LEAD ATTORNEY*
                                                        *PRO HAC VICE*
                                                        *ATTORNEY TO BE NOTICED*

                                                        **Branden Stein**
                                                        Quinn Emanuel Uraquhart & Sullivan, LLP
                                                        500 W. Madison Street
                                                        Suite 2450
                                                        Chicago, IL 60661
                                                        312-705-7400
                                                        Email: brandenstein@quinnemanuel.com
                                                        *TERMINATED: 05/13/2016*
                                                        *LEAD ATTORNEY*

*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Bruce R Zisser**
Quinn Emanuel Urquhart and Sullivan
865 South Figueroa Street
10th Floor
Los Angeles, CA 90017-2543
(213)443-3000
Fax: (213)443-3100
Email: brucezisser@quinnemanuel.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**David Michael Grable**
Quinn Emanuel Uraquhart & Sullivan, LLP
865 S. Figueroa St.
10th Floor
Los Angeles, CA 90017
213-443-3000
Fax: 213-443-3100
Email: davegrable@quinnemanuel.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Edward Maurice Mullins**
Astigarraga Davis Mullins & Grossman
1001 Brickell Bay Drive
9th Floor
Miami, FL 33131-2847
305-372-8282
Fax: 372-8202
Email: emullins@astidavis.com
*TERMINATED: 01/20/2016*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Ana Maria Barton**
Astigarraga Davis Mullins , Grossman, P.A.
1001 Brickell Bay Drive
9th Floor
Miami, FL 33131
(305) 372-8282
Fax: (305) 372-8202
Email: abarton@astidavis.com
*TERMINATED: 01/20/2016*
*ATTORNEY TO BE NOTICED*

**Daryl Marc Crone**
Crone Hawxhurst LLP
10880 Wilshire Boulevard, Ste. 1150
Los Angeles, CA 90024
(310)893-5150
Fax: (310)893-5195
Email: daryl@cronehawxhurst.com
*ATTORNEY TO BE NOTICED*

**Joshua Lee Sohn**
Quinn Emanuel Urqhuart and Sullivan LLP
777 Sixth Street NW
11th Floor
Washington, DC 20001
202-538-8000
Email: joshuasohn@quinnemanuel.com
*ATTORNEY TO BE NOTICED*

**Viola Trebicka**
Quinn Emanuel Uraquhart & Sullivan, LLP
865 S. Figueroa St.
10th Floor
Los Angeles, CA 90017
213-443-3180
Fax: 213-443-3100
Email: violatrebicka@quinnemanuel.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**AT&T Mobility LLC**            represented by    **Amardeep Lal Thakur**
*a Delaware limited liability company*                   (See above for address)
*TERMINATED: 12/09/2016*                               *LEAD ATTORNEY*
                                                       *PRO HAC VICE*
                                                       *ATTORNEY TO BE NOTICED*

                                                  **Bruce R Zisser**
                                                  (See above for address)
                                                  *LEAD ATTORNEY*
                                                  *ATTORNEY TO BE NOTICED*

                                                  **Edward Maurice Mullins**
                                                  (See above for address)
                                                  *TERMINATED: 01/20/2016*
                                                  *LEAD ATTORNEY*
                                                  *ATTORNEY TO BE NOTICED*

                                                  **Ana Maria Barton**
                                                  (See above for address)

*TERMINATED: 01/20/2016*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Verizon Communications Inc.**          represented by   **Amardeep Lal Thakur**
*a Delaware corporation*                                 (See above for address)
                                                         *LEAD ATTORNEY*
                                                         *PRO HAC VICE*
                                                         *ATTORNEY TO BE NOTICED*

                                                         **Branden Stein**
                                                         (See above for address)
                                                         *TERMINATED: 05/13/2016*
                                                         *LEAD ATTORNEY*
                                                         *PRO HAC VICE*
                                                         *ATTORNEY TO BE NOTICED*

                                                         **Bruce R Zisser**
                                                         (See above for address)
                                                         *LEAD ATTORNEY*
                                                         *ATTORNEY TO BE NOTICED*

                                                         **David Michael Grable**
                                                         (See above for address)
                                                         *LEAD ATTORNEY*
                                                         *ATTORNEY TO BE NOTICED*

                                                         **Edward Maurice Mullins**
                                                         (See above for address)
                                                         *TERMINATED: 01/20/2016*
                                                         *LEAD ATTORNEY*
                                                         *ATTORNEY TO BE NOTICED*

                                                         **Gail Ann McQuilkin**
                                                         Kozyak Tropin & Throckmorton
                                                         2525 Ponce de Leon Boulevard
                                                         Suite 900
                                                         Coral Gables, FL 33134-6036
                                                         305-372-1800
                                                         Fax: 372-3508
                                                         Email: gam@kttlaw.com
                                                         *TERMINATED: 01/07/2016*
                                                         *LEAD ATTORNEY*
                                                         *ATTORNEY TO BE NOTICED*

                                                         **Todd M. Nosher**
                                                         Venable, LLP
                                                         1270 Avenue of the Americas

Twenty-Fourth Floor
New York, NY 10020
212-307-5500
Email: tmnosher@venable.com
*TERMINATED: 01/07/2016*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Ana Maria Barton**
(See above for address)
*TERMINATED: 01/20/2016*
*ATTORNEY TO BE NOTICED*

**Joshua Lee Sohn**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Viola Trebicka**
(See above for address)
*ATTORNEY TO BE NOTICED*

<u>**Defendant**</u>

**Tigerdirect, Inc.**
*a Florida corporation*
*TERMINATED: 09/17/2015*

<u>**Defendant**</u>

**Cellco Partnership**                    represented by    **Amardeep Lal Thakur**
*a Delaware general partnership*                            (See above for address)
*TERMINATED: 12/16/2015*                                    *LEAD ATTORNEY*
                                                            *ATTORNEY TO BE NOTICED*

                                                           **Bruce R Zisser**
                                                           (See above for address)
                                                           *LEAD ATTORNEY*
                                                           *ATTORNEY TO BE NOTICED*

                                                           **David Michael Grable**
                                                           (See above for address)
                                                           *LEAD ATTORNEY*
                                                           *ATTORNEY TO BE NOTICED*

                                                           **Edward Maurice Mullins**
                                                           (See above for address)
                                                           *TERMINATED: 01/20/2016*
                                                           *ATTORNEY TO BE NOTICED*

**Joshua Lee Sohn**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Viola Trebicka**
(See above for address)
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 05/27/2015 | 1 | COMPLAINT *FOR PATENT INFRINGEMENT* against All Defendants. Filing fees $ 400.00 receipt number 113C-7769095, filed by Carucel Investments, L.P.. (Attachments: # 1 Civil Cover Sheet, # 2 Summon(s) - Novatel Wireless, Inc., # 3 Summon(s) - AT&T Mobility LLC, # 4 Summon(s) - Verizon Communications, Inc., # 5 Summon(s) - TigerDirect, Inc., # 6 Exhibit A - U.S. Patent No. 7,221,904 (the 904 Patent), # 7 Exhibit B - U.S. Patent No. 7,848,701 (the 701 Patent), # 8 Exhibit C - U.S. Patent No. 7,979,023 (the 023 Patent), # 9 Exhibit D - U.S. Patent No. 8,463,177 (the 177 Patent), # 10 Exhibit E - U.S. Patent No. 8,718,543 (the 543 Patent), # 11 Exhibit F - U.S. Patent No. 8,849,191 (the 191 Patent))(Ruiz, Oliver)[Transferred from Florida Southern on 1/19/2016.] (Entered: 05/27/2015) |
| 05/27/2015 | 2 | Judge Assignment to Judge Beth Bloom (srd) [Transferred from Florida Southern on 1/19/2016.] (Entered: 05/28/2015) |
| 05/27/2015 | 3 | Clerks Notice pursuant to 28 USC 636(c). Parties are hereby notified that the U.S. Magistrate Judge Alicia O. Valle is available to handle any or all proceedings in this case. If agreed, parties should complete and file the attached form. (srd) [Transferred from Florida Southern on 1/19/2016.] (Entered: 05/28/2015) |
| 05/27/2015 | 4 | FORM AO 120 SENT TO DIRECTOR OF U.S. PATENT AND TRADEMARK (Attachments: # 1 Civil Cover Sheet, Complaint, Summons, and Exhibits) (srd) [Transferred from Florida Southern on 1/19/2016.] (Entered: 05/28/2015) |
| 05/28/2015 | 5 | Summons Issued as to AT&T Mobility LLC, Novatel Wireless, Inc., TigerDirect, Inc., and Verizon Communications, Inc.. (srd) [Transferred from Florida Southern on 1/19/2016.] (Entered: 05/28/2015) |
| 07/29/2015 | 6 | ORDER Requiring Plaintiff to file Proof of Service within seven (7) days of perfecting service upon Defendants. Signed by Judge Beth Bloom on 7/29/2015. (ls) [Transferred from Florida Southern on 1/19/2016.] (Entered: 07/29/2015) |
| 09/03/2015 | 7 | SUMMONS (Affidavit) Returned Executed on 1 Complaint,, with a 21 day response/answer filing deadline by Carucel Investments, L.P.. Novatel Wireless, Inc. served on 9/1/2015, answer due 9/22/2015. (Ruiz, Oliver) [Transferred from Florida Southern on 1/19/2016.] (Entered: 09/03/2015) |
| 09/03/2015 | 8 | SUMMONS (Affidavit) Returned Executed on 1 Complaint,, with a 21 day response/answer filing deadline by Carucel Investments, L.P.. AT&T Mobility LLC served on 9/1/2015, answer due 9/22/2015. (Ruiz, Oliver) [Transferred from Florida Southern on 1/19/2016.] (Entered: 09/03/2015) |

| 09/03/2015 | 9 | SUMMONS (Affidavit) Returned Executed on 1 Complaint,, with a 21 day response/answer filing deadline by Carucel Investments, L.P.. Verizon Communications, Inc. served on 9/1/2015, answer due 9/22/2015. (Ruiz, Oliver) [Transferred from Florida Southern on 1/19/2016.] (Entered: 09/03/2015) |
| --- | --- | --- |
| 09/04/2015 | 10 | ORDER REQUIRING SCHEDULING REPORT AND CERTIFICATES OF INTERESTED PARTIES ( -Joint Scheduling Report due by 10/9/2015) Signed by Judge Beth Bloom on 9/3/2015. (ail) [Transferred from Florida Southern on 1/19/2016.] (Entered: 09/04/2015) |
| 09/15/2015 | 11 | NOTICE of Voluntary Dismissal *Without Prejudice of Defendant TigerDirect, Inc. Only* by Carucel Investments, L.P. (Ruiz, Oliver) [Transferred from Florida Southern on 1/19/2016.] (Entered: 09/15/2015) |
| 09/16/2015 | 12 | Agreed MOTION for Extension of Time to respond to complaint re 1 Complaint,, by AT&T Mobility LLC, Novatel Wireless, Inc., Verizon Communications, Inc.. Attorney Edward Maurice Mullins added to party AT&T Mobility LLC(pty:dft), Attorney Edward Maurice Mullins added to party Novatel Wireless, Inc.(pty:dft), Attorney Edward Maurice Mullins added to party Verizon Communications, Inc.(pty:dft). Responses due by 10/5/2015 (Attachments: # 1 Text of Proposed Order)(Mullins, Edward)[Transferred from Florida Southern on 1/19/2016.] (Entered: 09/16/2015) |
| 09/17/2015 | 13 | PAPERLESS ORDER granting 12 Motion for Extension of Time to file Answer/Response to Complaint by 10/22/2015. Signed by Judge Beth Bloom (BB) [Transferred from Florida Southern on 1/19/2016.] (Entered: 09/17/2015) |
| 09/17/2015 | 14 | ORDER of Dismissal re 11 Notice of Voluntary Dismissal filed by Carucel Investments, L.P., Dismissing without prejudice Defendant TigerDirect, Inc. (a Florida corporation). Signed by Judge Beth Bloom on 9/17/2015. (ls) [Transferred from Florida Southern on 1/19/2016.] (Entered: 09/17/2015) |
| 09/17/2015 | 15 | MOTION to Appear Pro Hac Vice, Consent to Designation, and Request to Electronically Receive Notices of Electronic Filing for Michael K. Lindsey. Filing Fee $ 75.00. Receipt # 108396. (ksa) [Transferred from Florida Southern on 1/19/2016.] (Entered: 09/18/2015) |
| 09/18/2015 | 16 | PAPERLESS ORDER granting 15 Motion to Appear Pro Hac Vice, Consent to Designation, and Request to Electronically Receive Notices of Electronic Filing. Signed by Judge Beth Bloom (BB) [Transferred from Florida Southern on 1/19/2016.] (Entered: 09/18/2015) |
| 09/22/2015 | 17 | MOTION to Appear Pro Hac Vice, Consent to Designation, and Request to Electronically Receive Notices of Electronic Filing for Branden Stein. Filing Fee $ 75.00. Receipt # 108680. (ksa) [Transferred from Florida Southern on 1/19/2016.] (Entered: 09/23/2015) |
| 09/24/2015 | 18 | PAPERLESS ORDER granting 17 Motion to Appear Pro Hac Vice, Consent to Designation, and Request to Electronically Receive Notices of Electronic Filing. Signed by Judge Beth Bloom (BB) [Transferred from Florida Southern on 1/19/2016.] (Entered: 09/24/2015) |

| 09/24/2015 | | Set/Reset Answer Due Deadline as per DE 12 : AT&T Mobility LLC response due 10/22/2015; Novatel Wireless, Inc. response due 10/22/2015; Verizon Communications, Inc. response due 10/22/2015. (lk) [Transferred from Florida Southern on 1/19/2016.] (Entered: 09/24/2015) |
|---|---|---|
| 09/24/2015 | 19 | MOTION to Appear Pro Hac Vice, Consent to Designation, and Request to Electronically Receive Notices of Electronic Filing for Amar L. Thakur. Filing Fee $ 75.00. Receipt # 108821. (ksa) [Transferred from Florida Southern on 1/19/2016.] (Entered: 09/24/2015) |
| 09/24/2015 | 20 | MOTION to Appear Pro Hac Vice, Consent to Designation, and Request to Electronically Receive Notices of Electronic Filing for Bruce R. Zisser. Filing Fee $ 75.00. Receipt # 108822. (ksa) [Transferred from Florida Southern on 1/19/2016.] (Entered: 09/24/2015) |
| 09/24/2015 | 21 | PAPERLESS ORDER granting 19 Motion to Appear Pro Hac Vice, Consent to Designation, and Request to Electronically Receive Notices of Electronic Filing. Signed by Judge Beth Bloom (BB) [Transferred from Florida Southern on 1/19/2016.] (Entered: 09/24/2015) |
| 09/24/2015 | 22 | PAPERLESS ORDER granting 20 Motion to Appear Pro Hac Vice, Consent to Designation, and Request to Electronically Receive Notices of Electronic Filing. Signed by Judge Beth Bloom (BB) [Transferred from Florida Southern on 1/19/2016.] (Entered: 09/24/2015) |
| 10/05/2015 | 23 | MOTION to Appear Pro Hac Vice, Consent to Designation, and Request to Electronically Receive Notices of Electronic Filing for James M. Sarnecky. Filing Fee $ 75.00. Receipt # 109371. (ksa) [Transferred from Florida Southern on 1/19/2016.] (Entered: 10/06/2015) |
| 10/06/2015 | 24 | PAPERLESS ORDER granting 23 Motion to Appear Pro Hac Vice, Consent to Designation, and Request to Electronically Receive Notices of Electronic Filing. Signed by Judge Beth Bloom (BB) [Transferred from Florida Southern on 1/19/2016.] (Entered: 10/06/2015) |
| 10/09/2015 | 25 | SCHEDULING REPORT - **Rule 16.1** by Carucel Investments, L.P. (Attachments: # 1 Text of Proposed Order)(Ruiz, Oliver) [Transferred from Florida Southern on 1/19/2016.] (Entered: 10/09/2015) |
| 10/09/2015 | 26 | Corporate Disclosure Statement by Carucel Investments, L.P. (Ruiz, Oliver) [Transferred from Florida Southern on 1/19/2016.] (Entered: 10/09/2015) |
| 10/20/2015 | 27 | Statement of: Corporate Disclosure by AT&T Mobility LLC, Novatel Wireless, Inc. (Mullins, Edward) [Transferred from Florida Southern on 1/19/2016.] (Entered: 10/20/2015) |
| 10/21/2015 | 28 | Clerks Notice to Filer re 27 Statement. **Wrong Event Selected - Document is a Corporate Disclosure Statement**; CORRECTIVE ACTION REQUIRED - The Filer must File a Notice of Striking, then refile the document using the Certificate of Interested Parties/Corporate Disclosure Statement event and ensure all applicable parties are added. (asl) [Transferred from Florida Southern on 1/19/2016.] (Entered: 10/21/2015) |

| 10/21/2015 | 29 | NOTICE of Striking 27 Statement filed by AT&T Mobility LLC, Novatel Wireless, Inc. by AT&T Mobility LLC, Novatel Wireless, Inc. (Mullins, Edward) [Transferred from Florida Southern on 1/19/2016.] (Entered: 10/21/2015) |
|---|---|---|
| 10/21/2015 | 30 | Certificate of Interested Parties/Corporate Disclosure Statement by AT&T Mobility LLC, Novatel Wireless, Inc. identifying Corporate Parent BellSouth Mobile Data, Inc., Corporate Parent SBC Long Distance, LLC, Corporate Parent SBC Tower Holdings LLC for AT&T Mobility LLC (Mullins, Edward) [Transferred from Florida Southern on 1/19/2016.] (Entered: 10/21/2015) |
| 10/21/2015 | 31 | Agreed MOTION for Extension of Time to File Response/Reply/Answer *to the Complaint* by AT&T Mobility LLC, Novatel Wireless, Inc., Verizon Communications, Inc.. (Mullins, Edward) [Transferred from Florida Southern on 1/19/2016.] (Entered: 10/21/2015) |
| 10/21/2015 | 32 | PAPERLESS ORDER granting 31 Motion for Extension of Time to File Response/Answer to Complaint or Other Case Initiating Document by All Defendants. Response/Answer due by 10/29/2015. Re: 1 Complaint, filed by Carucel Investments, L.P.. Signed by Judge Beth Bloom (BB) [Transferred from Florida Southern on 1/19/2016.] (Entered: 10/21/2015) |
| 10/22/2015 | 33 | NOTICE of Attorney Appearance by Gail Ann McQuilkin on behalf of Verizon Communications, Inc.. Attorney Gail Ann McQuilkin added to party Verizon Communications, Inc(pty:dft). (McQuilkin, Gail) [Transferred from Florida Southern on 1/19/2016.] (Entered: 10/22/2015) |
| 10/22/2015 | 34 | SCHEDULING ORDER: ( Jury Trial set for 2/6/2017 09:00 AM in Miami Division before Judge Beth Bloom., Calendar Call set for 1/31/2017 01:15 PM in Miami Division before Judge Beth Bloom., Amended Pleadings due by 12/21/2015., Discovery due by 10/7/2016., Expert Discovery due by 10/7/2016., Joinder of Parties due by 12/21/2015., Mediation Deadline 10/21/2016., In Limine Motions due by 12/30/2016., Dispositive Motions due by 10/28/2016., Motions due by 10/28/2016., Pretrial Stipulation due by 12/30/2016.), ORDER REFERRING CASE to Mediation., ORDER REFERRING CASE to Magistrate Judge Alicia O. Valle for Discovery Matters. Signed by Judge Beth Bloom on 10/22/2015. (ls) [Transferred from Florida Southern on 1/19/2016.] (Entered: 10/22/2015) |
| 10/22/2015 | 35 | MOTION to Change Venue */Transfer and Accompanying Memorandum of Law* by AT&T Mobility LLC, Novatel Wireless, Inc., Verizon Communications, Inc.. Responses due by 11/9/2015 (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C)(Mullins, Edward). Added MOTION to Sever, MOTION to Stay on 10/23/2015 (asl). [Transferred from Florida Southern on 1/19/2016.] (Entered: 10/22/2015) |
| 10/22/2015 | 38 | MOTION to Appear Pro Hac Vice, Consent to Designation, and Request to Electronically Receive Notices of Electronic Filing for Todd M. Nosher. Filing Fee $ 75.00. Receipt # 110337. (ksa) [Transferred from Florida Southern on 1/19/2016.] (Entered: 10/26/2015) |
| 10/23/2015 | 36 | Clerks Notice to Filer re 35 MOTION to Change Venue */Transfer or, Alternatively, Sever and Stay Claims Against AT&T, and Accompanying Memorandum of Law.* **Motion with Multiple Reliefs Filed as One Relief**; ERROR - The Filer selected only one relief event and failed to select the additional corresponding events for each relief |

| | | requested in the motion. The docket entry was corrected by the Clerk. It is not necessary to refile this document but future filings must comply with the instructions in the CM/ECF Attorney User's Manual. (asl) [Transferred from Florida Southern on 1/19/2016.] (Entered: 10/23/2015) |
|---|---|---|
| 10/23/2015 | 37 | NOTICE by AT&T Mobility LLC, Novatel Wireless, Inc., Verizon Communications, Inc. *of Correction of Email Address* (Mullins, Edward) [Transferred from Florida Southern on 1/19/2016.] (Entered: 10/23/2015) |
| 10/27/2015 | 39 | PAPERLESS ORDER granting 38 Motion to Appear Pro Hac Vice, Consent to Designation, and Request to Electronically Receive Notices of Electronic Filing. Signed by Judge Beth Bloom (BB) [Transferred from Florida Southern on 1/19/2016.] (Entered: 10/27/2015) |
| 10/29/2015 | 40 | Corporate Disclosure Statement by Verizon Communications, Inc. (McQuilkin, Gail) [Transferred from Florida Southern on 1/19/2016.] (Entered: 10/29/2015) |
| 10/29/2015 | 41 | ANSWER and Affirmative Defenses to Complaint with Jury Demand by Verizon Communications, Inc.. (McQuilkin, Gail) [Transferred from Florida Southern on 1/19/2016.] (Entered: 10/29/2015) |
| 10/29/2015 | 42 | ANSWER and Affirmative Defenses to Complaint with Jury Demand by AT&T Mobility LLC. (Mullins, Edward) [Transferred from Florida Southern on 1/19/2016.] (Entered: 10/29/2015) |
| 10/29/2015 | 43 | ANSWER and Affirmative Defenses to Complaint with Jury Demand by Novatel Wireless, Inc.. (Mullins, Edward) [Transferred from Florida Southern on 1/19/2016.] (Entered: 10/29/2015) |
| 11/09/2015 | 44 | RESPONSE in Opposition re 35 MOTION to Change Venue */Transfer or, Alternatively, Sever and Stay Claims Against AT&T, and Accompanying Memorandum of Law* MOTION to Sever MOTION to Stay filed by Carucel Investments, L.P.. Replies due by 11/19/2015. (Attachments: # 1 Declaration of Vera I. Gavrilovich, # 2 Declaration of James M. Sarnecky and Exhibits)(Ruiz, Oliver) [Transferred from Florida Southern on 1/19/2016.] (Entered: 11/09/2015) |
| 11/12/2015 | 45 | Joint MOTION for Order Scheduling Mediation *and Joint Notice of Mediator Selection* by Carucel Investments, L.P.. (Attachments: # 1 Text of Proposed Order) (Ruiz, Oliver) Modified to add missing event 46 Notice of Mediator Selection on 11/13/2015 (asl). [Transferred from Florida Southern on 1/19/2016.] (Entered: 11/12/2015) |
| 11/12/2015 | 46 | Joint NOTICE of Mediator Selection: Harry R. Schafer selected. Filed/Added by Carucel Investments, L.P., Harry R. Schafer. See 45 for image (asl) [Transferred from Florida Southern on 1/19/2016.] (Entered: 11/13/2015) |
| 11/13/2015 | 47 | Clerks Notice to Filer re 45 Joint MOTION for Order Scheduling Mediation *and Joint Notice of Mediator Selection*, 46 Notice of Mediator Selection (Optional Hearing). **Two or More Document Events Filed as One**; ERROR - Only one event was selected by the Filer but more than one event was applicable to the document filed. The docket entry was corrected by the Clerk. It is not necessary to refile this document but in the future, the Filer must select all applicable events. (asl) [Transferred from Florida |

| | | |
|---|---|---|
| | | Southern on 1/19/2016.] (Entered: 11/13/2015) |
| 11/13/2015 | 48 | ORDER Scheduling Mediation before Harry R. Schafer. Mediation Hearing set for 5/31/2016 09:00 AM. Signed by Judge Beth Bloom on 11/13/2015. (ls) [Transferred from Florida Southern on 1/19/2016.] (Entered: 11/13/2015) |
| 11/19/2015 | 49 | REPLY in Support re 35 MOTION to Change Venue /Transfer or, Alternatively, Sever and Stay Claims Against AT&T, and Accompanying Memorandum of Law MOTION to Sever MOTION to Stay filed by AT&T Mobility LLC, Novatel Wireless, Inc., Verizon Communications, Inc.. (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit)(Mullins, Edward) Modified to add missing events 50 Motion to Sever, Motion to Stay on 11/20/2015 (asl). [Transferred from Florida Southern on 1/19/2016.] (Entered: 11/19/2015) |
| 11/19/2015 | 50 | MOTION to Sever ( Responses due by 12/7/2015), MOTION to Stay by AT&T Mobility LLC, Novatel Wireless, Inc., Verizon Communications, Inc. See 49 for image (asl) [Transferred from Florida Southern on 1/19/2016.] (Entered: 11/20/2015) |
| 11/20/2015 | 51 | Clerks Notice to Filer re 50 MOTION to Sever MOTION to Stay, 49 Response in Support of Motion,. **Two or More Document Events Filed as One**; ERROR - Only one event was selected by the Filer but more than one event was applicable to the document filed. The docket entry was corrected by the Clerk. It is not necessary to refile this document but in the future, the Filer must select all applicable events. (asl) [Transferred from Florida Southern on 1/19/2016.] (Entered: 11/20/2015) |
| 11/23/2015 | 52 | PAPERLESS ORDER denying as moot 45 Motion. See ECF No. 48 , order scheduling mediation. Signed by Judge Beth Bloom (BB) [Transferred from Florida Southern on 1/19/2016.] (Entered: 11/23/2015) |
| 12/01/2015 | 53 | Plaintiff's MOTION to Strike 49 Response in Support of Motion, to Extent it Contains Newly-Added Argument ( Responses due by 12/18/2015), Plaintiff's MOTION for Leave to File Sur-Reply in Response as an Alternative by Carucel Investments, L.P.. (Attachments: # 1 Text of Proposed Order)(Ruiz, Oliver) [Transferred from Florida Southern on 1/19/2016.] (Entered: 12/01/2015) |
| 12/02/2015 | 54 | PAPERLESS ORDER denying 53 Motion to Strike ; granting 53 Motion for Leave to File Sur-reply. Plaintiff shall file its sur-reply by December 9, 2015 and limited to five pages. Signed by Judge Beth Bloom (BB) [Transferred from Florida Southern on 1/19/2016.] (Entered: 12/02/2015) |
| 12/09/2015 | 55 | NOTICE by Carucel Investments, L.P. re 49 Response in Support of Motion, 35 MOTION to Change Venue /Transfer or, Alternatively, Sever and Stay Claims Against AT&T, and Accompanying Memorandum of Law MOTION to Sever MOTION to Stay, 50 MOTION to Sever MOTION to Stay of Filing Sur-Reply Brief in Compliance with Court Order [DE 54] (Ruiz, Oliver) [Transferred from Florida Southern on 1/19/2016.] (Entered: 12/09/2015) |
| 12/16/2015 | 56 | Plaintiff's MOTION for Leave to File First Amended Complaint by Carucel Investments, L.P.. (Attachments: # 1 Declaration of James M. Sarnecky in Support of Motion for Leave to File First Amended Complaint, with Exhibits (including Exhibit 1, proposed First Amended Complaint), # 2 Text of Proposed Order)(Ruiz, Oliver) [Transferred from Florida Southern on 1/19/2016.] (Entered: 12/16/2015) |

| 12/16/2015 | 57 | PAPERLESS ORDER granting 56 Motion for Leave to File First Amended Complaint.Plaintiff must separately re-file the amended pleading pursuant to Local Rule 15.1. Signed by Judge Beth Bloom (BB) [Transferred from Florida Southern on 1/19/2016.] (Entered: 12/16/2015) |
|---|---|---|
| 12/16/2015 | 58 | First AMENDED COMPLAINT *FOR PATENT INFRINGEMENT* against AT&T Mobility LLC, Novatel Wireless, Inc., Verizon Communications, Inc., Cellco Partnership filed in response to Order Granting Motion for Leave, filed by Carucel Investments, L.P.. (Attachments: # 1 Exhibit A - U.S. Patent No. 7,221,904 (the 904 Patent), # 2 Exhibit B - U.S. Patent No. 7,848,701 (the 701 Patent), # 3 Exhibit C - U.S. Patent No. 7,979,023 (the 023 Patent), # 4 Exhibit D - U.S. Patent No. 8,463,177 (the 177 Patent), # 5 Exhibit E - U.S. Patent No. 8,718,543 (the 543 Patent), # 6 Exhibit F - U.S. Patent No. 8,849,191 (the 191 Patent))(Ruiz, Oliver) [Transferred from Florida Southern on 1/19/2016.] (Entered: 12/16/2015) |
| 12/21/2015 | 59 | Agreed MOTION for Extension of Time to Respond to the First Amended Complaint re 58 Amended Complaint,, by AT&T Mobility LLC, Novatel Wireless, Inc., Verizon Communications, Inc.. Attorney Ana Maria Barton added to party AT&T Mobility LLC(pty:dft), Attorney Ana Maria Barton added to party Novatel Wireless, Inc.(pty:dft), Attorney Ana Maria Barton added to party Verizon Communications, Inc.(pty:dft). Responses due by 1/7/2016 (Barton, Ana) [Transferred from Florida Southern on 1/19/2016.] (Entered: 12/21/2015) |
| 12/21/2015 | 60 | PAPERLESS ORDER granting 59 Motion for Extension of Time for Defendants to file Response/Answer to the Amended Complaint by 1/11/2016. Signed by Judge Beth Bloom (BB) [Transferred from Florida Southern on 1/19/2016.] (Entered: 12/21/2015) |
| 12/22/2015 | | Set/Reset Answer Due Deadline as per DE 60 : AT&T Mobility LLC response due 1/11/2016; Novatel Wireless, Inc. response due 1/11/2016; Verizon Communications, Inc. response due 1/11/2016. (lk) [Transferred from Florida Southern on 1/19/2016.] (Entered: 12/22/2015) |
| 12/28/2015 | 61 | NOTICE by Carucel Investments, L.P. *of Filing Waiver of Service of Summons re Defendant Cellco Partnership dba Verizon Wireless* (Ruiz, Oliver) [Transferred from Florida Southern on 1/19/2016.] (Entered: 12/28/2015) |
| 01/06/2016 | 62 | UNSTIPULATED MOTION for Substitution of Counsel by Verizon Communications, Inc.. Responses due by 1/25/2016 (Attachments: # 1 Text of Proposed Order)(Mullins, Edward) [Transferred from Florida Southern on 1/19/2016.] (Entered: 01/06/2016) |
| 01/07/2016 | 63 | ORDER granting 62 Unstipulated Motion for Substitution of Counsel. Added attorney Branden Stein for Verizon Communications, Inc.. Attorney Gail Ann McQuilkin and Todd M. Nosher terminated. Notice of Termination delivered by US Mail to Todd Nosher.. Signed by Judge Beth Bloom on 1/7/2016. (jas) [Transferred from Florida Southern on 1/19/2016.] (Entered: 01/08/2016) |
| 01/11/2016 | 64 | ANSWER and Affirmative Defenses to Amended Complaint with Jury Demand by Verizon Communications, Inc.. (Mullins, Edward) [Transferred from Florida Southern on 1/19/2016.] (Entered: 01/11/2016) |
| 01/11/2016 | 65 | ANSWER and Affirmative Defenses to Amended Complaint with Jury Demand by Cellco Partnership. Attorney Edward Maurice Mullins added to party Cellco |

| | | |
|---|---|---|
| | | Partnership(pty:dft). (Mullins, Edward) [Transferred from Florida Southern on 1/19/2016.] (Entered: 01/11/2016) |
| 01/11/2016 | 66 | ANSWER and Affirmative Defenses to Amended Complaint with Jury Demand by AT&T Mobility LLC. (Mullins, Edward) [Transferred from Florida Southern on 1/19/2016.] (Entered: 01/11/2016) |
| 01/11/2016 | 67 | ANSWER and Affirmative Defenses to Amended Complaint with Jury Demand by Novatel Wireless, Inc.. (Mullins, Edward) [Transferred from Florida Southern on 1/19/2016.] (Entered: 01/11/2016) |
| 01/11/2016 | 68 | Corporate Disclosure Statement by Cellco Partnership identifying Corporate Parent Verizon Communications, Inc. for Cellco Partnership (Mullins, Edward) [Transferred from Florida Southern on 1/19/2016.] (Entered: 01/11/2016) |
| 01/15/2016 | 69 | ORDER granting 35 MOTION to Change Venue /Transfer. Closing Case. The Clerk is directed to TRANSFER this case to the United States District Court for the Southern District of California. Signed by Judge Beth Bloom on 1/15/2016. (jas)<br><br>**NOTICE: If there are sealed documents in this case, they may be unsealed after 1 year or as directed by Court Order, unless they have been designated to be permanently sealed. See Local Rule 5.4 and Administrative Order 2014-69.** [Transferred from Florida Southern on 1/19/2016.] (Entered: 01/19/2016) |
| 01/19/2016 | 70 | Case transferred in from District of Florida Southern; Case Number 0:15-cv-61116. Original file received electronically (kas) (sjt). (Entered: 01/19/2016) |
| 01/19/2016 | 71 | Judge Larry Alan Burns and Magistrate Judge Barbara Lynn Major assigned to transfer case from Southern District of Florida. (no document attached) (kas) (Entered: 01/19/2016) |
| 01/19/2016 | 72 | REPORT on the filing or determination of an action regarding patent and/or trademark number(s) *7,221,904*, *7,848,701*, *7,979,023*, *8,463,177*, *8,718,543* cc:USPTO (Attachments: # 1 Cover Sheet and Complaint) (kas) (Entered: 01/19/2016) |
| 01/19/2016 | 73 | MINUTE ORDER OF RECUSAL. Magistrate Judge Barbara Lynn Major is no longer assigned. Case reassigned to Magistrate Judge Jill L. Burkhardt for all further proceedings. The new case number is 16cv0118-LAB-JLB.(no document attached) (kcm) (Entered: 01/19/2016) |
| 01/20/2016 | 74 | NOTICE AND ORDER for Early Neutral Evaluation Conference. Early Neutral Evaluation set for 3/2/2016 01:45 PM before Magistrate Judge Jill L. Burkhardt. In the event the case does not settle at the ENE, a Case Management Conference is set for 3/2/2016 01:45 PM before Magistrate Judge Jill L. Burkhardt and will be held at the conclusion of the ENE Conference. ENE Statements Required: No later than February 19, 2016. Submission of Magistrate Judge Consent Form: No later than February 3, 2016, each party shall provide Plaintiff's counsel with an executed copy of the attached consent form, titled Notice, Consent, and Reference of a Civil Action to a Magistrate Judge. Pursuant to Civil Local Rule 73.1, if (and only if) all parties have consented to the reference to a magistrate judge, then Plaintiff shall file the consent form(s) in paper format at the Clerk's Office by February 5, 2016. The parties are ordered to comply with Fed. R. Civ. P. 26 and proceed with the initial disclosure process as follows: a. |

| | | Meet and confer pursuant to Fed. R. Civ. P. 26(f) no later than 21 days before the ENE; b. Exchange initial disclosures pursuant to Rule 26(a)(1)(A-D) no later than February 12, 2016; and c. A Joint Discovery Plan shall be filed on the CM/ECF system as well as lodged with Magistrate Judge Burkhardt on or before February 19, 2016. Signed by Magistrate Judge Jill L. Burkhardt on 1/20/16.(kas) (Entered: 01/20/2016) |
|---|---|---|
| 01/20/2016 | 75 | MINUTE ORDER. Judge Larry Alan Burns has declined assignment pursuant to General Order 598. Case reassigned to Judge Marilyn L. Huff for all further proceedings. The new case number is 16cv118-H(JLB) (no document attached) (tel) (Entered: 01/20/2016) |
| 01/26/2016 | 76 | MINUTE ORDER OF RECUSAL. Magistrate Judge Jill L. Burkhardt is no longer assigned. Case randomly reassigned to Magistrate Judge Karen S. Crawford for all further proceedings. Pending hearings previously set before the original Judge have been transferred to the newly assigned Judge. The new case number is 16cv118 H (KSC).(no document attached) (jcj) (Entered: 01/26/2016) |
| 02/01/2016 | 77 | ORDER: (1) Setting Case Management Conference (2) Issuing Tentative Scheduling Order. A telephonic Case Management Conference is set for 2/11/2016 at 10:00 AM before Judge Marilyn L. Huff. Signed by Judge Marilyn L. Huff on 2/1/2016.(ag) (Entered: 02/01/2016) |
| 02/03/2016 | 78 | NOTICE AND ORDER Setting Early Neutral Evaluation Conference in a Patent Case. The An Early Neutral Evaluation Conference currently set for 3/2/2016 has been reset to 3/7/2016 at 2:30 PM before Magistrate Judge Karen S. Crawford. Signed by Magistrate Judge Karen S. Crawford on 2/1/2016.(All non-registered users served via U.S. Mail Service)(ag) (Entered: 02/03/2016) |
| 02/03/2016 | 79 | Request to Appear Pro Hac Vice, No payment Submitted. (Application to be reviewed by Clerk.) (Lindsey, Michael)(aef). (Entered: 02/03/2016) |
| 02/04/2016 | 80 | PRO HAC APPROVED: Michael K. Lindsey appearing for Plaintiff Carucel Investments, L.P. (no document attached) (aef) (Entered: 02/04/2016) |
| 02/08/2016 | 81 | JOINT HEARING STATEMENT by Carucel Investments, L.P.. (Lindsey, Michael) (ag). (Entered: 02/08/2016) |
| 02/10/2016 | 82 | Revised Tentative Scheduling Order. A telephonic Case Management Conference is set for 2/11/2016 at 10:00 AM before Judge Marilyn L. Huff. Signed by Judge Marilyn L. Huff on 2/10/2016. (Attachments: # 1 Tentative Scheduling Order)(ag) (Entered: 02/10/2016) |
| 02/11/2016 | 83 | Request to Appear Pro Hac Vice ( Filing fee received: $ 206 receipt number 0974-8790905.) (Application to be reviewed by Clerk.) (Stein, Branden) Modified on 2/16/2016-Contacted attorney re missing signatures; refile (aef). (Entered: 02/11/2016) |
| 02/11/2016 | 84 | Minute Entry for proceedings held before Judge Marilyn L. Huff: Telephonic Case Management Conference held on 2/11/2016. The Court will issue a written scheduling order. The parties are to raise all discovery disputes this Court. The Court will then decide whether to hear the discovery issue or refer the matter to the Magistrate Judge. (Court Reporter/ECR Lynnette Lawrence). (Plaintiff Attorney Michael K. Lindsey; James M. Sarnecky). (Defendant Attorney Amardeep Lai Thakur; Bruce R. Zisser). |

| | | (no document attached) (smy) (Entered: 02/11/2016) |
|---|---|---|
| 02/11/2016 | 85 | CASE MANAGEMENT SCHEDULING ORDER: Claims Construction Hearing set for 8/5/2016 at 09:00 AM before Judge Marilyn L. Huff. Memorandum of Contentions of Fact and Law due by 11/18/2016. Proposed Pretrial Order due by 12/16/2016. Final Pretrial Conference set for 1/30/2017 at 10:30 AM before Judge Marilyn L. Huff. Status Conference set for 2/6/2017 at 10:30 AM before Judge Marilyn L. Huff. Jury Trial set for 2/7/2017 at 09:00 AM before Judge Marilyn L. Huff. Signed by Judge Marilyn L. Huff on 2/11/2016.(nbp) (jao). (Entered: 02/11/2016) |
| 02/16/2016 | 86 | Ex Parte MOTION to Excuse Appearance of Authorized Representatives from AT&T, Verizon and Cellco at ENE, by AT&T Mobility LLC, Cellco Partnership, Verizon Communications Inc.. (Attachments: # 1 Declaration of Bruce R. Zisser in Support of Defendants' Ex Parte Re ENE)(Zisser, Bruce)Attorney Bruce R Zisser added to party Cellco Partnership(pty:dft) (ag). (Entered: 02/16/2016) |
| 02/17/2016 | 87 | Request to Appear Pro Hac Vice, No payment Submitted. (Application to be reviewed by Clerk.) (Stein, Branden) Modified on 2/19/2016-Fee paid see doc. 83 (aef). (Entered: 02/17/2016) |
| 02/17/2016 | 88 | RESPONSE in Opposition re 86 Ex Parte MOTION to Excuse Appearance of Authorized Representatives from AT&T, Verizon and Cellco at ENE, filed by Carucel Investments, L.P.. (Lindsey, Michael) (ag). (Entered: 02/17/2016) |
| 02/19/2016 | 89 | PRO HAC APPROVED: Branden Stein appearing for Defendant Novatel Wireless Inc. (no document attached) (aef) (Entered: 02/19/2016) |
| 02/24/2016 | 90 | ORDER Granting Defendants' 86 Ex Parte Motion to Excuse Personal Appearance of AT&T Mobility LLC., Verizon Communications Inc., and Cellco Partnership d/b/a Verizon Wireless from the Early Neutral Evaluation Conference. Signed by Magistrate Judge Karen S. Crawford on 2/23/2016. (ag) (Entered: 02/24/2016) |
| 03/01/2016 | 91 | Joint MOTION for Protective Order *and Determination of Protective Order Dispute* by Carucel Investments, L.P.. (Attachments: # 1 Declaration, # 2 Declaration, # 3 Declaration, # 4 Declaration)(Lindsey, Michael) (ag). (Entered: 03/01/2016) |
| 03/22/2016 | 92 | Minute Entry for proceedings held before Magistrate Judge Karen S. Crawford: An Early Neutral Evaluation Conference (ENE) was held on 3/7/2016 before Magistrate Judge Karen S. Crawford. The case did not settle at the ENE. A Mandatory Settlement Conference has been set for 9/22/2016 at 2:30 PM in the chambers of Magistrate Judge Karen S. Crawford. The parties shall read and comply with all provisions of Crawford Chambers Rule III in preparation for the conference.(no document attached) (jmw) (Entered: 03/22/2016) |
| 03/31/2016 | 93 | MOTION to Withdraw *by Malloy and Malloy P.L. as Plaintiff's counsel* by Carucel Investments, L.P.. (Sarnecky, James) (nbp) (Entered: 03/31/2016) |
| 04/04/2016 | 94 | ORDER Granting 93 Motion to Withdraw as Counsel. John Cyril Malloy, III and Oliver Alan Ruiz as counsel for Plaintiff terminated. Signed by Judge Marilyn L. Huff on 04/04/2016. (ag) (jao). (Entered: 04/04/2016) |
| 04/06/2016 | 95 | Joint MOTION to Modify Case Management Schedule re 85 Scheduling Order,, by AT&T Mobility LLC, Cellco Partnership, Novatel Wireless Inc, Verizon |

| | | |
|---|---|---|
| | | Communications Inc.. (Zisser, Bruce) (ag). (Entered: 04/06/2016) |
| 04/08/2016 | 96 | MOTION to Stay *Claims Against AT&T, Verizon, Cellco* by AT&T Mobility LLC, Cellco Partnership, Novatel Wireless Inc, Verizon Communications Inc.. (Attachments: # 1 Declaration of Branden S. Stein, # 2 Declaration of John Wu)(Zisser, Bruce) (ag). (Entered: 04/08/2016) |
| 04/18/2016 | 97 | ORDER Granting 95 Motion to Modify Scheduling Order. Signed by Judge Marilyn L. Huff on 04/18/2016. (ag) (Entered: 04/18/2016) |
| 04/18/2016 | 98 | Case Management Scheduling Order: A Claims Construction Hearing is set for 9/16/2016 at 9:00 AM before Judge Marilyn L. Huff. The Memorandum of Contentions of Fact and Law is due by 1/13/2017. The Proposed Pretrial Order is due by 2/11/2017. The Final Pretrial Conference is set for 3/27/2017 at 10:30 AM before Judge Marilyn L. Huff. A Status Conference is set for 4/3/2017 at 10:30 AM before Judge Marilyn L. Huff. Jury Trial is set for 4/4/2017 at 9:00 AM before Judge Marilyn L. Huff. Signed by Judge Marilyn L. Huff on 4/18/2016.(ag) (Entered: 04/18/2016) |
| 05/02/2016 | 99 | ORDER for the 91 Determination of Protective Order Dispute and Entry of Protective Order. Signed by Magistrate Judge Karen S. Crawford on 04/29/2016. (ag) (Entered: 05/02/2016) |
| 05/02/2016 | 100 | PROTECTIVE ORDER Regarding the Disclosure and Use of Discovery Materials. Signed by Magistrate Judge Karen S. Crawford on 04/29/2016.(ag) (Entered: 05/02/2016) |
| 05/02/2016 | 101 | RESPONSE in Opposition re 96 MOTION to Stay *Claims Against AT&T, Verizon, Cellco* filed by Carucel Investments, L.P.. (Attachments: # 1 Declaration of Michael K. Lindsey in Support of Plaintiff's Opposition)(Lindsey, Michael) (ag). (Entered: 05/02/2016) |
| 05/06/2016 | 102 | ORDER Submitting Motion to Stay (Doc. No. 96 .) The Court, pursuant to its discretion under Local Civil Rule 7.1(d)(1), determines the matter to be appropriate for resolution without oral argument, submits it on the papers, and vacates the motion hearing. Moving Defendants' reply, if any, remains due on or before May 9, 2016. Signed by Judge Marilyn L. Huff on 5/6/2016.(nbp)(jao). (Entered: 05/06/2016) |
| 05/06/2016 | 103 | **DOCKETED IN ERROR** ORDER Setting Schedule For Defendant's To Respond To Plaintiff's Amended Complaint.(nbp). (jao). (Entered: 05/06/2016) |
| 05/09/2016 | 104 | REPLY to Response to Motion re 96 MOTION to Stay *Claims Against AT&T, Verizon, Cellco* filed by AT&T Mobility LLC, Cellco Partnership, Verizon Communications Inc.. (Zisser, Bruce) (ag). (Entered: 05/09/2016) |
| 05/11/2016 | 105 | Minute ORDER: The Court schedules a telephonic hearing on the parties' discovery dispute for May 13, 2016 at 3:00 p.m. The Court will initiate the telephone call. The parties need not file any briefing prior to the hearing. SO ORDERED by Judge Marilyn L. Huff on 5/16/2016. (no document attached) (smy) (Entered: 05/11/2016) |
| 05/12/2016 | 106 | Ex Parte MOTION for Extending Case Management Deadline for Plaintiff to Reduce Number of Patent Claims Asserted by Carucel Investments, L.P.. (Attachments: # 1 Declaration of Michael K. Lindsey in Support of Plaintiff's Ex Parte Application) (Lindsey, Michael) (ag). (Entered: 05/12/2016) |

| | | |
|---|---|---|
| 05/13/2016 | [107](#) | RESPONSE in Opposition re [106](#) Ex Parte MOTION for Extending Case Management Deadline for Plaintiff to Reduce Number of Patent Claims Asserted filed by AT&T Mobility LLC, Cellco Partnership, Novatel Wireless Inc, Verizon Communications Inc.. (Attachments: # [1](#) Declaration Declaration of Bruce R. Zisser in Support of Defendants' Opposition)(Zisser, Bruce) (ag). (Entered: 05/13/2016) |
| 05/13/2016 | [108](#) | MOTION to Withdraw as Attorney *for Branden S. Stein* by AT&T Mobility LLC, Cellco Partnership, Novatel Wireless Inc, Verizon Communications Inc.. (Zisser, Bruce) (ag). (Entered: 05/13/2016) |
| 05/13/2016 | [109](#) | ORDER Denying Defendants' [96](#) Motion to Stay without Prejudice. Signed by Judge Marilyn L. Huff on 05/13/2016. (ag) (Entered: 05/13/2016) |
| 05/13/2016 | 110 | Minute Entry for proceedings held before Judge Marilyn L. Huff: Telephonic Discovery Hearing held on 5/13/2016. The Court will issue an order. (Court Reporter/ECR Noemy Martinez). (Plaintiff Attorney Michael K. Linsdey; James M. Sarnecky). (Defendant Attorney Amardeep Lai Thakur; Bruce R. Zisser). (no document attached) (smy) (Entered: 05/13/2016) |
| 05/13/2016 | 111 | Minute ORDER: On May 12, 2016, Plaintiff filed a motion for an extension of the May 16, 2016 deadline for Plaintiff to reduce the number of asserted patent claims to 64. (Doc. No. [106](#) .) On May 13, 2016, Defendants filed an opposition to Plaintiff's motion. (Doc. No. [107](#) .) The Court held a telephonic hearing on the matter on May 13, 2016. Michael K. Lindsey and James M. Sarnecky appeared for Plaintiff. Bruce R. Zisser and Amardeep Lal Thakur appeared for Defendants.<br>For the reasons discussed at the hearing, the Court denies Plaintiff's motion for extension of time. Plaintiff must reduce the number of asserted claim to 64 on or before **May 18, 2016**. Defendants must serve on all parties their invalidity contentions on or before **June 1, 2016**. All other deadlines and requirements set forth in the Court's April 18, 2016 Case Management Scheduling Order remain as scheduled. SO ORDERED on 5/13/2016 by Judge Marilyn L. Huff. (no document attached) (smy) (Entered: 05/13/2016) |
| 05/13/2016 | [112](#) | ORDER Granting Defendants' [108](#) Unopposed Motion for Branden Stein to Withdraw as Counsel. Attorney Branden Stein terminated. Signed by Judge Marilyn L. Huff on 05/13/2016. (ag) (jao). (Entered: 05/13/2016) |
| 06/01/2016 | [113](#) | NOTICE of Appearance by Daryl Marc Crone on behalf of Novatel Wireless Inc (Crone, Daryl)Attorney Daryl Marc Crone added to party Novatel Wireless Inc(pty:dft) (ag). (Entered: 06/01/2016) |
| 06/06/2016 | [114](#) | NOTICE of Appearance by Marc LeRoy Pinckney on behalf of Carucel Investments, L.P. (Pinckney, Marc)Attorney Marc LeRoy Pinckney added to party Carucel Investments, L.P.(pty:pla) (ag). (Entered: 06/06/2016) |
| 06/28/2016 | [115](#) | ORDER Referring Discovery Dispute to Magistrate Judge. Signed by Judge Marilyn L. Huff on 6/28/16.(dlg) (Entered: 06/28/2016) |
| 06/29/2016 | 116 | Minute Entry for proceedings held before Magistrate Judge Karen S. Crawford: A telephonic Discovery Conference has been set for 7/1/2016 at 9:30 AM in the Chambers of the Honorable Karen S. Crawford. Plaintiff shall initiate the telephonic conference by calling the Chambers of Magistrate Judge Karen S. Crawford at the |

| | | |
|---|---|---|
| | | appointed time with all parties already on the line. (no document attached) (jmw) (Entered: 06/29/2016) |
| 06/30/2016 | 117 | Minute Entry for proceedings held before Magistrate Judge Karen S. Crawford: On 6/30/2016 Mike Lindsey for plaintiff and Bruce Zisser for defendants contacted the Chambers of Magistrate Judge Karen S. Crawford. The parties stated that a tentative resolution has been reached regarding the instant discovery dispute and they requested additional time to produce the subject documents. Consequently, the July 1, 2016 telephonic Discovery Conference is continued until July 18, 2016 at 1:00 P.M. Plaintiff shall initiate the telephonic conference by calling the Chambers of Magistrate Judge Karen S. Crawford at the appointed time with all parties already on the line. Absent extraordinary good cause resulting from unforeseen events, a further continuance of the Discovery Conference will not be granted. (no document attached)(jmw) (Entered: 06/30/2016) |
| 07/20/2016 | 118 | Minute Entry for proceedings held before Magistrate Judge Karen S. Crawford: A telephonic Discovery Conference was held on 7/18/2016. Mike Lindsey and Jim Sarnecky appeared for plaintiff. Bruce Zisser and Amar Thakur appeared for defendants. The parties informed the Court that after an additional meet and confer conference, the instant discovery dispute was resolved.(no document attached)(jmw) (Entered: 07/20/2016) |
| 07/26/2016 | 119 | JOINT HEARING STATEMENT by AT&T Mobility LLC, Cellco Partnership, Novatel Wireless Inc, Verizon Communications Inc.. (Attachments: # 1 Appendix A - Joint Claim Construction Worksheets, # 2 Appendix B - Joint Claim Construction Charts)(Zisser, Bruce) (mdc.) (Entered: 07/26/2016) |
| 08/17/2016 | 120 | CLAIM CONSTRUCTION BRIEF by AT&T Mobility LLC, Cellco Partnership, Novatel Wireless Inc, Verizon Communications Inc. (Attachments: # 1 Declaration of Bruce R. Zisser ISO Defendants' Opening Claim Construction)(Zisser, Bruce) (ag). (Entered: 08/17/2016) |
| 08/17/2016 | 121 | MOTION to File Documents Under Seal (Zisser, Bruce) (kcm). (Entered: 08/17/2016) |
| 08/17/2016 | 122 | ***FILED AS SEALED DOC ON 8/25/2016***SEALED LODGED Proposed Document re: 121 MOTION to File Documents Under Seal. Document to be filed by Clerk if Motion to Seal is granted. (Zisser, Bruce) (kcm). (Main Document 122 replaced on 8/25/2016) (kcm). (Entered: 08/17/2016) |
| 08/17/2016 | 123 | CLAIM CONSTRUCTION BRIEF by Carucel Investments, L.P.. (Attachments: # 1 Declaration of Michael K. Lindsey, # 2 Exhibit Ex. 1 of Lindsey Decl., # 3 Exhibit Ex. 2 of Lindsey Decl., # 4 Exhibit Ex. 3 of Lindsey Decl., # 5 Exhibit Ex. 4 of Lindsey Decl., # 6 Exhibit Ex. 5 of Lindsey Decl., # 7 Exhibit Ex. 6 of Lindsey Decl., # 8 Exhibit Ex. 7 of Lindsey Decl., # 9 Exhibit Ex. 8 of Lindsey Decl., # 10 Exhibit Ex. 9 of Lindsey Decl., # 11 Exhibit Ex. 10 of Lindsey Decl.)(Lindsey, Michael) (ag). (Entered: 08/17/2016) |
| 08/25/2016 | 124 | ORDER: (1) granting 121 Defendant's Motion to File Documents Under Seal; and (2) Directing Clerk to File the Proposed Documents Under Seal. Signed by Judge Marilyn L. Huff on 8/25/2016. (kcm) (Entered: 08/25/2016) |

| 08/31/2016 | 126 | RESPONSE TO CLAIM CONSTRUCTION BRIEF by AT&T Mobility LLC, Cellco Partnership, Novatel Wireless Inc, Verizon Communications Inc.. (Attachments: # 1 Supplement Declaration of Bruce R. Zisser ISO Defendants' Responsive Claim Construction)(Zisser, Bruce) (ag). (Entered: 08/31/2016) |
|---|---|---|
| 08/31/2016 | 127 | RESPONSE TO CLAIM CONSTRUCTION BRIEF by Carucel Investments, L.P.. (Attachments: # 1 Declaration Declaration of Michael K. Lindsey in Support of Plaintiff's Responsive Claim Construction Brief, # 2 Exhibit Ex. 1 to Declaration, # 3 Exhibit Ex. 2 to Declaration, # 4 Exhibit Ex. 3 to Declaration)(Lindsey, Michael) (ag). (Entered: 08/31/2016) |
| 09/13/2016 | 128 | Minute Entry for proceedings held before Magistrate Judge Karen S. Crawford: After being advised of the status of the case by counsel, the Mandatory Settlement Conference has been continued until 10/31/2016 at 2:30 PM before Magistrate Judge Karen S. Crawford. Counsel shall lodge confidential settlement briefs directly with Magistrate Judge Crawford no later than 10/24/2016. In preparing for the conference, all counsel are ordered to read and to fully comply with the Chambers' Rules for Magistrate Judge Crawford which are available on the Court's website.(no document attached) (plh) (Entered: 09/13/2016) |
| 09/14/2016 | 129 | Tentative Claim Construction Order. Signed by Judge Marilyn L. Huff on 9/14/2016.(ag) (Entered: 09/14/2016) |
| 09/16/2016 | 130 | Minute Entry for proceedings held before Judge Marilyn L. Huff: Claims Contruction Hearing held on 9/16/2016. The Court submits the matter and will issue a written order. (Court Reporter/ECR Lynnette Lawrence). (Plaintiff Attorney Michael K. Lindsey; James M. Sarnecky). (Defendant Attorney Amardeep Lal Thakur; Bruce R. Zisser). (no document attached) (smy) (Entered: 09/16/2016) |
| 09/19/2016 | 131 | Claim Construction Order. Signed by Judge Marilyn L. Huff on 9/16/2016. (Attachments: # 1 Exhibit 1 to Claim Construction Order, # 2 Exhibit 2 to Claim Construction Order, # 3 Exhibit 3 to Claim Construction Order, # 4 Exhibit 4 to Claim Construction Order, # 5 Exhibit 5 to Claim Construction Order)(ag) (Entered: 09/19/2016) |
| 09/22/2016 | 132 | Minute Entry for proceedings held before Magistrate Judge Karen S. Crawford: At the request of counsel because of a scheduling conflict, the Mandatory Settlement Conference has been continued until 11/1/2016 at 2:30 PM before Magistrate Judge Karen S. Crawford. Counsel shall lodge confidential settlement briefs directly with Magistrate Judge Crawford no later than 10/25/2016. In preparing for the conference, all counsel are ordered to read and to fully comply with the Chambers' Rules for Magistrate Judge Crawford which are available on the Court's website.(no document attached) (plh) (Entered: 09/22/2016) |
| 10/17/2016 | 133 | Joint MOTION for Order *to Modify Case Management Schedule* by Carucel Investments, L.P.. (Lindsey, Michael) (ag). (Entered: 10/17/2016) |
| 10/21/2016 | 134 | Joint MOTION to Excuse Appearance of Verizon Wireless and Cellco Partnershp at November 1, 2016, *Mandatory Settlement Conference* by AT&T Mobility LLC, Cellco Partnership, Novatel Wireless Inc, Verizon Communications Inc.. (Zisser, Bruce) (ag). (Entered: 10/21/2016) |

| | | |
|---|---|---|
| 10/25/2016 | <u>135</u> | ORDER: (1) Granting <u>133</u> Joint Motion to Modify Scheduling Order; and (2) Entering Amended Scheduling Order. The Memorandum of Contentions of Fact and Law is due by 2/10/2017. The Proposed Pretrial Order is due by 3/3/2017. The Final Pretrial Conference is set for 3/27/2017 at 10:30 AM before Judge Marilyn L. Huff. A Status Conference is set for 4/3/2017 at 10:30 AM before Judge Marilyn L. Huff. Jury Trial is set for 4/4/2017 at 9:00 AM before Judge Marilyn L. Huff. Signed by Judge Marilyn L. Huff on 10/24/2016. (ag) (Entered: 10/25/2016) |
| 10/25/2016 | <u>136</u> | ORDER granting <u>134</u> Joint Motion to excuse personal appearance of Verizon Communications Inc. and Cellco Partnership dba Verizon Wireless at the Mandatory Settlement Conference. Signed by Magistrate Judge Karen S. Crawford on 10/24/2016. (jpp) (Entered: 10/25/2016) |
| 11/01/2016 | 137 | Minute Order for proceedings held before Magistrate Judge Karen S. Crawford:A Mandatory Settlement Conference was held on 11/1/2016. The case did not settle. A follow up telephonic counsel-only Status Conference has been set for 12/14/2016 at 2:00 p.m. before Magistrate Judge Karen S. Crawford. Plaintiff's counsel shall initiate the telephonic conference by calling Judge Crawford's Chambers at the appointed time with all counsel on the line. (no document attached) (asm) (Entered: 11/04/2016) |
| 12/07/2016 | <u>138</u> | Joint MOTION to Dismiss Party *AT&T Mobility LLC by Stipulation* by Carucel Investments, L.P.. (Lindsey, Michael) (ag). (Entered: 12/07/2016) |
| 12/09/2016 | <u>139</u> | ORDER Granting <u>138</u> Joint Motion to Dismiss Defendant AT&T Mobility LLC with Prejudice. Signed by Judge Marilyn L. Huff on 12/8/2016. (ag) (jao). (Entered: 12/09/2016) |
| 12/14/2016 | 140 | Minute Order for proceedings held before Magistrate Judge Karen S. Crawford:A Status Conference was held on 12/14/2016. A follow-up Settlement Conference has been set for 3/15/2017 at 2:30 P.M. in the Chambers of Magistrate Judge Karen S. Crawford. The parties shall read and comply with Crawford Chambers' Rule III in preparation for the Settlement Conference. Confidential settlement briefs must be submitted to Chambers by 3/6/2017. (no document attached) (asm) (Entered: 12/19/2016) |
| 12/19/2016 | 141 | Minute ORDER: The Court scheduled a telephonic hearing on the parties' discovery dispute for December 19, 2016 at 2:45 p.m. The Court will initiate the telephone call. SO ORDERED by Judge Marilyn L. Huff on 12/19/2016. (no document attached) (smy) (Entered: 12/19/2016) |
| 12/19/2016 | 142 | Minute Entry for proceedings held before Judge Marilyn L. Huff: Telephonic Discovery Hearing held on 12/19/2016. The Court orders the Defendants to expedite the production of discovery to the Plaintiff. Counsel to meet and confer. (Court Reporter/ECR Lynnette Lawrence). (Plaintiff Attorney Michael K. Lindsey and James M. Sarnecky). (Defendant Attorney Amardeep Lai Thakur and Bruce R. Zisser). (no document attached) (smy) (Entered: 12/19/2016) |
| 12/19/2016 | <u>143</u> | ORDER Re: Discovery Dispute. Signed by Judge Marilyn L. Huff on 12/19/2016.(ag) (Entered: 12/19/2016) |
| 01/04/2017 | <u>144</u> | NOTICE *OF ASSOCIATION OF COUNSEL* by Carucel Investments, L.P. (Cherian, Korula)Attorney Korula T Cherian added to party Carucel Investments, L.P.(pty:pla) |

| | | (ag). (Entered: 01/04/2017) |
|---|---|---|
| 01/04/2017 | 145 | NOTICE of Appearance by Robert Michael Harkins, Jr on behalf of Carucel Investments, L.P. (Harkins, Robert)Attorney Robert Michael Harkins, Jr added to party Carucel Investments, L.P.(pty:pla) (ag). (Entered: 01/04/2017) |
| 01/04/2017 | 146 | NOTICE of Appearance by Don Francis Livornese on behalf of Carucel Investments, L.P. (Livornese, Don)Attorney Don Francis Livornese added to party Carucel Investments, L.P.(pty:pla) (ag). (Entered: 01/04/2017) |
| 01/05/2017 | 147 | Request to Appear Pro Hac Vice ( Filing fee received: $ 206 receipt number 0974-9703496.) (Application to be reviewed by Clerk.) (Ruyak, Robert) (aef). (Entered: 01/05/2017) |
| 01/05/2017 | 148 | Request to Appear Pro Hac Vice ( Filing fee received: $ 206 receipt number 0974-9703553.) (Application to be reviewed by Clerk.) (Ruyak, Brittany) (aef). (Entered: 01/05/2017) |
| 01/06/2017 | 149 | PRO HAC APPROVED: Robert Francis Ruyak appearing for Plaintiff Carucel Investments, L.P. (no document attached) (aef) (Entered: 01/06/2017) |
| 01/06/2017 | 150 | PRO HAC APPROVED: Brittany Vacek Ruyak appearing for Plaintiff Carucel Investments, L.P. (no document attached) (aef) (Entered: 01/06/2017) |
| 01/25/2017 | 151 | Joint MOTION for Extension of Time to Complete Discovery *to Supplement Expert Damages Reports, Take Depositions as to Supplements, and File Daubert Motions as to Supplements* by Carucel Investments, L.P.. (Sarnecky, James) (ag). (Entered: 01/25/2017) |
| 01/26/2017 | 152 | ORDER Granting 151 Joint Motion to Modify Case Management Order to Allow for Supplemental Damages Expert Report. Signed by Judge Marilyn L. Huff on 1/25/2017. (ag) (Entered: 01/26/2017) |
| 01/27/2017 | 153 | MOTION for Summary Judgment *of Non-Infringement* by Cellco Partnership, Novatel Wireless Inc, Verizon Communications Inc.. (Attachments: # 1 Memo of Points and Authorities ISO Motion for Summary Judgment of Non-Infringement, # 2 Declaration of Bruce R. Zisser ISO Motion for Summary Judgment of Non-Infringement [Exhibits A-G], # 3 Exhibit H to J to Decl. of Bruce R. Zisser ISO Motion for Summary Judgment of Non-Infringement)(Thakur, Amardeep)Attorney Amardeep Lal Thakur added to party Cellco Partnership(pty:dft) (ag). (Entered: 01/27/2017) |
| 01/27/2017 | 154 | MOTION to Exclude *Expert Testimony of Plaintiff's Damages Expert Patrick F. Kennedy* by Cellco Partnership, Novatel Wireless Inc, Verizon Communications Inc.. (Attachments: # 1 Declaration of Amar Thakur ISO Motion to Exclude Expert Testimony of Plaintiff's Damages Expert Patrick F. Kennedy)(Thakur, Amardeep) (ag). (Entered: 01/27/2017) |
| 01/27/2017 | 155 | MOTION to File Documents Under Seal (Lindsey, Michael) (kcm). (Entered: 01/27/2017) |
| 01/27/2017 | 156 | ***FILED AS SEALED DOCUMENT ON 2/2/2017*** - SEALED LODGED Proposed Document re: 155 MOTION to File Documents Under Seal. Document to be filed by Clerk if Motion to Seal is granted. (Lindsey, Michael) (kcm) (aef) (Entered: |

| | | |
|---|---|---|
| | | 01/27/2017) |
| 01/27/2017 | 157 | MOTION to Exclude *Portions of Dr. Kenney's Invalidity and Non-Infringement Opinions* by Carucel Investments, L.P.. (Attachments: # 1 Declaration of Michael K. Lindsey in Support of Plaintiff's Motion to Exclude Portions of the Invalidity and Non-Infringement Opinions of Dr. Kenney, # 2 Exhibit to the Declaration of Michael K. Lindsey, # 3 Exhibit to the Declaration of Michael K. Lindsey, # 4 Exhibit to the Declaration of Michael K. Lindsey, # 5 Exhibit to the Declaration of Michael K. Lindsey, # 6 Exhibit to the Declaration of Michael K. Lindsey, # 7 Exhibit to the Declaration of Michael K. Lindsey, # 8 Exhibit to the Declaration of Michael K. Lindsey, # 9 Exhibit to the Declaration of Michael K. Lindsey)(Lindsey, Michael) (ag). (Entered: 01/27/2017) |
| 01/27/2017 | 158 | MOTION to File Documents Under Seal (Thakur, Amardeep) (kcm). (Entered: 01/27/2017) |
| 01/27/2017 | 159 | ***FILED AS SEALED DOCUMENT ON 2/2/2017*** - SEALED LODGED Proposed Document re: 158 MOTION to File Documents Under Seal. Document to be filed by Clerk if Motion to Seal is granted. (Thakur, Amardeep) (kcm)(aef). (Entered: 01/27/2017) |
| 01/27/2017 | 160 | MOTION to File Documents Under Seal (Harkins, Robert) (kcm). (Entered: 01/27/2017) |
| 01/27/2017 | 161 | ***FILED AS SEALED DOCUMENT ON 2/2/2017*** - SEALED LODGED Proposed Document re: 160 MOTION to File Documents Under Seal. Document to be filed by Clerk if Motion to Seal is granted. (Harkins, Robert) (kcm)(aef). (Entered: 01/27/2017) |
| 01/27/2017 | 162 | ***FILED AS SEALED DOCUMENT ON 2/2/2017*** - SEALED LODGED Proposed Document re: 160 MOTION to File Documents Under Seal. Document to be filed by Clerk if Motion to Seal is granted. (Harkins, Robert) (kcm)(aef). (Entered: 01/27/2017) |
| 01/27/2017 | 163 | MOTION to Exclude *Expert Testimony of DeForest McDuff* by Carucel Investments, L.P.. (Attachments: # 1 Declaration of Robert Harkins in Support of Motion to Exclude Expert Testimony of DeForest McDuff)(Harkins, Robert) (ag). (Entered: 01/27/2017) |
| 02/02/2017 | 164 | ORDER: (1) Granting 155 , 158 , 160 the Parties' Motions to File Documents Under Seal; (2) Directing the Clerk to File the Proposed Documents Under Seal; and (3) Ordering the Parties to Publicly File Redacted version of the Memorandum of Points and Authorities. Signed by Judge Marilyn L. Huff on 2/2/2017. (aef) (sjt). (Entered: 02/02/2017) |
| 02/07/2017 | 169 | MOTION to Strike *Portions of the Supplemental Report of Plaintiff's Damages Expert Patrick Kennedy* by Cellco Partnership, Novatel Wireless Inc, Verizon Communications Inc.. (Attachments: # 1 Declaration of Bruce R. Zisser ISO MTS Portions of Kennedy Supplemental Report)(Thakur, Amardeep)(ag). (Entered: 02/07/2017) |
| 02/07/2017 | 170 | MOTION to File Documents Under Seal (Thakur, Amardeep) (aef). (Entered: 02/07/2017) |

| | | |
|---|---|---|
| 02/07/2017 | 171 | ***FILED AS SEALED ON 2/13/2017*** - SEALED LODGED Proposed Document re: 170 MOTION to File Documents Under Seal. Document to be filed by Clerk if Motion to Seal is granted. (Thakur, Amardeep) (aef) (Entered: 02/07/2017) |
| 02/07/2017 | 172 | Ex Parte MOTION to Shorten Time *to Hear Motion to Strike Portions of the Supplemental Report of Plaintiff's Damages Expert Patrick Kennedy* by Cellco Partnership, Novatel Wireless Inc, Verizon Communications Inc.. (Thakur, Amardeep) (ag). (Entered: 02/07/2017) |
| 02/08/2017 | 173 | RESPONSE in Opposition re 172 Ex Parte MOTION to Shorten Time *to Hear Motion to Strike Portions of the Supplemental Report of Plaintiff's Damages Expert Patrick Kennedy* filed by Carucel Investments, L.P.. (Harkins, Robert) (ag). (Entered: 02/08/2017) |
| 02/09/2017 | 174 | Request to Appear Pro Hac Vice ( Filing fee received: $ 206 receipt number 0974-9801699.) (Application to be reviewed by Clerk.) (Wielkopolski, Ronald) (kcm). (Entered: 02/09/2017) |
| 02/09/2017 | 175 | ORDER Denying Defendants' 172 Motion to Shorten Time. Signed by Judge Marilyn L. Huff on 2/8/2017. (ag) (Entered: 02/09/2017) |
| 02/09/2017 | 176 | PRO HAC APPROVED: Ronald R Wielkopolski appearing for Plaintiff Carucel Investments, L.P. (no document attached) (kcm) (Entered: 02/09/2017) |
| 02/09/2017 | 177 | REDACTION to 154 MOTION to Exclude *Expert Testimony of Plaintiff's Damages Expert Patrick F. Kennedy* by Cellco Partnership, Novatel Wireless Inc, Verizon Communications Inc.. (Thakur, Amardeep) (ag). (Entered: 02/09/2017) |
| 02/09/2017 | 178 | REDACTION to 163 MOTION to Exclude *Expert Testimony of DeForest McDuff* by Carucel Investments, L.P.. (Harkins, Robert) (ag). (Entered: 02/09/2017) |
| 02/10/2017 | 179 | ORDER: (1) Continuing Hearing on Daubert Motions; and (2) Setting Time Limits for Jury Trail. A hearing on the two Daubert motions 154 and 163 is currently scheduled for 3/2/2017 at 10:00 a.m. The Court continues the hearing on these two Daubert motions to 4/3/2017 at 9:00 a.m. Further, the previously scheduled status conference and hearing on the parties' motions in limine is advanced to 4/3/2017 at 9:00 a.m. In addition, based on the Court's review of the record in this action, the Court sets reasonable, all-inclusive time limits of nine hours per side, subject to modification for good cause shown. Signed by Judge Marilyn L. Huff on 2/9/2017.(ag) (Entered: 02/10/2017) |
| 02/10/2017 | 180 | MOTION to File Documents Under Seal (Thakur, Amardeep) (aef). (Entered: 02/10/2017) |
| 02/10/2017 | 181 | ***FILED AS SEALED DOCUMENT ON 2/14/2017*** - SEALED LODGED Proposed Document re: 180 MOTION to File Documents Under Seal. Document to be filed by Clerk if Motion to Seal is granted. (Thakur, Amardeep) (aef) (Entered: 02/10/2017) |
| 02/10/2017 | 182 | MOTION to File Documents Under Seal (Lindsey, Michael) (aef). (Entered: 02/10/2017) |

| | | |
|---|---|---|
| 02/10/2017 | 183 | ***FILED AS SEALED DOCUMENT ON 2/14/2017*** - SEALED LODGED Proposed Document re: 182 MOTION to File Documents Under Seal. Document to be filed by Clerk if Motion to Seal is granted.(Lindsey, Michael) (aef) (Entered: 02/10/2017) |
| 02/10/2017 | 184 | MEMORANDUM OF FACTS AND CONTENTIONS OF LAW by Carucel Investments, L.P.. (Attachments: # 1 Exhibit Exhibit 1- Plaintiff's Trial Exhibit List, # 2 Exhibit Exhibit 2 -- Plaintiff's Witness List, # 3 Exhibit Exhibit 4 -- Expert Rebuttal Report of Dr. Kiasaleh re Validity)(Lindsey, Michael) (ag). (Entered: 02/10/2017) |
| 02/10/2017 | 185 | Exhibit List *and Witness List* by Cellco Partnership, Novatel Wireless Inc, Verizon Communications Inc... (Zisser, Bruce) (ag). (Entered: 02/10/2017) |
| 02/13/2017 | 186 | ORDER: (1) Granting 170 Defendants' Motion to File Documents Under Seal; (2) Directing the Clerk to File the Proposed Documents Under Seal; and (3) Ordering Defendants to Publicly File a Redacted version of the Memorandum of Points and Authorities. Signed by Judge Marilyn L. Huff on 2/10/2017. (aef) (sjt). (Entered: 02/14/2017) |
| 02/14/2017 | 188 | ORDER: (1) Granting 180 , 182 the Parties' Motion to File Documents Under Seal; (2) Directing the Clerk to File the Proposed Documents Under Seal; and (3) Ordering Defendants to Publicly File Redacted version of Memorandum of Facts and Contentions of Law. Signed by Judge Marilyn L. Huff on 2/13/2017 (aef) (sjt). (Entered: 02/14/2017) |
| 02/16/2017 | 191 | RESPONSE in Opposition re 157 MOTION to Exclude *Portions of Dr. Kenney's Invalidity and Non-Infringement Opinions* filed by Cellco Partnership, Novatel Wireless Inc, Verizon Communications Inc.. (Attachments: # 1 Declaration of Bruce R. Zisser ISO Defendants' Opposition to Plaintiff's Motion to Exclude Portions of Expert Testimony of Prof. J. Stevenson Kenney)(Zisser, Bruce) (fth). (Entered: 02/16/2017) |
| 02/16/2017 | 192 | MOTION to File Documents Under Seal (Zisser, Bruce) (aef). (Entered: 02/16/2017) |
| 02/16/2017 | 193 | ***FILED AS SEALED DOCUMENT ON 2/21/2017*** - SEALED LODGED Proposed Document re: 192 MOTION to File Documents Under Seal. Document to be filed by Clerk if Motion to Seal is granted. (Zisser, Bruce) (aef) (Entered: 02/16/2017) |
| 02/16/2017 | 194 | REDACTION to 169 MOTION to Strike *Portions of the Supplemental Report of Plaintiff's Damages Expert Patrick Kennedy* by Cellco Partnership, Novatel Wireless Inc, Verizon Communications Inc.. (Thakur, Amardeep) (fth). (Entered: 02/16/2017) |
| 02/16/2017 | 195 | REDACTION *to Defendants' Memorandum of Contentions of Fact and Law* by Cellco Partnership, Novatel Wireless Inc, Verizon Communications Inc.. (Thakur, Amardeep) (fth). (Entered: 02/16/2017) |
| 02/16/2017 | 196 | MOTION to File Documents Under Seal (Lindsey, Michael) (aef). (Entered: 02/16/2017) |
| 02/16/2017 | 197 | ***FILED AS SEALED DOCUMENT ON 2/21/2017*** - SEALED LODGED Proposed Document re: 196 MOTION to File Documents Under Seal. Document to be filed by Clerk if Motion to Seal is granted. (Lindsey, Michael) (aef). (Entered: 02/16/2017) |

| 02/17/2017 | 198 | Joint MOTION to Set Time for Jury Trial to Twelve Hours Per Side re 179 Order,,, Terminate Motion and R&R Deadlines/Hearings,,, Set Motion and R&R Deadlines/Hearings,, by Carucel Investments, L.P.. (Harkins, Robert) (fth). (Entered: 02/17/2017) |
|---|---|---|
| 02/21/2017 | 199 | ORDER granting The Parties' 198 Joint Motion Re: Trial Time Limits. Signed by Judge Marilyn L. Huff on 2/21/2017. (fth) (Entered: 02/21/2017) |
| 02/22/2017 | 203 | NOTICE of Appearance by Joshua Lee Sohn on behalf of Cellco Partnership, Novatel Wireless Inc, Verizon Communications Inc. (Sohn, Joshua)Attorney Joshua Lee Sohn added to party Cellco Partnership(pty:dft), Attorney Joshua Lee Sohn added to party Novatel Wireless Inc(pty:dft), Attorney Joshua Lee Sohn added to party Verizon Communications Inc.(pty:dft) (ag). (Entered: 02/22/2017) |
| 02/22/2017 | 204 | NOTICE of Appearance by David Michael Grable on behalf of Cellco Partnership, Novatel Wireless Inc, Verizon Communications Inc. (Grable, David)Attorney David Michael Grable added to party Cellco Partnership(pty:dft), Attorney David Michael Grable added to party Novatel Wireless Inc(pty:dft), Attorney David Michael Grable added to party Verizon Communications Inc.(pty:dft) (ag). (Entered: 02/22/2017) |
| 02/23/2017 | 205 | REPLY to Response to Motion re 153 MOTION for Summary Judgment *of Non-Infringement* filed by Cellco Partnership, Novatel Wireless Inc, Verizon Communications Inc.. (Sohn, Joshua) (ag). (Entered: 02/23/2017) |
| 02/23/2017 | 206 | REPLY to Response to Motion re 157 MOTION to Exclude *Portions of Dr. Kenney's Invalidity and Non-Infringement Opinions Pursuant to Daubert* filed by Carucel Investments, L.P.. (Attachments: # 1 Declaration Declaration of Michael K. Lindsey In Support of Plaintiff's Reply, # 2 Exhibit Exhibit 1, part 1 to Declaration of Michael K. Lindsey In Support of Plaintiff's Reply, # 3 Exhibit Exhibit 1, part 2 to Declaration of Michael K. Lindsey In Support of Plaintiff's Reply, # 4 Exhibit Exhibit 1, part 3 to Declaration of Michael K. Lindsey In Support of Plaintiff's Reply)(Lindsey, Michael) (ag). (Entered: 02/23/2017) |
| 02/24/2017 | 207 | MOTION to Exclude *the Supplemental Damages Report of Plaintiff's Damages Expert Patrick F. Kennedy* by Cellco Partnership, Novatel Wireless Inc, Verizon Communications Inc.. (Attachments: # 1 Declaration of Amar Thakur ISO Defendants' Motion to Exclude the Supplemental Damages Report of Expert Patrick F. Kennedy) (Thakur, Amardeep) (kas). (Entered: 02/24/2017) |
| 02/24/2017 | 208 | MOTION to File Documents Under Seal (Thakur, Amardeep) (sjt). (Entered: 02/24/2017) |
| 02/24/2017 | 209 | ***FILED AS SEALED DOCUMENT ON 3/1/2017*** - SEALED LODGED Proposed Document re: 208 MOTION to File Documents Under Seal. Document to be filed by Clerk if Motion to Seal is granted. (Thakur, Amardeep) (aef). (Entered: 02/24/2017) |
| 02/24/2017 | 210 | MOTION to Exclude *Supplemental Expert Testimony of DeForest McDuff Pursuant to Daubert* by Carucel Investments, L.P.. (Attachments: # 1 Memo of Points and Authorities, # 2 Declaration)(Harkins, Robert) (kas). (Entered: 02/24/2017) |
| 02/24/2017 | 211 | MOTION to File Documents Under Seal (Harkins, Robert) (sjt). (Entered: 02/24/2017) |

| 02/24/2017 | 212 | ***FILED AS SEALED DOCUMENT ON 3/1/2017*** - SEALED LODGED Proposed Document re: 211 MOTION to File Documents Under Seal. Document to be filed by Clerk if Motion to Seal is granted. (Harkins, Robert) (aef) (Entered: 02/24/2017) |
| --- | --- | --- |
| 02/24/2017 | 213 | REDACTION *to Defendants' Memorandum of Points and Authorities in Support of Their Motion to Exclude the Supplemental Damages Report of Plaintiff's Damages Expert Patrick F. Kennedy* 207 by Cellco Partnership, Novatel Wireless Inc, Verizon Communications Inc.. (Thakur, Amardeep) (kas). (Entered: 02/24/2017) |
| 02/24/2017 | 214 | Joint Proposed Juror Questionnaire filed by Carucel Investments, L.P.. (Harkins, Robert) (ag). (Entered: 02/24/2017) |
| 02/27/2017 | 215 | RESPONSE in Opposition re 169 MOTION to Strike *Portions of the Supplemental Report of Plaintiff's Damages Expert Patrick Kennedy* filed by Carucel Investments, L.P.. (Attachments: # 1 Declaration and Exhibits)(Harkins, Robert) (fth). (Entered: 02/27/2017) |
| 02/27/2017 | 216 | MOTION to File Documents Under Seal (Harkins, Robert) (aef). (Entered: 02/27/2017) |
| 02/27/2017 | 217 | ***FILED AS SEALED DOCUMENT ON 3/1/2017*** - SEALED LODGED Proposed Document re: 216 MOTION to File Documents Under Seal. Document to be filed by Clerk if Motion to Seal is granted. (Harkins, Robert) (aef) (Entered: 02/27/2017) |
| 02/28/2017 | 218 | ORDER Designating Jury Questionnaire. Signed by Judge Marilyn L. Huff on 2/28/2017. (Attachments: # 1 Exhibit 1)(ag) (jao). (Entered: 03/01/2017) |
| 03/01/2017 | 219 | ORDER: (1) Granting 208 , 211 The Parties' Motions to File Documents Under Seal; and (2) Directing the Clerk to File the Proposed Documents Under Seal. Signed by Judge Marilyn L. Huff on 3/1/2017. (aef) (sjt). (Entered: 03/02/2017) |
| 03/01/2017 | 222 | ORDER: (1) Granting 216 The Parties' Motions to File Documents Under Seal; and (2) Directing the Clerk to File the Proposed Documents Under Seal. Signed by Judge Marilyn L. Huff on 3/1/2017. (aef) (sjt). (Entered: 03/02/2017) |
| 03/02/2017 | 224 | Minute Entry for proceedings held before Judge Marilyn L. Huff: Motion Hearing held on 3/2/2017 re 157 MOTION to Exclude *Portions of Dr. Kenney's Invalidity and Non-Infringement Opinions* filed by Carucel Investments, L.P., 153 MOTION for Summary Judgment *of Non-Infringement* filed by Novatel Wireless Inc, Cellco Partnership, Verizon Communications Inc. The Court will issue a written order on the motions. The parties may e-fie their PowerPoint presentation slides used at the hearing. (Court Reporter/ECR Lynnette Lawrence). (Plaintiff Attorney Robert Franics Ruyak; Michael K. Lindsey; James M. Sarnecky). (Defendant Attorney Amardeep Lal Thakur; Bruce R. Zisser). (no document attached) (smy) (Entered: 03/02/2017) |
| 03/02/2017 | 225 | Minute Order for proceedings held before Magistrate Judge Karen S. Crawford: NOTICE OF CHANGE OF HEARING: Due to an unexpected conflict in the Court's calendar, the follow-up Settlement Conference currently set for 3/15/2017 at 2:30 p.m. in the Chambers of Magistrate Judge Karen S. Crawford is hereby reset to a telephonic Settlement Conference on 3/22/2017 at 2:30 p.m. The parties shall read and comply |

| | | with Crawford Chambers' Rules in preparation for the follow-up Settlement Conference. Confidential settlement briefs must be submitted to Chambers by 3/15/17. Counsel for defendants shall initiate and arrange the conference call into chambers with all parties on the line. (no document attached) (asm) (Entered: 03/02/2017) |
|---|---|---|
| 03/02/2017 | 226 | ORDER Denying Defendants' 153 Motion for Summary Judgment. Signed by Judge Marilyn L. Huff on 3/2/2017. (ag) (Entered: 03/02/2017) |
| 03/02/2017 | 227 | ORDER Denying without Prejudice Plaintiff's 157 Daubert Motion to Exclude Expert Testimony. Signed by Judge Marilyn L. Huff on 3/2/2017. (ag) (Entered: 03/02/2017) |
| 03/06/2017 | 228 | SUPPLEMENTAL DOCUMENT by Cellco Partnership, Novatel Wireless Inc, Verizon Communications Inc. re 153 MOTION for Summary Judgment *of Non-Infringement* . (Zisser, Bruce) (ag). (Entered: 03/06/2017) |
| 03/06/2017 | 229 | REPLY to Response to Motion re 169 MOTION to Strike *Portions of the Supplemental Report of Plaintiff's Damages Expert Patrick Kennedy* filed by Cellco Partnership, Novatel Wireless Inc, Verizon Communications Inc.. (Sohn, Joshua) (ag). (Entered: 03/06/2017) |
| 03/06/2017 | 230 | ORDER Denying Defendants' 169 Motion to Strike Supplemental Expert Report. Signed by Judge Marilyn L. Huff on 3/6/2017. (ag) (Entered: 03/07/2017) |
| 03/13/2017 | 231 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings (Motion Hearing) held on 3/2/2017, before Judge Marilyn L. Huff. Court Reporter/Transcriber: Echo Reporting. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER or the Court Reporter/Transcriber. If redaction is necessary, parties have seven calendar days from the file date of the Transcript to E-File the Notice of Intent to Request Redaction. The following deadlines would also apply if requesting redaction: Redaction Request Statement due to Court Reporter/Transcriber 4/3/2017. Redacted Transcript Deadline set for 4/13/2017. Release of Transcript Restriction set for 6/12/2017. (akr) (Entered: 03/13/2017) |
| 03/13/2017 | 232 | MOTION in Limine No. 1 to Preclude Use of Derogatory or Misleading Characterizations of Plaintiff by Carucel Investments, L.P.. (Harkins, Robert) (ag). (Entered: 03/13/2017) |
| 03/13/2017 | 233 | MOTION in Limine No. 2 to Preclude Use of Licenses and Other Documents Not Produced in Discovery by Carucel Investments, L.P.. (Attachments: # 1 Declaration and)(Harkins, Robert) (ag). (Entered: 03/13/2017) |
| 03/13/2017 | 234 | MOTION in Limine No. 3 to Exclude Verizon Use Survey by Carucel Investments, L.P.. (Attachments: # 1 Declaration, # 2 Exhibit 1 to Lindsey Declaration, # 3 Exhibit 2 to Lindsey Declaration, # 4 Exhibit 3 to Lindsey Declaration, # 5 Exhibit 4 to Lindsey Declaration)(Harkins, Robert) (ag). (Entered: 03/13/2017) |
| 03/13/2017 | 235 | MOTION in Limine No. 4 to Exclude Rejected Claim Constructions at Trial by Carucel Investments, L.P.. (Attachments: # 1 Memo of Points and Authorities (Redacted)) (Harkins, Robert) (ag) (Entered: 03/13/2017) |
| 03/13/2017 | 236 | MOTION to File Documents Under Seal (Harkins, Robert)(aef). (Entered: 03/13/2017) |

| 03/13/2017 | 237 | ***FILED AS SEALED DOCUMENT ON 3/28/2017*** - SEALED LODGED Proposed Document re: 236 MOTION to File Documents Under Seal. Document to be filed by Clerk if Motion to Seal is granted.(Harkins, Robert) (aef) (Entered: 03/13/2017) |
| --- | --- | --- |
| 03/13/2017 | 238 | MOTION in Limine No. 1 to Preclude *the New Infringement Theory First Disclosed in the February 2017 Kiasaleh Declaration* by Cellco Partnership, Novatel Wireless Inc, Verizon Communications Inc.. (Thakur, Amardeep) (ag). (Entered: 03/13/2017) |
| 03/13/2017 | 239 | MOTION in Limine No. 2 to Bar *Plaintiff From Presenting Details Regarding Non-Asserted Patents By Inventor Gavrilovich* by Cellco Partnership, Novatel Wireless Inc, Verizon Communications Inc.. (Thakur, Amardeep) (ag). (Entered: 03/13/2017) |
| 03/13/2017 | 240 | MOTION in Limine No. 3 to Preclude *Plaintiff From Offering A Video That Purports To Be A Sprint Commercial For Novatels Mifi Products* by Cellco Partnership, Novatel Wireless Inc, Verizon Communications Inc.. (Attachments: # 1 Declaration Amar L. Thakur ISO Defendants' Motions in Limine)(Thakur, Amardeep) (ag). (Entered: 03/13/2017) |
| 03/13/2017 | 241 | MOTION in Limine No. 4 to Bar Plaintiff From Stating Verizons Revenue Or Profits For The Accused Products [PUBLIC REDACTED VERSION] by Cellco Partnership, Novatel Wireless Inc, Verizon Communications Inc.. (Thakur, Amardeep) (ag) (Entered: 03/13/2017) |
| 03/13/2017 | 242 | MOTION in Limine No. 5 to Exclude the PWC Report On Patent Litigation by Cellco Partnership, Novatel Wireless Inc, Verizon Communications Inc.. (Thakur, Amardeep) (ag). (Entered: 03/13/2017) |
| 03/13/2017 | 243 | MOTION to File Documents Under Seal (Thakur, Amardeep) (aef). (Entered: 03/13/2017) |
| 03/13/2017 | 244 | ***FILED AS SEALED DOCUMENT ON 3/28/2017*** - SEALED LODGED Proposed Document re: 243 MOTION to File Documents Under Seal. Document to be filed by Clerk if Motion to Seal is granted.(Thakur, Amardeep) (aef) (Entered: 03/13/2017) |
| 03/14/2017 | 245 | NOTICE of Appearance by Viola Trebicka on behalf of Cellco Partnership, Novatel Wireless Inc, Verizon Communications Inc. (Trebicka, Viola)Attorney Viola Trebicka added to party Cellco Partnership(pty:dft), Attorney Viola Trebicka added to party Novatel Wireless Inc(pty:dft), Attorney Viola Trebicka added to party Verizon Communications Inc.(pty:dft) (ag). (Entered: 03/14/2017) |
| 03/15/2017 | 246 | Joint MOTION for Leave to File Excess Pages *for Briefs Re Daubert Motions and Motions in Limine* by Carucel Investments, L.P.. (Harkins, Robert) (ag). (Entered: 03/15/2017) |
| 03/16/2017 | 247 | ORDER Granting 246 Joint Motion for Leave to File Excess Pages. Signed by Judge Marilyn L. Huff on 3/15/2017. (ag) (Entered: 03/16/2017) |
| 03/20/2017 | 248 | RESPONSE in Opposition re 163 MOTION to Exclude *Expert Testimony of DeForest McDuff* filed by Cellco Partnership, Novatel Wireless Inc, Verizon Communications Inc.. (Attachments: # 1 Declaration of Bruce R. Zisser ISO Defendants' Opposition to Carucel's Daubert Motion Re McDuff)(Thakur, Amardeep) (ag). (Entered: 03/20/2017) |

| 03/20/2017 | 249 | RESPONSE in Opposition re 210 MOTION to Exclude *Supplemental Expert Testimony of DeForest McDuff Pursuant to Daubert* filed by Cellco Partnership, Novatel Wireless Inc, Verizon Communications Inc.. (Thakur, Amardeep) (ag). (Entered: 03/20/2017) |
| --- | --- | --- |
| 03/20/2017 | 250 | MOTION to File Documents Under Seal (Thakur, Amardeep) (aef). (Entered: 03/20/2017) |
| 03/20/2017 | 251 | ***FILED AS SEALED DOCUMENT ON 3/28/2017*** - SEALED LODGED Proposed Document re: 250 MOTION to File Documents Under Seal. Document to be filed by Clerk if Motion to Seal is granted. (Thakur, Amardeep) (aef) (Entered: 03/20/2017) |
| 03/20/2017 | 252 | RESPONSE in Opposition re 232 MOTION in Limine No. 1 to Preclude Use of Derogatory or Misleading Characterizations of Plaintiff filed by Cellco Partnership, Novatel Wireless Inc, Verizon Communications Inc.. (Thakur, Amardeep) (ag). (Entered: 03/20/2017) |
| 03/20/2017 | 253 | RESPONSE in Opposition re 233 MOTION in Limine No. 2 to Preclude Use of Licenses and Other Documents Not Produced in Discovery filed by Cellco Partnership, Novatel Wireless Inc, Verizon Communications Inc.. (Thakur, Amardeep) (ag). (Entered: 03/20/2017) |
| 03/20/2017 | 254 | RESPONSE in Opposition re 234 MOTION in Limine No. 3 to Exclude Verizon Use Survey filed by Cellco Partnership, Novatel Wireless Inc, Verizon Communications Inc.. (Attachments: # 1 Declaration (Supplemental) of Amar L. Thakur ISO Defendants' Opposition to Plaintiff's MIL No. 3)(Thakur, Amardeep) (ag). (Entered: 03/20/2017) |
| 03/20/2017 | 255 | RESPONSE in Opposition re 235 MOTION in Limine No. 4 to Exclude Rejected Claim Constructions at Trial filed by Cellco Partnership, Novatel Wireless Inc, Verizon Communications Inc.. (Thakur, Amardeep) (ag). (Entered: 03/20/2017) |
| 03/20/2017 | 256 | RESPONSE in Opposition re 154 MOTION to Exclude *Expert Testimony of Plaintiff's Damages Expert Patrick F. Kennedy (public version)* filed by Carucel Investments, L.P.. (Attachments: # 1 Declaration and Exhibits of Robert Harkins in Support of Opposition)(Harkins, Robert) (ag). (Entered: 03/20/2017) |
| 03/20/2017 | 257 | RESPONSE in Opposition re 207 MOTION to Exclude *the Supplemental Damages Report of Plaintiff's Damages Expert Patrick F. Kennedy (public version)* filed by Carucel Investments, L.P.. (Attachments: # 1 Declaration and Exhibits of Robert Harkins in Support of Opposition)(Harkins, Robert) (ag). (Entered: 03/20/2017) |
| 03/20/2017 | 258 | RESPONSE in Opposition re 238 MOTION in Limine No. 1 to Preclude *the New Infringement Theory First Disclosed in the February 2017 Kiasaleh Declaration* filed by Carucel Investments, L.P.. (Harkins, Robert) (ag). (Entered: 03/20/2017) |
| 03/20/2017 | 259 | RESPONSE in Opposition re 239 MOTION in Limine No. 2 to Bar *Plaintiff From Presenting Details Regarding Non-Asserted Patents By Inventor Gavrilovich* filed by Carucel Investments, L.P.. (Harkins, Robert) (ag). (Entered: 03/20/2017) |
| 03/20/2017 | 260 | RESPONSE in Opposition re 240 MOTION in Limine No. 3 to Preclude *Plaintiff From Offering A Video That Purports To Be A Sprint Commercial For Novatels Mifi* |

| | | |
|---|---|---|
| | | *Products* filed by Carucel Investments, L.P.. (Attachments: # 1 Declaration and Exhibits of Robert Harkins in Support of Opposition)(Harkins, Robert) (ag). (Entered: 03/20/2017) |
| 03/20/2017 | 261 | RESPONSE in Opposition re 241 MOTION in Limine No. 4 to Bar Plaintiff From Stating Verizons Revenue Or Profits For The Accused Products [PUBLIC REDACTED VERSION] *(public version)* filed by Carucel Investments, L.P.. (Attachments: # 1 Declaration and Exhibits of Robert Harkins in Support of Opposition)(Harkins, Robert) (ag). (Entered: 03/20/2017) |
| 03/20/2017 | 262 | RESPONSE in Opposition re 242 MOTION in Limine No. 5 to Exclude the PWC Report On Patent Litigation filed by Carucel Investments, L.P.. (Harkins, Robert) (ag). (Entered: 03/20/2017) |
| 03/20/2017 | 263 | MOTION to File Documents Under Seal (Harkins, Robert). (jah). (Entered: 03/20/2017) |
| 03/20/2017 | 264 | ***FILED AS SEALED DOCUMENT ON 3/28/2017*** - SEALED LODGED Proposed Document re: 263 MOTION to File Documents Under Seal. Document to be filed by Clerk if Motion to Seal is granted. (Harkins, Robert) (aef) (Entered: 03/20/2017) |
| 03/22/2017 | 265 | Minute Order for proceedings held before Magistrate Judge Karen S. Crawford:A telephonic Settlement Conference was held on March 22, 2017. The case did not settle. The parties requested an in-person settlement conference. Accordingly, an in-person Settlement Conference is hereby set for 3/27/2017 at 1:30 PM before Magistrate Judge Karen S. Crawford. Defendant Verizon Communications, Inc. may appear telephonically, but all other parties and counsel are required to appear in-person. It is so ORDERED. (no document attached) (asm) (Entered: 03/22/2017) |
| 03/23/2017 | 266 | Minute ORDER: A pre-trial conference in this action is currently scheduled for March 27, 2017 at 10:30 a.m. On March 22, 2017, the Magistrate Judge held a telephonic settlement conference with the parties. (Doc. No. 265.) At that conference, the parties requested an in-person settlement conference, and the Magistrate Judge scheduled an in-person settlement conference for March 27, 2017 at 1:30 p.m. In light of this, the Court continues the pre-trial conference to March 27, 2017 at 3:30 p.m. SO ORDERED by Judge Marilyn L. Huff on 3/23/2017. (no document attached) (smy) (Entered: 03/23/2017) |
| 03/27/2017 | 267 | REPLY to Response to Motion re 207 MOTION to Exclude *the Supplemental Damages Report of Plaintiff's Damages Expert Patrick F. Kennedy* filed by Cellco Partnership, Novatel Wireless Inc, Verizon Communications Inc.. (Thakur, Amardeep) (ag). (Entered: 03/27/2017) |
| 03/27/2017 | 268 | REPLY to Response to Motion re 238 MOTION in Limine No. 1 to Preclude *the New Infringement Theory First Disclosed in the February 2017 Kiasaleh Declaration* filed by Cellco Partnership, Novatel Wireless Inc, Verizon Communications Inc.. (Thakur, Amardeep) (ag). (Entered: 03/27/2017) |
| 03/27/2017 | 269 | REPLY to Response to Motion re 239 MOTION in Limine No. 2 to Bar *Plaintiff From Presenting Details Regarding Non-Asserted Patents By Inventor Gavrilovich* filed by Cellco Partnership, Novatel Wireless Inc, Verizon Communications Inc.. (Thakur, |

| | | |
|---|---|---|
| | | Amardeep)(ag). (Entered: 03/27/2017) |
| 03/27/2017 | 270 | REPLY to Response to Motion re 240 MOTION in Limine No. 3 to Preclude *Plaintiff From Offering A Video That Purports To Be A Sprint Commercial For Novatels Mifi Products* filed by Cellco Partnership, Novatel Wireless Inc, Verizon Communications Inc.. (Thakur, Amardeep) (ag). (Entered: 03/27/2017) |
| 03/27/2017 | 271 | REPLY to Response to Motion re 241 MOTION in Limine No. 4 to Bar Plaintiff From Stating Verizons Revenue Or Profits For The Accused Products [PUBLIC REDACTED VERSION] filed by Cellco Partnership, Novatel Wireless Inc, Verizon Communications Inc.. (Thakur, Amardeep) (ag). (Entered: 03/27/2017) |
| 03/27/2017 | 272 | REPLY to Response to Motion re 242 MOTION in Limine No. 5 to Exclude the PWC Report On Patent Litigation filed by Cellco Partnership, Novatel Wireless Inc, Verizon Communications Inc.. (Thakur, Amardeep) (ag). (Entered: 03/27/2017) |
| 03/27/2017 | 273 | Minute Order for proceedings held before Magistrate Judge Karen S. Crawford:A Mandatory Settlement Conference was held on 3/27/2017. The case did not settle. (no document attached) (asm) (Entered: 03/27/2017) |
| 03/27/2017 | 274 | REPLY to Response to Motion re 154 MOTION to Exclude *Expert Testimony of Plaintiff's Damages Expert Patrick F. Kennedy PUBLIC REDACTED VERSION* filed by Cellco Partnership, Novatel Wireless Inc, Verizon Communications Inc.. (Thakur, Amardeep) (ag). (Entered: 03/27/2017) |
| 03/27/2017 | 275 | MOTION to File Documents Under Seal (Thakur, Amardeep) (aef). (Entered: 03/27/2017) |
| 03/27/2017 | 276 | ***FILED AS SEALED DOCUMENT ON 3/28/2017*** - SEALED LODGED Proposed Document re: 275 MOTION to File Documents Under Seal. Document to be filed by Clerk if Motion to Seal is granted. (Thakur, Amardeep) (aef) (Entered: 03/27/2017) |
| 03/27/2017 | 277 | PRETRIAL ORDER. Signed by Judge Marilyn L. Huff on 3/27/2017. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3)(ag) (jao). (Entered: 03/27/2017) |
| 03/27/2017 | 278 | Minute Entry for proceedings held before Judge Marilyn L. Huff: Final Pretrial Conference held on 3/27/2017. The Court will issue a written order. The parties are to send a copy service to make copies of the juror questionnaires, under a protective order, and are to split the cost. Motion Hearing and Motions In Limine Hearing set for 4/3/2017 09:00 AM in Courtroom 15A before Judge Marilyn L. Huff is confirmed. Jury Trial set for 4/4/2017 09:00 AM in Courtroom 15A before Judge Marilyn L. Huff is confirmed. (Court Reporter/ECR Lynnette Lawrence). (Plaintiff Attorney Robert Francis Ruak; Brittany Vacek Ruyak). (Defendant Attorney Amardeep Lai Thakur; Bruce R. Zisser). (no document attached) (smy) (Entered: 03/27/2017) |
| 03/27/2017 | 279 | REPLY to Response to Motion re 163 MOTION to Exclude *Expert Testimony of DeForest McDuff* filed by Carucel Investments, L.P.. (Harkins, Robert) (ag). (Entered: 03/27/2017) |
| 03/27/2017 | 280 | REPLY to Response to Motion re 210 MOTION to Exclude *Supplemental Expert Testimony of DeForest McDuff Pursuant to Daubert* filed by Carucel Investments, L.P.. (Harkins, Robert) (ag). (Entered: 03/27/2017) |

| 03/27/2017 | 281 | REPLY to Response to Motion re 232 MOTION in Limine No. 1 to Preclude Use of Derogatory or Misleading Characterizations of Plaintiff filed by Carucel Investments, L.P.. (Harkins, Robert) (ag). (Entered: 03/27/2017) |
| 03/27/2017 | 282 | REPLY to Response to Motion re 233 MOTION in Limine No. 2 to Preclude Use of Licenses and Other Documents Not Produced in Discovery filed by Carucel Investments, L.P.. (Harkins, Robert) (ag). (Entered: 03/27/2017) |
| 03/27/2017 | 283 | REPLY to Response to Motion re 234 MOTION in Limine No. 3 to Exclude Verizon Use Survey filed by Carucel Investments, L.P.. (Harkins, Robert) (ag). (Entered: 03/27/2017) |
| 03/27/2017 | 284 | REPLY to Response to Motion re 235 MOTION in Limine No. 4 to Exclude Rejected Claim Constructions at Trial filed by Carucel Investments, L.P.. (Harkins, Robert) (ag). (Entered: 03/27/2017) |
| 03/28/2017 | 285 | ORDER: (1) Granting 236 , 243 , 250 , 263 , 275 the Parties' Motions to File Documents Under Seal; and (2) Directing the Clerk to File the Proposed Documents Under Seal. Signed by Judge Marilyn L. Huff on 3/28/2017. (aef) (sjt). (Entered: 03/28/2017) |
| 03/28/2017 | 291 | MOTION to File Documents Under Seal (Thakur, Amardeep)(aef). (Entered: 03/28/2017) |
| 03/28/2017 | 292 | ***FILED AS SEALED DOCUMENT ON 3/29/2017*** - SEALED LODGED Proposed Document re: 291 MOTION to File Documents Under Seal. Document to be filed by Clerk if Motion to Seal is granted. (Thakur, Amardeep) (aef) (Entered: 03/28/2017) |
| 03/29/2017 | 293 | Minute ORDER: A juror questionnaire was completed by jurors, and the parties were permitted to copy and review the questionnaires under a protective order. The Court orders the parties to meet and confer regarding the responses given in the questionnaires and to jointly submit to the Court any strikes for cause, whether joint or disputed, by Thursday, March 30, 2017 at 12:00 p.m. SO ORDERED by Judge Marilyn L. Huff on 3/29/2017. (no document attached) (smy) (Entered: 03/29/2017) |
| 03/29/2017 | 294 | ORDER: (1) Granting 291 Defendants' Motion to File Documents Under Seal; and (2) Directing the Clerk to File the Proposed Documents Under Seal. Signed by Judge Marilyn L. Huff on 3/29/2017. (aef) (sjt). (Entered: 03/29/2017) |
| 03/30/2017 | 296 | Minute ORDER: On March 29, 2017, the Court ordered the parties to meet and confer regarding the responses given in the completed juror questionnaires and to jointly submit to the Court any strikes for cause, whether joint or disputed. (Doc. No. 293.) On March 30, 2017, the parties jointly submitted to the Court their proposed juror strikes for cause. The Court has reviewed the parties' joint submission. The Court grants the parties' agreed strikes for cause and removes those jurors from the pool that will be used to randomly select the 30 jurors for voir dire. Further, in the interests of fairness and efficiency, the Court, exercising its sound discretion, will also not include the jurors at issue in the parties' disputed proposed strikes in the pool that will be used to randomly select the 30 jurors for voir dire. The Court notes that absent these jurors, there still remains a pool of nearly 70 jurors from which to select a venire of 30 jurors. In the alternative, the Court grants parties' disputed strikes for cause. SO ORDERED |

| | | by Judge Marilyn L. Huff on 3/30/2017. (no document attached) (smy) (Entered: 03/30/2017) |
|---|---|---|
| 03/30/2017 | 297 | MOTION to File Documents Under Seal (Ruyak, Brittany) (aef). (Entered: 03/30/2017) |
| 03/30/2017 | 298 | ***FILED AS SEALED DOCUMENT ON 3/30/2017*** - SEALED LODGED Proposed Document re: 297 MOTION to File Documents Under Seal. Document to be filed by Clerk if Motion to Seal is granted. (Ruyak, Brittany) (aef) (Entered: 03/30/2017) |
| 03/30/2017 | 299 | ORDER: (1) Granting 297 the Parties' Motion to File Document Under Seal; and (2) Directing the Clerk to File the Proposed Document Under Seal. Signed by Judge Marilyn L. Huff on 3/30/2017. (aef)(sjt). (Entered: 03/30/2017) |
| 03/31/2017 | 301 | MOTION to Allow the Use of Electrical Equipment in the Courtroom by Cellco Partnership, Novatel Wireless Inc, Verizon Communications Inc.. (Zisser, Bruce) (ag). (Entered: 03/31/2017) |
| 03/31/2017 | 302 | MOTION to Allow the Use of Electrical Equipment in the Courtroom by Carucel Investments, L.P.. (Ruyak, Brittany) (ag). (Entered: 03/31/2017) |
| 04/02/2017 | 303 | Amended Exhibit List by Cellco Partnership, Novatel Wireless Inc, Verizon Communications Inc. (Zisser, Bruce) (ag). (Entered: 04/02/2017) |
| 04/03/2017 | 304 | Minute Entry for proceedings held before Judge Marilyn L. Huff: Motion and Motions In Limine Hearing held on 4/3/2017 re 242 MOTION in Limine No. 5 to Exclude the PWC Report On Patent Litigation filed by Novatel Wireless Inc, Cellco Partnership, Verizon Communications Inc., 238 MOTION in Limine No. 1 to Preclude *the New Infringement Theory First Disclosed in the February 2017 Kiasaleh Declaration* filed by Novatel Wireless Inc, Cellco Partnership, Verizon Communications Inc., 240 MOTION in Limine No. 3 to Preclude *Plaintiff From Offering A Video That Purports To Be A Sprint Commercial For Novatels Mifi Products* filed by Novatel Wireless Inc, Cellco Partnership, Verizon Communications Inc., 232 MOTION in Limine No. 1 to Preclude Use of Derogatory or Misleading Characterizations of Plaintiff filed by Carucel Investments, L.P., 239 MOTION in Limine No. 2 to Bar *Plaintiff From Presenting Details Regarding Non-Asserted Patents By Inventor Gavrilovich* filed by Novatel Wireless Inc, Cellco Partnership, Verizon Communications Inc., 154 MOTION to Exclude *Expert Testimony of Plaintiff's Damages Expert Patrick F. Kennedy* filed by Novatel Wireless Inc, Cellco Partnership, Verizon Communications Inc., 234 MOTION in Limine No. 3 to Exclude Verizon Use Survey filed by Carucel Investments, L.P., 233 MOTION in Limine No. 2 to Preclude Use of Licenses and Other Documents Not Produced in Discovery filed by Carucel Investments, L.P., 241 MOTION in Limine No. 4 to Bar Plaintiff From Stating Verizons Revenue Or Profits For The Accused Products [PUBLIC REDACTED VERSION] filed by Novatel Wireless Inc, Cellco Partnership, Verizon Communications Inc., 163 MOTION to Exclude *Expert Testimony of DeForest McDuff* filed by Carucel Investments, L.P., 235 MOTION in Limine No. 4 to Exclude Rejected Claim Constructions at Trial filed by Carucel Investments, L.P., 207 MOTION to Exclude *the Supplemental Damages Report of Plaintiff's Damages Expert Patrick F. Kennedy* filed by Novatel Wireless Inc, Cellco Partnership, Verizon Communications Inc., 210 MOTION to Exclude |

| | | |
|---|---|---|
| | | *Supplemental Expert Testimony of DeForest McDuff Pursuant to Daubert* filed by Carucel Investments, L.P. The submits the motions and will issue a written decision and order. Jury Trial set for 4/4/2017 09:00 AM in Courtroom 15A before Judge Marilyn L. Huff - Confirmed. (Court Reporter/ECR Lynnette Lawrence). (Plaintiff Attorney Robert Francis Ruyak; Robert Michael Harkins, Jr.; Michael K. Lindsey). (Defendant Attorney Amardeep Lal Thakur; David Michael Grable; Joshua Lee Sohn; Viola Trebicka). (no document attached) (smy) (Entered: 04/03/2017) |
| 04/03/2017 | 305 | ORDER: (1) Granting in Part and Denying in Part 163 , 210 Plaintiff's Daubert Motions; (2) Denying without Prejudice 154 , 207 Defendants' Daubert Motions; (3) Denying without Prejudice 232 , 233 , 234 , 235 Plaintiff's Motions in Limine; and (4) Granting in Part and Denying in Part 238 , 239 , 240 , 241 , 242 , 287 Defendants' Motions in Limine. Signed by Judge Marilyn L. Huff on 4/3/2017. (aef) (Entered: 04/03/2017) |
| 04/03/2017 | 306 | ORDER Granting 301 Permission to Bring Equipment in the Courthouse and Courtroom on April 3, 2017. Signed by Judge Marilyn L. Huff on 4/3/2017. (ag) (jao). (Entered: 04/03/2017) |
| 04/03/2017 | 307 | ORDER Granting 302 Permission to Bring and Use Electronic and Related Equipment in the Courthouse and Courtroom on April 3, 2017 for Trial Scheduled April 4, 2017. Signed by Judge Marilyn L. Huff on 4/3/2017. (ag) (jao). (Entered: 04/03/2017) |
| 04/03/2017 | 308 | Minute ORDER: During the April 3, 2017 hearing on the parties' Daubert motions and motions in limine, Plaintiff raised the issue of Defendants attempting to introduce new trial exhibits that had not been timely disclosed. As explained during the hearing, the parties are limited to the trial exhibit lists contained in the Court's PreTrial Order (Doc. No. 277 ), the parties may not seek to introduce any exhibits at trial that are not on that list, absent further order of the Court. SO ORDERED by Judge Marilyn L. Huff on 4/3/2017. (no document attached) (smy) (Entered: 04/03/2017) |
| 04/03/2017 | 309 | NOTICE *of Defendants' Proposed Jury Verdict* by Cellco Partnership, Novatel Wireless Inc, Verizon Communications Inc. (Sohn, Joshua) (ag) (Entered: 04/03/2017) |
| 04/03/2017 | 310 | NOTICE *of Plaintiff's Proposed Special Jury Verdict* by Carucel Investments, L.P. (Ruyak, Brittany) (ag) (Entered: 04/03/2017) |
| 04/03/2017 | 311 | PROPOSED JURY INSTRUCTIONS by Carucel Investments, L.P.. (Ruyak, Brittany) (ag) (Entered: 04/03/2017) |
| 04/04/2017 | 312 | PROPOSED JURY INSTRUCTIONS by Carucel Investments, L.P.. (Attachments: # 1 Proof of Service)(Ruyak, Brittany) (ag) (Entered: 04/04/2017) |
| 04/04/2017 | 313 | PROPOSED JURY INSTRUCTIONS by Cellco Partnership, Novatel Wireless Inc, Verizon Communications Inc.. (Sohn, Joshua) (ag) (Entered: 04/04/2017) |
| 04/04/2017 | 314 | PROPOSED JURY INSTRUCTIONS by Cellco Partnership, Novatel Wireless Inc, Verizon Communications Inc.. (Sohn, Joshua) (ag) (Entered: 04/04/2017) |
| 04/04/2017 | 315 | Minute ORDER: Good cause appearing, the Court orders the juror questionnaires of the impaneled jurors be filed under seal, absent further order of the Court. SO ORDERED by Judge Marilyn L. Huff on 4/4/2017. (no document attached) (smy) (Entered: 04/04/2017) |

| 04/04/2017 | 316 | Minute Entry for proceedings held before Judge Marilyn L. Huff: Jury Trial held on 4/4/2017. Day of Trial 1. Jury impaneled and sworn. Swore witnesses. Exhibits marked/received. Plaintiff's oral motion to exclude witnesses other than experts and one company representative per side - Granted. Jury Trial continued to 4/5/2017 09:00 AM in Courtroom 15A before Judge Marilyn L. Huff. (Court Reporter/ECR Lynnette Lawrence). (Plaintiff Attorney Robert Francis Ruyak; Michael K. Lindsey; Korula T. Cherian; Michael K. Lindsey; Britanny Vacek Ruyak; Robert Michael Harkins). (Defendant Attorney David Michael Grable; Amardeep Lal Thakur; Bruce R. Zisser; Joshua Lee Sohn; Viola Trebicka). (no document attached) (smy) (Entered: 04/04/2017) |
|---|---|---|
| 04/04/2017 | 317 | TRIAL BRIEF *Regarding Indemnification Evidence* by Cellco Partnership, Novatel Wireless Inc, Verizon Communications Inc.. (Sohn, Joshua) (ag). (Entered: 04/04/2017) |
| 04/05/2017 | 319 | RESPONSE re 317 Trial Brief filed by Carucel Investments, L.P.. (Attachments: # 1 Proof of Service Certificate of Service)(Ruyak, Brittany) (ag). (Entered: 04/05/2017) |
| 04/05/2017 | 320 | Minute Entry for proceedings held before Judge Marilyn L. Huff: Jury Trial held on 4/5/2017. Day of Trial 2. 8 Trial Jurors Present. Swore witnesses. Exhibits marked/received. Plaintiff rest. Defendant's oral Rule 50 motions are submitted. Jury Trial continued to 4/6/2017 09:00 AM in Courtroom 15A before Judge Marilyn L. Huff. (Court Reporter/ECR Lynnette Lawrence). (Plaintiff Attorney Robert Francis Ruyak; Britanny Vacek Ruyak; Michael K. Lindsey; Korula T. Cherian; Robert Michael Harkins, Jr.). (Defendant Attorney David Michael Grable; Amardeep Lal Thakur; Bruce R. Zisser; Joshua Lee Sohn; Viola Trebicka). (no document attached) (smy) (Entered: 04/05/2017) |
| 04/06/2017 | 321 | MOTION to Preclude *Defendants' Deposition Designations of Markus Uhlirz* by Carucel Investments, L.P.. (Attachments: # 1 Proof of Service Certificate of Service) (Ruyak, Brittany) (ag). (Entered: 04/06/2017) |
| 04/06/2017 | 322 | NOTICE *Annotations to Court's Proposed Final Jury Instructions* by Carucel Investments, L.P. (Attachments: # 1 Proof of Service)(Ruyak, Brittany) (ag). (Entered: 04/06/2017) |
| 04/06/2017 | 323 | NOTICE *of Defendants' Annotations to Court's Final Jury Instructions* by Cellco Partnership, Novatel Wireless Inc, Verizon Communications Inc. (Sohn, Joshua) (ag). (Entered: 04/06/2017) |
| 04/06/2017 | 324 | RESPONSE in Opposition re 321 MOTION to Preclude *Defendants' Deposition Designations of Markus Uhlirz* filed by Cellco Partnership, Novatel Wireless Inc, Verizon Communications Inc.. (Sohn, Joshua) (ag). (Entered: 04/06/2017) |
| 04/06/2017 | 325 | Minute Entry for proceedings held before Judge Marilyn L. Huff: Jury Trial held on 4/6/2017. Day of Trial 3. 8 Trial Jurors Present. Swore witnesses. Exhibits marked/received. Jury Trial continued to 4/7/2017 09:00 AM in Courtroom 15A before Judge Marilyn L. Huff. (Court Reporter/ECR Lynnette Lawrence). (Plaintiff Attorney Robert Francis Ruyak; Britanny Vacek Ruyak; Michael K. Lindsey; Korula T. Cherian; Robert Michael Harkins, Jr.). (Defendant Attorney David Michael Grable; Amardeep Lal Thakur; Bruce R. Zisser; Joshua Lee Sohn; Viola Trebicka). (no document attached) (smy) (Entered: 04/06/2017) |

| 04/06/2017 | 326 | TRIAL BRIEF *to Enforce Court's In Limine Order* by Cellco Partnership, Novatel Wireless Inc, Verizon Communications Inc.. (Sohn, Joshua) (ag). (Entered: 04/06/2017) |
| --- | --- | --- |
| 04/07/2017 | 327 | Minute ORDER: On April 6, 2017, Plaintiff filed a motion to preclude Defendants' deposition designations of Markus Uhlirz. (Doc. No. 321 .) On April 6, 2017, the Court orally denied the motion for the reasons stated on the record. SO ORDERED by Judge Marilyn L. Huff. (no document attached) (smy) (Entered: 04/07/2017) |
| 04/07/2017 | 328 | Minute Entry for proceedings held before Judge Marilyn L. Huff: Jury Trial held on 4/7/2017. Day of Trial 4. 8 Trial Jurors Present. Swore witnesses. Exhibits marked/received. Defendants rest. Plaintiff's oral rule 50 motions - Submitted. Defendant's oral rule 50 motions - Submitted. Closing arguments presented. Jury instructions read to the Jury. Bailiffs sworn. Jury Trial (Jury Deliberations) set for 4/10/2017 09:00 AM in Courtroom 15A before Judge Marilyn L. Huff. (Court Reporter/ECR Lynnette Lawrence). (Plaintiff Attorney Robert Francis Ruyak; Britanny Vacek Ruyak; Michael K. Lindsey; Korula T. Cherian; Robert Michael Harkins, Jr.). (Defendant Attorney David Michael Grable; Amardeep Lal Thakur; Bruce R. Zisser; Joshua Lee Sohn; Viola Trebicka). (no document attached) (smy) (Entered: 04/07/2017) |
| 04/10/2017 | 329 | Minute Entry for proceedings held before Judge Marilyn L. Huff: Jury Trial completed on 4/10/2017. Day of Trial 5. 8 Trial Jurors Present. Court exhibit marked/received. Jury retired to deliberate at 09:00 AM. Jury returned at 11:50 AM. Jury Verdict in favor of Defendants. Jury polled as to infringement. Meals ordered at government expense. Jurors discharged at 12:04 PM. Exhibits retained by the parties pursuant to the Local Rules. Jury Trial concluded. (Court Reporter/ECR Lynnette Lawrence). (Plaintiff Attorney Robert Francis Ruyak; Brittany Vacek Ruyak; Robert Michael Harkins, Jr.). (Defendant Attorney Amardeep Lal Thakur; Bruce R. Zisser; David Michael Grable (by telephone)). (no document attached) (smy) (Entered: 04/10/2017) |
| 04/10/2017 | 330 | WITNESS LIST. (smy) (Entered: 04/10/2017) |
| 04/10/2017 | 331 | PLAINTIFF EXHIBIT LIST. (smy) (Entered: 04/10/2017) |
| 04/10/2017 | 332 | DEFENDANT EXHIBIT LIST. (smy) (Entered: 04/10/2017) |
| 04/10/2017 | 333 | COURT EXHIBIT LIST. (smy) (Additional attachment(s) added on 4/10/2017: # 1 Court Exhibit 1, # 2 Court Exhibit 2 UNDER SEAL, # 3 Court Exhibit 3 UNDER SEAL, # 4 Court Exhibit 4) (smy). Modified on 4/13/2017 (tb-v). (Entered: 04/10/2017) |
| 04/10/2017 | 334 | JURY INSTRUCTIONS. (smy) (Entered: 04/10/2017) |
| 04/10/2017 | 335 | JURY SPECIAL VERDICT. (smy) (Entered: 04/10/2017) |
| 04/10/2017 | 336 | JUDGMENT in favor of Defendants. Pursuant to the jury's findings the Court enters judgment in favor of Defendants and against Plaintiff. Signed by Judge Marilyn L. Huff on 4/10/2017.(ag) (sjt). (Entered: 04/10/2017) |
| 04/10/2017 | 347 | REPORT of Patent and Trademark Closing Regarding patent and/or trademark number(s): 7,221,904, 7,848,701, 7,979,023, 8,463,177, 8,718,543 (Re: Doc. No. 336 Judgment).(cc: USPTO) (jrd) (Entered: 05/08/2017) |

| 04/11/2017 | 337 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings (Trial, Volume I) held on 4/4/2017, before Judge Marilyn L. Huff. Court Reporter/Transcriber: Echo Reporting. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER or the Court Reporter/Transcriber. If redaction is necessary, parties have seven calendar days from the file date of the Transcript to E-File the Notice of Intent to Request Redaction. The following deadlines would also apply if requesting redaction: Redaction Request Statement due to Court Reporter/Transcriber 5/2/2017. Redacted Transcript Deadline set for 5/12/2017. Release of Transcript Restriction set for 7/10/2017. (akr) (Entered: 04/11/2017) |
| 04/11/2017 | 338 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings (Trial, Volume II) held on 4/5/2017, before Judge Marilyn L. Huff. Court Reporter/Transcriber: Echo Reporting. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER or the Court Reporter/Transcriber. If redaction is necessary, parties have seven calendar days from the file date of the Transcript to E-File the Notice of Intent to Request Redaction. The following deadlines would also apply if requesting redaction: Redaction Request Statement due to Court Reporter/Transcriber 5/2/2017. Redacted Transcript Deadline set for 5/12/2017. Release of Transcript Restriction set for 7/10/2017. (akr) (Entered: 04/11/2017) |
| 04/11/2017 | 339 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings (Trial, Volume III) held on 4/6/2017, before Judge Marilyn L. Huff. Court Reporter/Transcriber: Echo Reporting. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER or the Court Reporter/Transcriber. If redaction is necessary, parties have seven calendar days from the file date of the Transcript to E-File the Notice of Intent to Request Redaction. The following deadlines would also apply if requesting redaction: Redaction Request Statement due to Court Reporter/Transcriber 5/2/2017. Redacted Transcript Deadline set for 5/12/2017. Release of Transcript Restriction set for 7/10/2017. (akr) (Entered: 04/11/2017) |
| 04/11/2017 | 340 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings (Trial, Volume IV) held on 4/7/2017, before Judge Marilyn L. Huff. Court Reporter/Transcriber: Echo Reporting. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER or the Court Reporter/Transcriber. If redaction is necessary, parties have seven calendar days from the file date of the Transcript to E-File the Notice of Intent to Request Redaction. The following deadlines would also apply if requesting redaction: Redaction Request Statement due to Court Reporter/Transcriber 5/2/2017. Redacted Transcript Deadline set for 5/12/2017. Release of Transcript Restriction set for 7/10/2017. (akr) (Entered: 04/11/2017) |
| 04/11/2017 | 341 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings (Trial, Volume V) held on 4/10/2017, before Judge Marilyn L. Huff. Court Reporter/Transcriber: Echo |

| | | |
|---|---|---|
| | | Reporting. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER or the Court Reporter/Transcriber. If redaction is necessary, parties have seven calendar days from the file date of the Transcript to E-File the Notice of Intent to Request Redaction. The following deadlines would also apply if requesting redaction: Redaction Request Statement due to Court Reporter/Transcriber 5/2/2017. Redacted Transcript Deadline set for 5/12/2017. Release of Transcript Restriction set for 7/10/2017. (akr) (Entered: 04/11/2017) |
| 04/12/2017 | 342 | MOTION to File Documents Under Seal (Zisser, Bruce) (aef). (Entered: 04/12/2017) |
| 04/14/2017 | 343 | ORDER Granting 342 Defendants' Motion to Seal Trial Exhibit CF. The Court grants Defendants' request to seal Trial Exhibit CF without prejudice to the Court modifying this order at a later time. Signed by Judge Marilyn L. Huff on 4/14/2017. (aef) (Entered: 04/17/2017) |
| 04/24/2017 | 344 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings (Motion and Motions in limine Hearing) held on 4/3/2017, before Judge Marilyn L. Huff. Court Reporter/Transcriber: Echo Reporting. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER or the Court Reporter/Transcriber. If redaction is necessary, parties have seven calendar days from the file date of the Transcript to E-File the Notice of Intent to Request Redaction. The following deadlines would also apply if requesting redaction: Redaction Request Statement due to Court Reporter/Transcriber 5/15/2017. Redacted Transcript Deadline set for 5/25/2017. Release of Transcript Restriction set for 7/24/2017. (akr) (Entered: 04/24/2017) |
| 04/24/2017 | 345 | BILL OF COSTS submitted by Defendants Cellco Partnership, Novatel Wireless Inc, Verizon Communications Inc. in the amount of $ 81,455.46. Hearing set for 5/15/2017 at 09:30AM. (Attachments: # 1 Notice of Motion and Motion to the Clerk to Tax Costs, # 2 Memo of Points and Authorities in Support of its Bill of Costs, # 3 Declaration of Bruce R. Zisser ISO of Defendants' Bill of Costs)(Zisser, Bruce) (ag). (Entered: 04/24/2017) |
| 05/03/2017 | 346 | NOTICE of Hearing - re 345 Bill of Costs, filed by Novatel Wireless Inc, Cellco Partnership, Verizon Communications Inc. : Hearing set for 5/15/2017 at 09:30AM. Any opposition or responsive pleading due 5/11/2017. All parties requesting to appear telephonically for this Bill of Costs hearing are directed to join on a conference call, then contact T. Lewis 619-557-5344 at the time of the hearing. (no document attached) (llb) (Entered: 05/03/2017) |
| 05/08/2017 | 348 | MOTION for Judgment as a Matter of Law *or, in the Alternative*, MOTION for New Trial by Carucel Investments, L.P.. (Attachments: # 1 Memo of Points and Authorities in Support of Motion, # 2 Declaration of Robert Harkins in Support of Motion, # 3 Exhibit 1 to Harkins Dec, # 4 Exhibit 2 to Harkins Dec, # 5 Exhibit 3 to Harkins Dec, # 6 Exhibit 4 to Harkins Dec, # 7 Exhibit 5 to Harkins Dec, # 8 Exhibit 6 to Harkins Dec, # 9 Exhibit 7 to Harkins Dec, # 10 Exhibit 8 (part 1) to Harkins Dec, # 11 Exhibit 8 (part 2) to Harkins Dec, # 12 Exhibit 9 to Harkins Dec, # 13 Exhibit 10 to Harkins Dec, # 14 Exhibit 11 to Harkins Dec, # 15 Exhibit 12 to Harkins Dec, # 16 Exhibit 13 to |

| | | |
|---|---|---|
| | | Harkins Dec)(Harkins, Robert) (ag). (Entered: 05/08/2017) |
| 05/11/2017 | 349 | Objection to Bill of Costs re 345 Bill of Costs, filed by Carucel Investments, L.P.. (Harkins, Robert). (jah). (Entered: 05/11/2017) |
| 05/12/2017 | 350 | REPLY - Other re 345 Bill of Costs, filed by Cellco Partnership, Novatel Wireless Inc, Verizon Communications Inc.. (Zisser, Bruce) (fth). (Entered: 05/12/2017) |
| 05/15/2017 | 351 | NOTICE of Hearing - Bill of Costs, re 348 MOTION for Judgment as a Matter of Law *or, in the Alternative* MOTION for New Trial filed by Carucel Investments, L.P. : Hearing was set for and held 5/15/2017 at 10:00AM. Robert Harkins appeared for Carucel Investments, L.P. and Bruce Zisser appeared for Cellco Partnership, Novatel Wireless Inc, and Verizon Communications Inc. All parties agreed that the Bill of Costs should be continued until the final entry of an Order from the motions pending before District Judge Marilyn L. Huff is appropriate. The Bill of Costs hearing is continued to 7/12/2017 at 10:00AM. Opposition and responsive pleadings have already been filed. All parties requesting to appear telephonically for this Bill of Costs hearing are directed to join on a conference call, then contact T. Lewis 619-557-5344 at the time of the hearing. (no document attached) (tel) (Entered: 05/15/2017) |
| 05/17/2017 | 352 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings (Claims Construction Hearing) held on 9/16/2016, before Judge Marilyn L. Huff. Court Reporter/Transcriber: Echo Reporting. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER or the Court Reporter/Transcriber. If redaction is necessary, parties have seven calendar days from the file date of the Transcript to E-File the Notice of Intent to Request Redaction. The following deadlines would also apply if requesting redaction: Redaction Request Statement due to Court Reporter/Transcriber 6/7/2017. Redacted Transcript Deadline set for 6/19/2017. Release of Transcript Restriction set for 8/15/2017. (akr) (Entered: 05/17/2017) |
| 05/26/2017 | 353 | RESPONSE in Opposition re 348 MOTION for Judgment as a Matter of Law *or, in the Alternative* MOTION for New Trial filed by Cellco Partnership, Novatel Wireless Inc, Verizon Communications Inc.. (Thakur, Amardeep) (ag). (Entered: 05/26/2017) |
| 06/05/2017 | 354 | REPLY to Response to Motion re 348 MOTION for Judgment as a Matter of Law *or, in the Alternative* MOTION for New Trial filed by Carucel Investments, L.P.. (Harkins, Robert) (jpp). (Entered: 06/05/2017) |
| 06/12/2017 | 355 | Minute Entry for proceedings held before Judge Marilyn L. Huff: Motion Hearing held on 6/12/2017 re 348 MOTION for Judgment as a Matter of Law *or, in the Alternative*, MOTION for New Trial filed by Carucel Investments, L.P. The Court submits the motions, and will issue a written decision and order. (Court Reporter/ECR Lynnette Lawrence). (Plaintiff Attorney Robert Francis Ruyak; Robert Michael Harkins, Jr.). (Defendant Attorney Amardeep Lal Thakur; Bruce R. Zisser; Joshua Lee Sohn). (no document attached) (smy) (Entered: 06/12/2017) |
| 06/13/2017 | 356 | ORDER Denying Plaintiff's 348 Motion for Judgment as a Matter of Law or, in the Alternative, for a New Trial. Signed by Judge Marilyn L. Huff on 6/13/2017. (ag) (Entered: 06/13/2017) |

| 07/13/2017 | 357 | NOTICE OF APPEAL to the Federal Circuit as to 356 Order Denying Plaintiff's Motion for Judgment as a Matter of Law or, in the Alternative, for a New Trial, 336 Judgment in favor of Defendants, 334 Jury Instructions, 305 Order Granting in Part and Denying in Part Plaintiff's Daubert Motions, Denying without Prejudice Defendants' Daubert Motions, Denying without Prejudice Plaintiff's Motions in Limine, and Granting in Part and Denying in Part Defendants' Motions in Limine, 227 Order Denying without Prejudice Plaintiff's Daubert Motion to Exclude Expert Testimony, 131 Claim Construction Order, by Carucel Investments, L.P. (Filing fee $ 505 receipt number 0974-10247518.) (Harkins, Robert). (Modified on 7/13/2017: Edited docket text re linked Judgment and Orders. Notice of Appeal electronically transmitted to the US Court of Appeals for the Federal Circuit.) (akr). (Entered: 07/13/2017) |
|---|---|---|

I hereby attest and certify on **Jul 13, 2017** that the foregoing document is a full, true and correct copy of the original on file in my office and in my legal custody.

Clerk, U.S. District Court
Southern District of California

By: **s/ Angela Rowland**
     Deputy

1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

9
10
11

| | |
|---|---|
| CARUCEL INVESTMENTS, L.P., a Delaware limited partnership, | Case No.:  16-cv-118-H -KSC |
| Plaintiff, | **CLAIM CONSTRUCTION ORDER** |
| v. | |
| NOVATEL WIRELESS, INC., a Delaware corporation; AT&T MOBILITY LLC, a Delaware limited liability company; VERIZON COMMUNICATIONS, INC., a Delaware corporation; and CELLCO PARTNERSHIP d/b/a/VERIZON WIRELESS, a Delaware general partnership, | |
| Defendants. | |

12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

In the present action, Plaintiff Carucel Investments, L.P. asserts claims of patent infringement against Defendants Novatel Wireless, Inc., AT&T Mobility LLC, Verizon Communications, Inc., and Cellco Partnership d/b/a Verizon Wireless, alleging infringement of U.S. Patent No. 7,221,904, U.S. Patent No. 7,848,701, U.S. Patent No. 7,979,023, U.S. Patent No. 8,718,543, and U.S. Patent No. 8,849,191. (Doc. No. 58.) On July 26, 2016, the parties filed a joint hearing statement identifying disputed claim terms

from the patents-in-suit.  (Doc. No. 119.)  On August 17, 2016, the parties each filed an opening claim construction brief.  (Doc. Nos. 120, 123.)  On August 31, 2016, the parties each filed a responsive claim construction brief.  (Doc. Nos. 126, 127.)  On September 14, 2016, the Court issued a tentative claim construction order.  (Doc. No. 129.)

The Court held a claim construction hearing on September 16, 2016.  Michael K. Lindsey and James M. Sarnecky appeared for Plaintiff.  Amardeep L. Thakur and Bruce R. Zisser appeared for Defendants.  After considering the parties' briefs, the parties' arguments at the hearing, and all relevant information, the Court construes the disputed terms from the patents-in-suit.

## **Background**

On May 27, 2015, Plaintiff Carucel Investments, L.P. filed a complaint for patent infringement in the United States District Court for the Southern District of Florida against Defendants Novatel Wireless, Inc., AT&T Mobility LLC, Verizon Communications, Inc., and TigerDirect, Inc., alleging infringement of U.S. Patent No. 7,221,904, U.S. Patent No. 7,848,701, U.S. Patent No. 7,979,023, U.S. Patent No. 8,463,177, U.S. Patent No. 8,718,543, and U.S. Patent No. 8,849,191.[1]  (Doc. No. 1, Compl.)  Specifically, Plaintiff alleges that Defendants' mobile broadband hotspot devices infringe the patents-in-suit.  (Id. ¶¶ 28-29.)

On September 15, 2015, Carucel dismissed its claims against Defendant TigerDirect, Inc. with prejudice.  (Doc. No. 11.)  On October 29, 2015, Defendants Novatel Wireless, Inc., AT&T Mobility LLC, and Verizon Communications, Inc. each filed an answer to Carucel's complaint.  (Doc. Nos. 41-43.)

On December 16, 2015, Carucel filed a first amended complaint alleging infringement of the same six patents and adding as a new Defendant Cellco Partnership d/b/a Verizon Wireless.  (Doc. No. 58.)  On January 11, 2016, the Defendants each filed an answer to the first amended complaint.  (Doc. Nos. 64-76.)

---

[1]     The '177 patent is no longer asserted in this action.  (Doc. No. 120 at 1; Doc. No. 123 at 1.)

16-cv-118-H -KSC

On January 15, 2016, the action was transferred to the Southern District of California. (Doc. Nos. 69-70.) On January 20, 2016, the action was transferred to the calendar of the Honorable Marilyn L. Huff. (Doc. No. 75.) On February 11, 2016, the Court issued a scheduling order, (Doc. No. 85), and, on April 18, 2016, the Court issued an amended scheduling order. (Doc. No. 98.)

The patents-in-suit are all entitled "Mobile Communication System with Moving Base Station" and share an essentially identical specification. (See Doc. No. 1, Compl. Exs. A-C, E-F.) The invention disclosed in the patents-in-suit "relates to cellular telephone systems in which a mobile unit communicates by wireless communication to a base station connection to the wire telephone network and more particularly to cellular telephone systems adapted for use with fast-moving mobile units." '904 Patent at 1:16-19. The specification details the problems that prior art telecommunications systems have with fast-moving mobile units, particularly the problem of dealing with transfers of fast-moving mobile units between stationary cell sites as the mobile units move through the cellular network. See id. at 1:22-2:61. The specification provides the following summary of the invention:

> These and other problems of the prior art are overcome in accordance with this invention by means of a moving base station which is interposed between a moving mobile telephone unit and a fixed base station. In accordance with this invention, a movable base station moves with the traffic at a rate of speed which is comparable to the speed of the traffic and communicates with a moving mobile telephone unit via standard mobile radio transmission. The movable base station further communicates by radio signals with a plurality of fixed antennas spaced along the path of travel of the mobile base station. The several fixed antennas are connected to a telephone wire line network via a telephone gateway office in a standard fashion. In accordance with this invention, the fixed radio ports are synchronized and the interface between the moving base station and the fixed radio ports is a time division multiplexed (TDM)-direct-sequence, spread-spectrum CDMA.

Id. at 3:18-34. Figure 1 of the '904 patent displays an embodiment of the claimed system:

16-cv-118-H -KSC



Fig. 1

As an example of the claimed invention, Claim 22 of the '904 Patent provides:

     An apparatus adapted to move in accordance with a movement of a mobile unit moving relative to a plurality of fixed radio ports, the apparatus comprising:

a receiver adapted to receive a plurality of signals, each of the plurality of signals transmitted from each of the plurality of fixed radio ports within a frequency band having a lower limit greater than 300 megahertz;

a transmitter adapted to transmit, within the frequency band, a resultant signal to the mobile unit in accordance with at least one of the plurality of signals; and

a processor adapted to maximize an amount of transferred information to the mobile unit by evaluating a quality of each of the plurality of signals transmitted from the plurality of fixed radio ports.

Id. at 12:65-13:11.

16-cv-118-H -KSC

**Discussion**

## I.   Legal Standards for Claim Construction

Claim construction is an issue of law for the court to decide.  Teva Pharm. USA, Inc. v. Sandoz, Inc., 135 S. Ct. 831, 838 (2015); Markman v. Westview Instr., Inc., 517 U.S. 370, 372 (1996).  Although claim construction is ultimately a question of law, "subsidiary factfinding is sometimes necessary."  Teva, 135 S. Ct. at 838.

"The purpose of claim construction is to 'determin[e] the meaning and scope of the patent claims asserted to be infringed.'"  O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co., 521 F.3d 1351, 1360 (Fed. Cir. 2008).  "It is a 'bedrock principle' of patent law that the 'claims of a patent define the invention to which the patentee is entitled the right to exclude.'"  Phillips v. AWH Corp., 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc).

Claim terms "'are generally given their ordinary and customary meaning[,]'" which "is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention."  Id. at 1312-13.  "In some cases, the ordinary meaning of claim language as understood by a [PHOSITA] may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words."  Id. at 1314.  "However, in many cases, the meaning of a claim term as understood by persons of skill in the art is not readily apparent."  O2 Micro, 521 F.3d at 1360.  If the meaning of the term is not readily apparent, the court must look to "those sources available to the public that show what a person of skill in the art would have understood disputed claim language to mean," including intrinsic and extrinsic evidence.  See Phillips, 415 F.3d at 1314.  A court should begin with the intrinsic record, which consists of the language of the claims, the patent specification, and, if in evidence, the prosecution history of the asserted patent.  Id.; see also Vederi, LLC v. Google, Inc., 744 F.3d 1376, 1382 (Fed. Cir. 2014) ("In construing claims, this court relies primarily on the claim language, the specification, and the prosecution history.").

In determining the proper construction of a claim, a court should first look to the language of the claims.  See Vitronics, 90 F.3d at 1582; see also Comark Commc'ns v.

16-cv-118-H -KSC

Harris Corp., 156 F.3d 1182, 1186 (Fed. Cir. 1998) ("The appropriate starting point . . . is always with the language of the asserted claim itself."). The context in which a disputed term is used in the asserted claim may provide substantial guidance as to the meaning of the term. See Phillips, 415 F.3d at 1314. In addition, the context in which the disputed term is used in other claims, both asserted and unasserted, may provide guidance because "the usage of a term in one claim can often illuminate the meaning of the same term in other claims." Id. Furthermore, a disputed term should be construed "consistently with its appearance in other places in the same claim or in other claims of the same patent." Rexnord Corp. v. Laitram Corp., 274 F.3d 1336, 1342 (Fed. Cir. 2001); accord Microprocessor Enhancement Corp. v. Texas Instruments Inc., 520 F.3d 1367, 1375 (Fed. Cir. 2008); see also Paragon Sols., LLC v. Timex Corp., 566 F.3d 1075, 1087 (Fed. Cir. 2009) ("We apply a presumption that the same terms appearing in different portions of the claims should be given the same meaning." (internal quotation marks omitted)). Moreover, "'[a] claim construction that gives meaning to all the terms of the claim is preferred over one that does not do so.'" Vederi, 744 F.3d 1383.

A court must also read claims "in view of the specification, of which they are a part." Markman, 52 F.3d at 979; see 35 U.S.C. § 112(b) ("The specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the inventor or a joint inventor regards as the invention."). "'Apart from the claim language itself, the specification is the single best guide to the meaning of a claim term.'" Vederi, 744 F.3d at 1382. For example, "a claim construction that excludes [a] preferred embodiment [described in the specification] 'is rarely, if ever, correct and would require highly persuasive evidentiary support.'" Adams Respiratory Therapeutics, Inc. v. Perrigo Co., 616 F.3d 1283, 1290 (Fed. Cir. 2010).

But "[t]he written description part of the specification does not delimit the right to exclude. That is the function and purpose of claims." Markman v. Westview Instruments, Inc., 52 F.3d 967, 980 (Fed. Cir. 1995) (en banc). "[A] claim construction must not import limitations from the specification into the claims." Douglas Dynamics, LLC v. Buyers

16-cv-118-H -KSC

Products Co., 717 F.3d 1336, 1342 (Fed. Cir. 2013). Therefore, "it is improper to read limitations from a preferred embodiment described in the specification—even if it is the only embodiment—into the claims absent a clear indication in the intrinsic record that the patentee intended the claims to be so limited." Dealertrack, Inc. v. Huber, 674 F.3d 1315, 1327 (Fed. Cir. 2012); see also Kara Tech. Inc. v. Stamps.com Inc., 582 F.3d 1341, 1348 (Fed. Cir. 2009) ("The patentee is entitled to the full scope of his claims, and we will not limit him to his preferred embodiment or import a limitation from the specification into the claims.").

In most situations, analysis of the intrinsic evidence will resolve claim construction disputes. See Vitronics, 90 F.3d at 1583; Teva, 135 S. Ct. at 841. However, "[w]here the intrinsic record is ambiguous, and when necessary," district courts may "rely on extrinsic evidence, which 'consists of all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises.'" Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc., 711 F.3d 1348, 1360 (Fed. Cir. 2013) (quoting Phillips, 415 F.3d at 1317). A court must evaluate all extrinsic evidence in light of the intrinsic evidence. Phillips, 415 F.3d at 1319. A court should not rely on extrinsic evidence in construing claims to vary or contradict the meaning of claims discernable from examination of the intrinsic evidence. See Tempo Lighting, Inc. v. Tivoli, LLC, 742 F.3d 973, 977 (Fed. Cir. 2014); Dow Chem. Co. v. Sumitomo Chem. Co., Ltd., 257 F.3d 1364, 1373 (Fed. Cir. 2001); see also Vederi, 744 F.3d at 1382 ("[E]xtrinsic evidence may be less reliable than the intrinsic evidence."). In cases where subsidiary facts contained in the extrinsic evidence "are in dispute, courts will need to make subsidiary factual findings about that extrinsic evidence." Teva, 135 S. Ct. at 841.

"[D]istrict courts are not (and should not be) required to construe every limitation present in a patent's asserted claims." O2 Micro, 521 F.3d at 1362. In certain situations, it is appropriate for a court to determine that a claim term needs no construction and its plain and ordinary meaning applies. See id.; Phillips, 415 F.3d at 1314. But "[a] determination that a claim term 'needs no construction' or has the 'plain and ordinary

7

meaning' may be inadequate when a term has more than one 'ordinary' meaning or when reliance on a term's 'ordinary' meaning does not resolve the parties' dispute." <u>O2 Micro</u>, 521 F.3d at 1361.  If the parties dispute the scope of a certain claim term, it is the court's duty to resolve the dispute.  <u>Id.</u> at 1362; <u>accord Eon Corp. IP Holdings v. Silver Spring Networks</u>, 815 F.3d 1314, 1318 (Fed. Cir. 2016).

## II.    Analysis of the Disputed Terms[2]

### A.    "fixed radio port" and "fixed port"

Plaintiff proposes that the term "fixed port" be construed as "a stationary device at which signals can enter or exit a communication network."  (Doc. No. 123 at 6.)  Plaintiff proposes that the term "fixed radio ports" be construed as "stationary devices that each transmit and receive radio frequency signals to provide access to a communication network."  (<u>Id.</u> at 11.)  Defendants propose that the terms "fixed radio port" and "fixed port" both be construed as "stationary radio communication device[s] that communicate[s] with the mobile unit/device only via a movable intermediary device and do[es] not perform call handling function (e.g., handoff)."  (Doc. No. 120 at 8.)

The parties agree that the terms "fixed port" and "fixed radio port" refer to a stationary communication device that transmits and receives signals in a communication network.  (<u>See</u> Doc. No. 120 at 9-11; Doc. No. 123 at 7.)  The parties dispute whether the terms also contain the additional limitations of:  1) that the fixed port/fixed radio port "communicate with the mobile unit/device only via a movable intermediary device"; and 2) that it "not perform call handling functions (e.g., handoff)."  (Doc. No. 120 at 9.) Defendants argue that the Court's constructions for these two terms should include these additional limitations.  (<u>Id.</u>)

The Court first addresses Defendants' argument that the invention requires that the

---

[2]    The parties agree that the disputed claim terms should be construed consistently across the patents-in-suit.  (Doc. No. 120; Doc. No. 123 at 1 n.1.)  <u>See</u> <u>SightSound Techs., LLC v. Apple Inc.</u>, 809 F.3d 1307, 1316 (Fed. Cir. 2015) ("Where multiple patents 'derive from the same parent application and share many common terms, we must interpret the claims consistently across all asserted patents.'").

fixed port/fixed radio port communicate with the mobile unit/device only via a movable intermediary device.  The language of the independent claims at issue does not contain the specific requirement that the fixed port/fixed radio port communicate with the mobile unit only via a movable intermediate device.  See '904 Patent at 12:65-13:11, 13:60-14:11; '701 Patent at 11:54-64; '023 Patent at 12:8-16.  In arguing for the inclusion of this limitation, Defendants rely on the following language from the specification:  "the mobile unit does not receive communications from the fixed radio port but only from the movable base station."  '904 Patent at 3:49-51.  But here the specification is referring to "a specific embodiment of the invention."  Id. at 3:40.  "[I]t is improper to read limitations from a preferred embodiment described in the specification—even if it is the only embodiment—into the claims absent a clear indication in the intrinsic record that the patentee intended the claims to be so limited."  Dealertrack, 674 F.3d at 1327.  Here, there is not a clear indication that the patentee intended the claims to be so limited.

Defendants cite to the following further language in the specification:  "The system in accordance with the invention differs from the prior art primarily in that the base stations 30, 40 are moving with the traffic and communicate with the gateway office 60 via fixed radio ports 50."  '904 Patent at 5:10-14; see also id. at 3:30-33 ("The movable base station further communicates by radio signals with a plurality of fixed antennas spaced along the path of travel of the mobile base station."); id. at 4:21-26 ("Disposed between the moving base stations moving along the rails 35, 45 are a plurality of fixed radio ports 50 which are connected by means of a fiber optic ring 55 or a similar signal transmitting device to a telephone office connected to the wire line telephone network and referred to as a gateway office.").  But, here, even though the specification is describing the overall system according to the invention, the specification merely states that the moving base stations communicate with the fixed radio ports.  That the moving base stations, which also communicate with the mobile devices, communicate with the fixed radio ports does not necessarily preclude the fixed radio ports from also communicating with the mobile devices.

Further, the specification expressly describes an embodiment where fixed ports directly communicate with mobile units. The specification provides: "[F]ixed base stations 70 would accommodate communications with mobile units traveling at a speed of less than 30 miles per hour . . . ." '904 Patent at 4:48-51; see also id. at 5:67-6:1, 11:1-4, fig. 1. "[A] claim construction that excludes [a] preferred embodiment [described in the specification] 'is rarely, if ever, correct and would require highly persuasive evidentiary support.'" Adams Respiratory Therapeutics, 616 F.3d at 1290. Defendants argue that the "fixed base stations 70" described in the specification are different from the claimed fixed ports/fixed radio ports. (Doc. No. 120 at 10-11.) But in the summary of the invention, the specification uses the terms "fixed base station[s]" and "fixed radio ports" interchangeably. Compare '904 Patent at 3:18-21 ("These and other problems of the prior art are overcome in accordance with this invention by means of a moving base station which is interposed[3] between a moving mobile telephone unit and a fixed base station.") with id. at 3:30-32 ("In accordance with this invention, the fixed radio ports are synchronized and the interface between the moving base station and the fixed radio ports is a time division multiplex . . . ."). Indeed, in Defendants' own proposed constructions, Defendants propose that the term "base station" be construed as "a fixed port" – albeit incorporating Defendants' proposed construction for term "fixed port." (Doc. No. 120 at 13.) Accordingly, the Court declines to include this limitation in its constructions for the terms "fixed port" and "fixed radio port."

Turning to Defendants' request to include the limitation that the fixed port/fixed radio port not provide call-handling functions, the Court notes that the language of the

---

[3] In their response brief, Defendants argue that the plain meaning of "interpose" is essentially to "get in the way of." (Doc. No. 126 at 6.) The Court disagrees. The word "interpose" means "to place between or in an intermediate position." Webster's Third New International Dictionary 1182 (1981). This plain meaning of the word "interpose" makes sense in the context of the invention as the system according to the invention generally places a movable base station between the mobile units and the fixed base stations, allowing the movable base station to potentially act as an intermediary communication device between the mobile units and the fixed base stations. See '904 Patent at 3:18-34, fig 1.

independent claims at issue also does not contain this specific requirement. See '904 Patent at 12:65-13:11, 13:60-14:11; '701 Patent at 11:54-64; '023 Patent at 12:8-16. In support of their argument, Defendants rely on following language in the specification: "The system in accordance with the invention differs from the prior art primarily in that the base stations 30, 40 are moving with the traffic and communicate with the gateway office 60 via fixed radio ports 50. Furthermore, the various call-handling functions, including handoff, are performed by the moving base station." '904 Patent at 5:10-16. Generally, a court should not import limitations from the specification into the claims absent a clear indication that the patentee intended that the claims should be so limited. See Dealertrack, 674 F.3d at 1327; Hill-Rom Servs., Inc. v. Stryker Corp., 755 F.3d 1367, 1372 (Fed. Cir. 2014). Here, there is no such clear indication. In the above cited portion of the specification, even though the specification is describing the system according to the invention, the specification merely states that the call-handling functions are performed by the moving base station. The specification does not state that the call-handling function must only be performed by the moving base station or that the fixed port can never perform any of the call-handling functions. To the contrary, elsewhere the specification explains: "The fixed base stations 70 perform the function of a standard prior art fixed base station", and describes the functions of a standard prior art base station as including "functions associated with call setup, call supervision, and call termination." '904 Patent at 4:65-5:2, 5:67-6:1; see also id. at 10:67-11:1. "[A] claim construction that excludes [a] preferred embodiment [described in the specification] 'is rarely, if ever, correct and would require highly persuasive evidentiary support.'" Adams Respiratory Therapeutics, 616 F.3d at 1290. Accordingly, the Court declines to include in its constructions the limitation that the fixed port/fixed radio port does not perform call-handling functions.

In sum, the Court adopts Plaintiff's proposed constructions for these two terms and

rejects Defendants' proposed construction.[4]  The Court construes the term "fixed port" as "a stationary device at which signals can enter or exit a communication network."  The Court construes the term "fixed radio ports" as "stationary devices that each transmit and receive radio frequency signals to provide access to a communication network."

B.    "base station" and "base station [radio] interface circuit"

Plaintiff proposes that the term "base station" be given its plain meaning and be construed as "a fixed device a mobile radio transceiver (transmitter/receiver) talks to, to talk to a person or to get to the landline phone network, public or private."  (Doc. No. 123 at 12.)  Defendants propose that this term be construed as "a fixed port."  (Doc. No. 120 at 13.)  Plaintiff proposes that the term "base station [radio] interface circuit" be construed as "a [radio transceiver] circuit in a base station that can transmit and receive cellular signals." (Doc. No. 123 at 13.)  Defendants propose that this term be construed as "radio interface circuit of a fixed port."  (Doc. No. 120 at 13.)

In support of their proposed constructions, Defendants argue that the claims at issue use the term "base station" in the same way that the terms "fixed port" and "fixed radio port" are used.  (Doc. No. 120 at 13.)  The Court agrees with Defendants that the claims at times appear to use the terms "fixed port" and "fixed base station" interchangeably.  See, e.g., '701 Patent at 11:15-25, 11:54-64.  Further, the specification uses the terms "fixed base station[s]" and "fixed radio ports" interchangeably.  Compare '904 Patent at 3:18-21 ("These and other problems of the prior art are overcome in accordance with this invention by means of a moving base station which is interposed between a moving mobile telephone unit and a fixed base station.") with id. at 3:30-32 ("In accordance with this invention, the

---

[4]    In addition, the Court rejects Defendants' contention that Plaintiff's proposed construction describes the admitted prior art.  (Doc. No. 126 at 4-5.)  As Defendants themselves explain, in the described prior art systems, the mobile units only communicate with fixed base stations.  (Id. at 5.) Under Plaintiff's proposed constructions for these terms, in the claimed system, the mobile unit can communicate with either a fixed base station or a movable base station.  That the claimed system allows for the mobile unit to have the ability to communicate with either a fixed base station or a movable base station renders the claimed system different from the prior art systems described in the specification. See '904 Patent at 1:22-2:61.

16-cv-118-H -KSC

fixed radio ports are synchronized and the interface between the moving base station and the fixed radio ports is a time division multiplex . . . ."). "[The] implication [that different terms have different meanings] is overcome where, as here, the evidence indicates that the patentee used the two terms interchangeably." Baran v. Med. Device Techs., Inc., 616 F.3d 1309, 1316 (Fed. Cir. 2010). But for the reasons given in the preceding section, the Court declines to adopt Defendants' proposed constructions for these terms because they improperly seek to include the limitations that 1) the claimed base station communicate with the mobile unit/device only via a movable intermediary device; and 2) that it not perform call handling functions (e.g., handoff). The Court has explained that based on the language contained in the intrinsic record, it is improper to import these limitations from the specification into the claims. See supra; Dealertrack, 674 F.3d at 1327.

Plaintiff's proposed construction gives the term "base station" its plain meaning and is consistent with the description of that term in the specification. See '904 Patent at 4:63-5:10, 5:67-6:1. (See Doc. No. 123-9, Lindsey Decl. Ex. 8 at 128.) Indeed, Defendants state in their brief that the term "base station" has a common and well-known meaning and is generally understood to be "the entity in the cellular network that receives the radio signals from mobile units, e.g. cell phones, and provides the interface between those signals and the wired telephone network and performs call handling, such as handoff." (Doc. No. 120 at 14.) Accordingly, the Court adopts Plaintiff's proposed constructions for these terms. The Court construes the term "base station" as "a fixed device a mobile radio transceiver (transmitter/receiver) talks to, to talk to a person or to get to the landline phone network, public or private." The Court construes the term "base station [radio] interface circuit" as "a [radio transceiver] circuit in a base station that can transmit and receive cellular signals."

C.    "adapted to" and "configured to"

Plaintiff proposes that the term "adapted to" be given its plain meaning and be construed as "adjusted to a specified use or situation." (Doc. No. 123 at 17.) Plaintiff proposes that the term "configured to" be given its plain meaning be construed as "shaped,

fashioned, or constructed to." (<u>Id.</u> at 17.)  Defendants argue that the terms "adapted to" and "configured to" should be construed as "constructed to move by a conveying device to track the movement of a mobile unit," or at the very least be construed as "constructed to." (Doc. No. 120 at 16.)

In their proposed constructions for these terms, Defendants request that the Court include in its constructions a limitation requiring that the claimed apparatus/movable base station/transmitter be as "constructed to move by a conveying device to track the movement of a mobile unit."  (<u>Id.</u>)  Many of the claims at issue contain language supporting the inclusion of a limitation requiring that the claimed apparatus/movable base station/transmitter be constructed to move in accordance with the movement of the mobile unit.  <u>See, e.g.</u>, '904 Patent at 12:65-66 ("An apparatus adapted to move in accordance with a movement of a mobile unit . . . ."); '543 Patent at 12:62-12:66 ("[A] first transmitter configured to transmit . . . while the apparatus is moving . . . in the same direction as the mobile device."); '191 Patent at 11:51-55 ("the first transmitter configured to transmit . . . the first data to the mobile device while the mobile device, the first receiver, and the first transmitter are moving in the same direction . . . along the path").  Furthermore, the language in the specification supports the inclusion of a limitation requiring that the claimed apparatus/movable base station/transmitter be constructed to move with traffic: "In accordance with this invention, a movable base station moves with the traffic at a rate of speed which is comparable to the speed of the traffic and communicates with a moving mobile telephone unit via standard mobile radio transmission." '904 Patent at 3:21-25; <u>see id.</u> at 5:10-13 ("In accordance with this invention, a movable base station moves with the traffic at a rate of speed which is comparable to the speed of the traffic . . .").  Generally, a court should not import limitations from the specification into the claims absent a clear indication that the patentee intended that the claims should be so limited.  <u>See</u> <u>Dealertrack</u>, 674 F.3d at 1327; <u>Hill-Rom Servs.</u>, 755 F.3d at 1372.  But, here, the specification is describing the system as a whole according to the invention and not simply a preferred

embodiment.[5]  The Federal Circuit has explained:  "When a patentee describes the features of the present invention as a whole, he alerts the reader that this description limits the scope of the invention."  <u>Pacing Techs., LLC v. Garmin Int'l, Inc.</u>, 778 F.3d 1021, 1025 (Fed. Cir. 2015) (internal quotation marks omitted));  <u>accord</u> <u>Regents of Univ. of Minnesota v. AGA Med. Corp.</u>, 717 F.3d 929, 936 (Fed. Cir. 2013).  Accordingly, the Court agrees with Defendants that this language in the specification constitutes a disclaimer, and the claims should be limited by that disclaimer.  But the Court declines to include the specific requirement that the claimed apparatus/movable base station/transmitter be constructed/adapted move to track the mobile device.  Rather the Court will include in its construction that the claimed apparatus/movable base station/transmitter be constructed/adapted to move with the traffic at a rate of speed which is comparable to the speed of the traffic to better correspond with the language contained in the disclaimer.[6]

But the Court declines to include in its constructions a limitation requiring that the claimed apparatus/movable base station/transmitter move by a conveying device.  In support of their argument that this particular limitation should be included, Defendants rely on the description of a preferred embodiment of the invention contained in the specification:  "The moving base stations 30 may be moved by means of a rail 35, or other suitable conveying device which may include an automotive vehicle travelling on the roadway, in the same direction as the traffic flow on the roadway 10, as indicated by the arrow 12."  '904 Patent at 4:6-10.  "[I]t is improper to read limitations from a preferred embodiment described in the specification—even if it is the only embodiment—into the claims absent a clear indication in the intrinsic record that the patentee intended the claims

---

[5]   The Court rejects Plaintiff's contention that this portion of the specification is merely describing a preferred embodiment.  (Doc. No. 127 at 6.)  The sentence at issue uses the phrase "[i]n accordance with this invention" and does not use the word "embodiment."  '904 Patent at 3:21-22.  Indeed, the word "embodiment" is not contained anywhere in the paragraph containing the referenced sentence.  <u>See</u> <u>id.</u> at 3:18-34.

[6]   Indeed, Plaintiff itself asserts that one of ordinary skill in the art would understand from the specification passage at issue that the movable base station "moves with traffic."  (Doc. No. 127 at 6.)

16-cv-118-H -KSC

to be so limited." Dealertrack, 674 F.3d at 1327. Here, there is not a clear indication that the patentee intended the claims to be limited in the manner proposed by Defendants. The referenced portion of the specification uses the permissive word "may" in stating that the "[t]he moving base stations 30 may be moved by means of a rail 35, or other suitable conveying device." '904 Patent at 4:6-8. Accordingly, the Court declines to include a limitation requiring that the moving base stations move by a conveying device in its construction of these two terms.[7] In sum, the Court construes the terms "adapted to" and "configured to" as "constructed to move with the traffic at a rate of speed which is comparable to the speed of the traffic."

D.    "processor adapted to maximize an amount of transferred information"

Defendants argue that the claim term "processor adapted to maximize an amount of transferred information" should be construed as a means-plus-function claim under 35 U.S.C. § 112, para. 6. (Doc. No. 120 at 21-22.) Defendants further argue that the claim term when construed as a means-plus-function claim is indefinite. (Id. at 23-24.)

The claim term at issue does not use the word "means." '904 Patent at 13:8-11. The Federal Circuit has explained that when a claim fails to use the specific word "means," it creates a rebuttable presumption that the claim is a not a means-plus-function claim and § 112, para. 6 does not apply. See Williamson v. Citrix Online, LLC, 792 F.3d 1339, 1348-49 (Fed. Cir. 2015) (en banc). In order to overcome this presumption, the challenger must demonstrate that "the claim term fails to 'recite sufficiently definite structure' or else recites 'function without reciting sufficient structure for performing that function.'" Id. at 1349.

Defendants argue that the claim term at issue fails to recite a sufficiently definite

---

[7]    Defendants argue that the claims should be limited to this embodiment because it is the only embodiment disclosed in the specification. (Doc. No. 126 at 8.) But even assuming this is true, Dealertracker clearly explains that "it is improper to read limitations from a preferred embodiment described in the specification—even if it is the only embodiment—into the claims absent a clear indication in the intrinsic record that the patentee intended the claims to be so limited." 674 F.3d at 1327. Here, there is not such a clear indication.

16-cv-118-H -KSC

structure because it merely discloses a generic processor without specifically describing the algorithm or programming necessary to perform the claimed function. (Doc. No. 120 at 22.) In Williamson, the Federal Circuit explained that "[g]eneric terms such as 'mechanism,' 'element,' 'device,' and other nonce words that reflect nothing more than verbal constructs may be used in a claim in a manner that is tantamount to using the word 'means' because they 'typically do not connote sufficiently definite structure' and therefore may invoke § 112, para. 6." 792 F.3d at 1350. But the term "processor" is not such a "nonce" word. The term "'processor' connotes structure." Syncpoint Imaging, LLC v. Nintendo of Am. Inc., No. 215CV00247JRGRSP, 2016 WL 55118, at *20 (E.D. Tex. Jan. 5, 2016) (citing the definition for the word "processor" contained in the IBM Dictionary of Computing). (See also Doc. No. 123-9, Lindsay Decl. Ex. 8 at 821 (definition of the word "processor" contained in Newton's Telecom Dictionary).) Further, the language in the claim at issue sufficiently provides the objectives and operations of the claimed processor. See '904 Patent at 13:8-11 ("a processor adapted to maximize an amount of transferred information to the mobile unit by evaluating a quality of each of the plurality of signals transmitted from the plurality of fixed radio ports"); see also id. at 6:31-32 ("The claimed processor 130 may be a standard microprocessor . . . ."). One could understand the structural arrangements of the claimed processor from the recited objectives and operations. Accordingly, Defendants have failed to rebut the presumption against invoking § 112, para. 6.[8]

Indeed, several district courts post-Williamson have concluded that the term

---

[8]    Defendants' reliance on the Federal Circuit's decisions in Williamson and Aristocrat Techs. Australia Pty Ltd. v. Int'l Game Tech., 521 F.3d 1328 (Fed. Cir. 2008) to support their argument that the claim is indefinite is misplaced because the claims at issue in those cases, unlike the claim at issue here, were means-plus-function claims. See Williamson, 792 F.3d at 1351; Aristocrat, 512 F.3d at 1332. "'[W]here a claim is not drafted in means-plus-function format, the reasoning in the Aristocrat line of cases does not automatically apply, and an algorithm is therefore not necessarily required.'" Syncpoint Imaging, 2016 WL 55118, at *18 (emphasis removed) (quoting Apple Inc. v. Motorola, Inc., 757 F.3d 1286, 1298 (Fed. Cir. 2014)).

"processor" sufficiently connotes a definite structure to a person of ordinary skill in the art, and, therefore, found that § 112, para. 6 did not apply to a claim or claims that used the term "processor." See, e.g., Syncpoint Imaging, 2016 WL 55118, at *18-21; Advanced Mktg. Sys., LLC v. CVS Pharmacy, Inc., No. 6:15-CV-134-JRG-KNM, 2016 WL 1741396, at *20 (E.D. Tex. May 3, 2016); Smartflash LLC v. Apple Inc., No. 6:13-CV-447-JRG-KNM, 2015 WL 4208754, at *3 (E.D. Tex. July 7, 2015); Finjan, Inc., v. Proofpoint, Inc., No. 13-CV-05808-HSG, 2015 WL 7770208, at *10-11 (N.D. Cal. Dec. 3, 2015); Nomadix, Inc. v. Hosp. Core Servs. LLC, No. CV1408256DDPVBKX, 2016 WL 344461, at *5-8 (C.D. Cal. Jan. 27, 2016); see also Williamson, 792 F.3d at 1348 ("[T]he essential inquiry is . . . whether the words of the claim are understood by persons of ordinary skill in the art to have a sufficiently definite meaning as the name for structure.").[9] Accordingly, the Court rejects Defendants' contention that claim at issue or its dependent claims are means-plus-function claims.[10]

E.    "corresponding"

Plaintiff proposes that the term "transmit radio signals to a mobile device corresponding to the received fixed port signals" be given its plain meaning and be construed as "transmit radio frequency signals to a mobile device, where the radio frequency signal[s] correspond to the received fixed port signals." (Doc. No. 123 at 19.) Defendants propose that the term be construed as "transmit radio signals at the same frequency as the received fixed port signals." (Doc. No. 120 at 24.) Plaintiff proposes that the term "transmit radio frequency signals corresponding to the mobile device signals" be

---

[9]    The Court finds the reasoning and analysis set forth in these district court cases persuasive and not the reasoning set forth in the district court decision cited by the Defendants – Sarif Biomedical LLC v. Brainlab, Inc., No. CV 13-846-LPS, 2015 WL 5072085, at *1 (D. Del. Aug. 26, 2015).

[10]    Defendants also argue that the claim term "a processor adapted to establish a communication link between the plurality of mobile units" should, for the same reasons, be found to be a means-plus-function claim that is indefinite under 35 U.S.C. § 112, para. 6. (Doc. No. 120 at 24.) For the same reasons previously given, the Court rejects Defendants' contention that the term "processor" is a nonce word, and that the claim at issue or its dependent claims are means-plus-function claims.

16-cv-118-H -KSC

given its plain meaning and be construed as "transmit radio frequency signals that correspond to the mobile device signals." (Doc. No. 123 at 20.)  Defendants propose that this term be construed as "transmit radio signals at the same frequency as the mobile device signals." (Doc. No. 120 at 24.)

In their proposed constructions for these two terms, Defendants request that the Court include a limitation requiring that the radio signals be transmitted "at the same frequency" as the received fixed port signals/mobile device signals.  The language of the claims at issue does not specifically require that the moving base station transmit a radio signal at the same frequency as the signal it receives.  See '701 Patent at 11:23-25, 11:62-64; '023 Patent at 11:35-37, 12:14-16.  Defendants argue that the claim terms should be construed to possess this limitation because the specification discloses that having both parts of a wireless link in the same frequency band is a critical feature of the disclosed system.  (Doc. No. 120 at 25.)  In support of this argument, Defendants rely on the following language from the specification of the '904 patent: "The interface between the movable base station and the fixed radio port is preferably transparent to the overall system in spectrum use." '904 Patent at 6:55-57.  But here the specification uses permissive rather than mandatory language in stating that the interface is "preferably" transparent to the overall system in spectrum use.  Accordingly, the Court declines to include this limitation in its construction of these two claim terms.  See Dealertrack, 674 F.3d at 1327 ("[I]t is improper to read limitations from a preferred embodiment described in the specification—even if it is the only embodiment—into the claims absent a clear indication in the intrinsic record that the patentee intended the claims to be so limited.").

The Court accepts Plaintiff's proposed constructions and rejects Defendants' proposed constructions.  The Court construes the term "transmit radio signals to a mobile device corresponding to the received fixed port signals" as "transmit radio frequency signals to a mobile device, where the radio frequency signals correspond to the received fixed port signals."  Further, the Court construes the term "transmit radio frequency signals corresponding to the mobile device signals" as "transmit radio frequency signals that

correspond to the mobile device signals."

### F.    Additional Terms

In the parties' joint claim construction worksheets and charts, Defendants provided proposed constructions for the term "align and combine . . . signals." (Doc. No. 119-1 at A2-2.)  But Defendants failed to provide any argument or analysis in support of their proposed construction in their opening claim construction brief or at the claim construction hearing.[11]  (See Doc. No. 120.)  Further, in the parties' joint claim construction worksheets and charts, Plaintiff provided a proposed construction for the term "mobile unit."  (Doc. No. 119-1 at A-1–A-2.)  Defendants stated in the worksheets and charts that the term "mobile unit" did not need to be construed.  (Id.)  In its opening claim construction brief, Plaintiff states that it no longer requests construction of the term "mobile unit."  (Doc. No. 123 at 15 n.5.)  In addition, the parties' joint claim construction worksheets and charts contained several other proposed constructions for which the parties failed to provide any argument or analysis in support of the proposed constructions in their briefing or at the hearing.  (See Doc. No. 119-1.)  The Court declines to construe these additional terms. See, e.g., Paice LLC v. Hyundai Motor Co., No. CIV. WDQ-12-0499, 2014 WL 3725652, at *5 n.18 (D. Md. July 24, 2014) (declining to construe certain claim terms where plaintiff did not request construction of those terms and defendant fail to provide any support in their brief for their proposed constructions for those terms); see also O2 Micro, 521 F.3d at 1362. ("[D]istrict courts are not (and should not be) required to construe every limitation present in a patent's asserted claims.").

///

///

///

---

[11]  In their response brief, Defendants state that the term "align and combine . . . signals" can take Carucel's proposed construction if it needs to be construed at all.  (Doc. No. 126 at 10.)

## Conclusion

For the reasons above, the Court adopts the constructions set forth above.

**IT IS SO ORDERED.**

DATED:  September 16, 2016

_____

MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT

16-cv-118-H -KSC

## APPENDIX A: JOINT CLAIM CONSTRUCTION WORKSHEET
### A1: U.S. Patent 7,221,904
### Asserted Claims: 22, 28, 29, 30, 31, 32, 33, 34, 40

**Construed Terms:** **bold** or **bold/underline** - 1st occurrence in red
**Proposed Constructions:** *italicized*
Independent claims denoted with "*"

| CLAIM LANGUAGE (Disputed Terms in BOLD) | AGREED PROPOSED CONSTRUCTION | PLAINTIFF'S PROPOSED CONSTRUCTION | DEFENDANTS' PROPOSED CONSTRUCTION | COURT'S CONSTRUCTION |
|---|---|---|---|---|
| 22. An apparatus **adapted to move in accordance with a movement of a mobile unit** moving relative to a plurality of **fixed radio ports**, the apparatus comprising: | | **adapted to** (Appears in: '904 (22*,34*)) <br><br> *Plain meaning.* | **adapted to** (Appears in: '904 (22*,34*)) <br><br> *Constructed to* | "constructed to move with the traffic at a rate of speed which is comparable to the speed of the traffic" |
| | | **adapted to move in accordance with a movement of a mobile unit** (Appears in: '904 (22*,34*)) <br><br> *Cited claim limitations take plain meaning, with exception of the claim term "mobile unit," see infra.* | **adapted to move in accordance with a movement of a mobile unit** (Appears in: '904 (22*,34*)) <br><br> *Constructed to move by a conveying device to track the movement of a mobile unit.* | No further construction beyond the construction for the term "adapted to." |
| | | **mobile unit** (Appears in: '904 (22*,34*)) | **mobile unit** (Appears in: '904 (22*,34*)) | No construction. |

A1-1

## APPENDIX A: JOINT CLAIM CONSTRUCTION WORKSHEET
### A1: U.S. Patent 7,221,904
### Asserted Claims: 22, 28, 29, 30, 31, 32, 33, 34, 40

| CLAIM LANGUAGE (Disputed Terms in BOLD) | AGREED PROPOSED CONSTRUCTION | PLAINTIFF'S PROPOSED CONSTRUCTION | DEFENDANTS' PROPOSED CONSTRUCTION | COURT'S CONSTRUCTION |
|---|---|---|---|---|
| | | *A portable, wireless communication device for radio frequency communications with one or more other devices.* | *Defendants maintains that no construction is necessary for this term. This claim term should be afforded its plain and ordinary meaning.*<br><br>*However, should the Court decide to construe this term, then Defendants proposes the following construction:*<br><br>*A portable electronic device capable of wireless communications with a base station* | |
| | | **fixed radio ports**<br>(Appears in: '904 (22*,28,34*))<br><br>*Stationary devices that each transmit and receive radio frequency signals to provide access to a communication network.* | **fixed radio ports**<br>(Appears in: '904 (22*,28,34*))<br><br>*Stationary radio communication devices that communicate with the mobile unit only via a movable intermediary device/unit and do not perform call handling functions (e.g., handoff).* | "stationary devices that each transmit and receive radio frequency signals to provide access to a communication network" |
| [a] a receiver adapted to receive a plurality of signals, each of the | | **frequency band**<br>(Appears in: '904 (22*,34*)) | **frequency band**<br>(Appears in: '904, 22*,34*)) | No construction. |

**APPENDIX A: JOINT CLAIM CONSTRUCTION WORKSHEET**
**A1: U.S. Patent 7,221,904**
**Asserted Claims: 22, 28, 29, 30, 31, 32, 33, 34, 40**

| CLAIM LANGUAGE (Disputed Terms in BOLD) | AGREED PROPOSED CONSTRUCTION | PLAINTIFF'S PROPOSED CONSTRUCTION | DEFENDANTS' PROPOSED CONSTRUCTION | COURT'S CONSTRUCTION |
|---|---|---|---|---|
| plurality of signals transmitted from each of the plurality of **fixed radio ports** within a **frequency band** having a lower limit greater than 300 megahertz; | | *Plain Meaning, i.e., a portion of the electromagnetic spectrum within a specified upper- and lower-frequency limit. The claimed "frequency band" is a frequency band of 70 GHz- 300MHz.* | *A range of frequencies allocated by the FCC for some particular purpose.* | |
| [b] a transmitter adapted to transmit, within the **frequency band**, a **resultant signal** to the **mobile unit** in accordance with at least one of the plurality of signals; and | | **resultant signal** (Appears in: '904 (22*,29,30,31)) *A signal that results from the apparatus processing at least one of the signals transmitted from the fixed radio ports.* | **resultant signal** (Appears in: '904 (22*,29,30,31)) *Defendants maintains that no construction is necessary for this term. This claim term should be afforded its plain and ordinary meaning.* *However, should the Court decide to construe this term, then Defendants proposes the following construction:* *The signal that results from the processing of a received signal.* | No construction. |

A1-3

## APPENDIX A: JOINT CLAIM CONSTRUCTION WORKSHEET
### A1: U.S. Patent 7,221,904
### Asserted Claims: 22, 28, 29, 30, 31, 32, 33, 34, 40

| CLAIM LANGUAGE (Disputed Terms in BOLD) | AGREED PROPOSED CONSTRUCTION | PLAINTIFF'S PROPOSED CONSTRUCTION | DEFENDANTS' PROPOSED CONSTRUCTION | COURT'S CONSTRUCTION |
|---|---|---|---|---|
| [c] a **processor adapted to maximize an amount of transferred information** to the **mobile unit** by evaluating a quality of each of the plurality of signals transmitted from the plurality of **fixed radio ports**. | | **processor adapted to maximize an amount of transferred information** (Appears in: '904 (22*))<br><br>*The processor is adapted to maximize the amount of information transferred from the fixed radio ports to the mobile unit. The processor does this by evaluating the quality of each of the signals transmitted from the fixed radio ports.* | **processor adapted to maximize an amount of transferred information** (Appears in: '904 (22*))<br><br>*Means plus function term to be construed pursuant to 35 U.S.C. § 112, ¶ 6.* | Not a means-plus-function claim. |
| **Claim 28** | | | | |
| 28. An apparatus in accordance with claim 22, wherein the **processor is further adapted to determine a best fixed radio port of the plurality of fixed radio ports,** the best **fixed radio port** enabling the maximization of the amount of transferred | | **processor is further adapted to determine a best fixed radio port . . .** (Appears in: '904 (28))<br><br>*The processor is also adapted to determine which of the fixed radio ports allows the maximum amount of information to be transferred from the fixed radio port to the mobile unit.* | **processor is further adapted to determine a best fixed radio port . . .** (Appears in: '904 (28))<br><br>*Means plus function term to be construed pursuant to 35 U.S.C. § 112, ¶ 6.* | Not a means-plus-function claim. |

## APPENDIX A: JOINT CLAIM CONSTRUCTION WORKSHEET
### A1: U.S. Patent 7,221,904
### Asserted Claims: 22, 28, 29, 30, 31, 32, 33, 34, 40

| CLAIM LANGUAGE (Disputed Terms in BOLD) | AGREED PROPOSED CONSTRUCTION | PLAINTIFF'S PROPOSED CONSTRUCTION | DEFENDANTS' PROPOSED CONSTRUCTION | COURT'S CONSTRUCTION |
|---|---|---|---|---|
| information to the **mobile unit**. | | | | |
| **Claim 29** | | | | |
| 29. An apparatus in accordance with claim 28, wherein the transmitter is further adapted to transmit the **resultant signal** in accordance with the signal transmitted from the best **fixed radio port**. | | | | |
| **Claim 30** | | | | |
| 30. An apparatus in accordance with claim 29, wherein the **processor is further adapted to determine a plurality of best fixed radio ports and to combine a group of signals of the plurality of signals to produce the resultant signal**, the group of signals transmitted from the plurality of best **fixed radio ports.** | | <u>processor is further adapted to determine a plurality of best fixed radio ports and to combine a group of signals of the plurality of signals to produce the resultant signal</u> (Appears in: '904 (30)) *The processor is also adapted to determine two or more fixed radio ports transmitting the highest quality signals and the processor combines the* | <u>processor is further adapted to determine a plurality of best fixed radio ports and to combine a group of signals of the plurality of signals to produce the resultant signal</u> (Appears in: '904 (30)) *Means plus function term to be construed pursuant to 35 U.S.C. § 112, ¶ 6.* | Not a means-plus-function claim. |

## APPENDIX A: JOINT CLAIM CONSTRUCTION WORKSHEET
### A1: U.S. Patent 7,221,904
### Asserted Claims: 22, 28, 29, 30, 31, 32, 33, 34, 40

| CLAIM LANGUAGE (Disputed Terms in BOLD) | AGREED PROPOSED CONSTRUCTION | PLAINTIFF'S PROPOSED CONSTRUCTION | DEFENDANTS' PROPOSED CONSTRUCTION | COURT'S CONSTRUCTION |
|---|---|---|---|---|
| | | *signals transmitted from those fixed radio ports to produce the resultant signal.* | | |
| **Claim 31** | | | | |
| 31. An apparatus in accordance with claim 30, wherein the **processor is further adapted to combine the group of signals by synchronizing the group of signals to produce a plurality of synchronized signals and combining the plurality of synchronized signals in accordance with the quality of each of the plurality of synchronized signals to produce the resultant signal**. | | **processor is further adapted to combine the group of signals by synchronizing the group of signals to produce a plurality of synchronized signals and combining the plurality of synchronized signals in accordance with the quality of each of the plurality of synchronized signals to produce the resultant signal** (Appears in: '904 (31))  *The processor is also adapted to combine the group of signals by time synchronizing the group of signals to each other to produce synchronized signals and then combining those synchronized signals based on the quality of each* | **processor is further adapted to combine the group of signals by synchronizing the group of signals to produce a plurality of synchronized signals and combining the plurality of synchronized signals in accordance with the quality of each of the plurality of synchronized signals to produce the resultant signal** (Appears in: '904 (31))  *Means plus function term to be construed pursuant to 35 U.S.C. § 112, ¶ 6.* | Not a means-plus-function claim. |

# APPENDIX A: JOINT CLAIM CONSTRUCTION WORKSHEET
## A1: U.S. Patent 7,221,904
## Asserted Claims: 22, 28, 29, 30, 31, 32, 33, 34, 40

| CLAIM LANGUAGE (Disputed Terms in BOLD) | AGREED PROPOSED CONSTRUCTION | PLAINTIFF'S PROPOSED CONSTRUCTION | DEFENDANTS' PROPOSED CONSTRUCTION | COURT'S CONSTRUCTION |
|---|---|---|---|---|
| | | *of the synchronized signals. The combined synchronized signals are the resultant signal.* | | |
| **Claim 32** | | | | |
| 32. An apparatus in accordance with claim 22, wherein the amount of information transferred to the **mobile unit** is maximized by transmitting the information through at least one of the plurality of **fixed radio ports**, the at least one **fixed radio port** providing a greatest quality communication link between the at least one **fixed radio port** and the **mobile unit** in relation to other communication links between other **fixed radio ports** of the plurality of **fixed radio ports** and the **mobile unit**. | | | | |
| **Claim 33** | | | | |

## APPENDIX A: JOINT CLAIM CONSTRUCTION WORKSHEET
### A1: U.S. Patent 7,221,904
### Asserted Claims: 22, 28, 29, 30, 31, 32, 33, 34, 40

| CLAIM LANGUAGE (Disputed Terms in BOLD) | AGREED PROPOSED CONSTRUCTION | PLAINTIFF'S PROPOSED CONSTRUCTION | DEFENDANTS' PROPOSED CONSTRUCTION | COURT'S CONSTRUCTION |
|---|---|---|---|---|
| 33. An apparatus in accordance with claim 32, wherein the greatest quality communication link comprises: | | | | |
| a first wireless communication link between the at least one **fixed radio port** and the receiver; and | | | | |
| a second wireless communication link between the transmitter and the **mobile unit**. | | | | |
| **Claim 34** | | | | |
| 34. An apparatus **adapted to** move in accordance with a movement of a plurality of mobile units moving relative to a plurality of **fixed radio ports** at a velocity greater than a relative velocity of movement between each of the **mobile units** of the plurality of **mobile units**, the apparatus comprising: | | | | |
| a first radio interface adapted to communicate | | | | |

**APPENDIX A: JOINT CLAIM CONSTRUCTION WORKSHEET**
**A1: U.S. Patent 7,221,904**
**Asserted Claims: 22, 28, 29, 30, 31, 32, 33, 34, 40**

| CLAIM LANGUAGE (Disputed Terms in BOLD) | AGREED PROPOSED CONSTRUCTION | PLAINTIFF'S PROPOSED CONSTRUCTION | DEFENDANTS' PROPOSED CONSTRUCTION | COURT'S CONSTRUCTION |
|---|---|---|---|---|
| with the plurality of **fixed radio ports** in a **frequency band**; | | | | |
| a second radio interface adapted to communicate with the plurality of **mobile units** in the **frequency bandwidth**, the frequency having a lower limit greater than 300 megahertz; and | | | | |
| a **processor adapted to establish a communication link** between the plurality of **mobile units** and at least one of the plurality of **fixed radio ports** based on a plurality of signal quality indicators, each of the signal quality indicators corresponding to each of a plurality of transmitted signals transmitted from the plurality of **fixed radio ports**. | | <u>processor adapted to establish a communication link . . .</u><br>(Appears in: '904 (34*))<br><br>*Plain meaning, other than the terms "fixed radio ports" and "mobile unit," see supra.* | <u>processor adapted to establish a communication link . . .</u><br>(Appears in: '904 (34*))<br><br>*Means plus function term to be construed pursuant to 35 U.S.C. § 112, ¶ 6.* | Not a means-plus-function claim. |
| **Claim 40** | | | | |

**APPENDIX A: JOINT CLAIM CONSTRUCTION WORKSHEET**
**A1: U.S. Patent 7,221,904**
**Asserted Claims: 22, 28, 29, 30, 31, 32, 33, 34, 40**

| CLAIM LANGUAGE (Disputed Terms in BOLD) | AGREED PROPOSED CONSTRUCTION | PLAINTIFF'S PROPOSED CONSTRUCTION | DEFENDANTS' PROPOSED CONSTRUCTION | COURT'S CONSTRUCTION |
|---|---|---|---|---|
| 40. An apparatus in accordance with claim 34, wherein the **processor is further adapted to establish a second communication link** between the plurality of **mobile units** and at least a second **fixed radio port** of the plurality of **fixed radio ports** based on the plurality of signal quality indicators. | | **processor is further adapted to establish a second communication link** (Appears in: '904 (40))<br><br>*Plain meaning, other than the terms "fixed radio ports" and "mobile unit," see supra.* | **processor is further adapted to establish a second communication link** (Appears in: '904 (40))<br><br>*Means plus function term to be construed pursuant to 35 U.S.C. § 112, ¶ 6.* | Not a means-plus-function claim. |

**APPENDIX A: JOINT CLAIM CONSTRUCTION WORKSHEET**
**A2: U.S. Patent 7,848,701**
**Asserted Claims: 1, 6, 10, 13, 14, 15**

**Construed Terms:**  **bold or bold/underline- 1st occurrence in red**
**Proposed Constructions:**  *italicized*
Independent claims denoted with "*"

| CLAIM LANGUAGE (Disputed Terms in BOLD) | AGREED PROPOSED CONSTRUCTION | PLAINTIFF'S PROPOSED CONSTRUCTION AND EVIDENCE | DEFENDANTS' PROPOSED CONSTRUCTION AND EVIDENCE | COURT'S CONSTRUCTION |
|---|---|---|---|---|
| **Claim 1** | | | | |
| 1. A movable base station **configured to move relative to Earth**, the movable base station comprising: | | **configured to** (Appears in: '701 (1*, 10*); '023 (1*, 11*); '543 (10*, 21*); '191 (1)). <br><br> *Plain meaning.* | **configured to** (Appears in: '701 (1*, 10*); '023 (1*, 11*); '543 (10*, 21*); '191 (1)). <br><br> *Constructed to* | "constructed to move with the traffic at a rate of speed which is comparable to the speed of the traffic" |
| | | **configured to move relative to Earth** (Appears in: '701 (1*, 10*); '023 (1*, 11*)) <br><br> *Cited claim limitation takes plain meaning.* | **configured to move relative to Earth** (Appears in: '701 (1*, 10*); '023 (1*, 11*)) <br><br> *Constructed to move by a conveying device to track the movement of a mobile device.* | No further construction beyond the construction for the term "configured to." |
| a plurality of spatially separated antennas; | | | | |

**APPENDIX A: JOINT CLAIM CONSTRUCTION WORKSHEET**
**A2: U.S. Patent 7,848,701**
**Asserted Claims: 1, 6, 10, 13, 14, 15**

| CLAIM LANGUAGE (Disputed Terms in BOLD) | AGREED PROPOSED CONSTRUCTION | PLAINTIFF'S PROPOSED CONSTRUCTION AND EVIDENCE | DEFENDANTS' PROPOSED CONSTRUCTION AND EVIDENCE | COURT'S CONSTRUCTION |
|---|---|---|---|---|
| a receiver configured to receive mobile device signals from a mobile device **through the plurality of spatially separated antennas**; | **through the plurality of spatially separated antennas** (Appears in: '701 (1*,10*); '023 (1*,11*,14, 21); '543 (10*,16,21*); '191 (1* )) <br><br>*Through two or more antennas located apart from one another so that there is space between them.* | | | |
| a controller configured to **align and combine the received mobile device signals**; and | | **align and combine . . . signals** (Appears in: '701 (1*,10*); '023 (7, 17)) <br><br>*Time align the received signals relative to one another and then combine the time aligned signals.* | **align and combine . . . signals** (Appears in: '701 (1*,10*); '023 (7, 17)) <br><br>*Remove controlled time delays among the received signals then add those signals together.* | No construction. |

A2-2

# APPENDIX A: JOINT CLAIM CONSTRUCTION WORKSHEET
## A2: U.S. Patent 7,848,701
## Asserted Claims: 1, 6, 10, 13, 14, 15

| CLAIM LANGUAGE (Disputed Terms in BOLD) | AGREED PROPOSED CONSTRUCTION | PLAINTIFF'S PROPOSED CONSTRUCTION AND EVIDENCE | DEFENDANTS' PROPOSED CONSTRUCTION AND EVIDENCE | COURT'S CONSTRUCTION |
|---|---|---|---|---|
| | | **mobile device** (Appears in: '701 (1*,6,10*); '023 (1*,11*); '543 (10*,21*); '191 (1* )) <br><br>*An electronic device capable of moving that can wirelessly communicate with one or more other devices.* <br><br>. | **mobile device** (Appears in: '701 (1*,6,10*); '023 (1*,11*); '543 (10*,21*); '191 (1* )) <br><br>*Defendants maintains that no construction is necessary for this term. This claim term should be afforded its plain and ordinary meaning.* <br><br>*However, should the Court decide to construe this term, then Defendants proposes the following construction:* <br><br>*A portable electronic device capable of wireless communications with a base station.* | No construction. |
| a transmitter configured to **transmit radio frequency signals** | | **transmit radio frequency signals corresponding to the mobile device signals** | **transmit radio frequency signals corresponding to the mobile device signals** | "transmit radio frequency signals that correspond to the mobile device signals" |

A2-3

**APPENDIX A: JOINT CLAIM CONSTRUCTION WORKSHEET**
**A2: U.S. Patent 7,848,701**
**Asserted Claims: 1, 6, 10, 13, 14, 15**

| CLAIM LANGUAGE (Disputed Terms in BOLD) | AGREED PROPOSED CONSTRUCTION | PLAINTIFF'S PROPOSED CONSTRUCTION AND EVIDENCE | DEFENDANTS' PROPOSED CONSTRUCTION AND EVIDENCE | COURT'S CONSTRUCTION |
|---|---|---|---|---|
| **corresponding to the mobile device signals** to a **base station**. | | (Appears in: '701 (1*); '023 (1*))<br><br>*Plain meaning.* | (Appears in: '701 (1*); '023 (1*))<br><br>*Transmit radio signals at the same frequency as the mobile device signals.* | |
| | | **base station**<br>(Appears in: '701 (1*); '023 (1*))<br><br>*Plain meaning, i.e., a base station is a fixed device a mobile radio transceiver (transmitter/receiver) talks to, to talk to a person or to get to the landline phone network, public or private.* | **base station**<br>(Appears in: '701 (1*); '023 (1*))<br><br>*A fixed port [A stationary radio communication device that communicates with the mobile device/unit only via a movable intermediary device and does not perform call handling functions (e.g., handoff)].* | "a fixed device a mobile radio transceiver (transmitter/receiver) talks to, to talk to a person or to get to the landline phone network, public or private" |
| **Claim 6** | | | | |
| 6. A movable base station in accordance with claim 1, further | | | | |

## APPENDIX A: JOINT CLAIM CONSTRUCTION WORKSHEET
### A2: U.S. Patent 7,848,701
### Asserted Claims: 1, 6, 10, 13, 14, 15

| CLAIM LANGUAGE (Disputed Terms in BOLD) | AGREED PROPOSED CONSTRUCTION | PLAINTIFF'S PROPOSED CONSTRUCTION AND EVIDENCE | DEFENDANTS' PROPOSED CONSTRUCTION AND EVIDENCE | COURT'S CONSTRUCTION |
|---|---|---|---|---|
| comprising a controller configured to compare the received **mobile device** signals received through the spatially separated antennas and to select a best signal. | | | | |
| **Claim 10** | | | | |
| 10. A movable base station **configured to move relative to Earth**, the movable base station comprising: | | | | |
| a plurality of spatially separated antennas; | | | | |
| a receiver configured to receive **fixed port** signals from a **fixed port through the plurality of spatially separated antennas**; | | **fixed port**<br>(Appears in: '701 (10*, 15); '023 (11*, 16, 21, 22, 23))<br><br>*A stationary device at which signals can enter or exit a communication network.* | **fixed port**<br>(Appears in: '701 (10*, 15); '023 (11*, 16, 21, 22, 23))<br><br>*A stationary radio communication device that communicates with the mobile device/unit* | "a stationary device at which signals can enter or exit a communication network" |

**APPENDIX A: JOINT CLAIM CONSTRUCTION WORKSHEET**
**A2: U.S. Patent 7,848,701**
**Asserted Claims: 1, 6, 10, 13, 14, 15**

| CLAIM LANGUAGE (Disputed Terms in BOLD) | AGREED PROPOSED CONSTRUCTION | PLAINTIFF'S PROPOSED CONSTRUCTION AND EVIDENCE | DEFENDANTS' PROPOSED CONSTRUCTION AND EVIDENCE | COURT'S CONSTRUCTION |
|---|---|---|---|---|
| | | | *only via a movable intermediary device and does not perform call handling functions (e.g., handoff).* | |
| a controller configured to **align and combine the received <u>fixed port</u> signals**; and | | | | |
| a transmitter configured to transmit **radio frequency signals to a mobile device corresponding to the received <u>fixed port</u> signals**. | | | | |
| **Claim 13** | | | | |
| 13. A movable base station in accordance with claim 10, further comprising another plurality of spatially separated antennas, the transmitter | | | | |

# APPENDIX A: JOINT CLAIM CONSTRUCTION WORKSHEET
## A2: U.S. Patent 7,848,701
## Asserted Claims: 1, 6, 10, 13, 14, 15

| CLAIM LANGUAGE (Disputed Terms in BOLD) | AGREED PROPOSED CONSTRUCTION | PLAINTIFF'S PROPOSED CONSTRUCTION AND EVIDENCE | DEFENDANTS' PROPOSED CONSTRUCTION AND EVIDENCE | COURT'S CONSTRUCTION |
|---|---|---|---|---|
| configured to transmit the radio frequency signals **through the another plurality of spatially separated antennas**. | | | | |
| **Claim 14** | | | | |
| 14. A movable base station in accordance with claim 13, **wherein the another plurality of spatially separated antennas is configured to transmit spatially separated radio frequency beams separated in time with a predefined time delay.** | | <u>**wherein the another plurality of spatially separated antennas is configured to transmit spatially separated radio frequency beams separated in time with a predefined time delay**</u> (Appears in: '701 (14); '023 (15))<br><br>*The second group of antennas is configured to transmit two or more radio frequency signals, where the transmitted signals are distinguished from each other by a separation in space and a known time delay.* | <u>**wherein the another plurality of spatially separated antennas is configured to transmit spatially separated radio frequency beams separated in time with a predefined time delay**</u> (Appears in: '701 (14); '023 (15))<br><br>*Defendants maintains that no construction is necessary for this term. This claim term should be afforded its plain and ordinary meaning.*<br><br>*However, should the Court decide to construe* | No construction. |

**APPENDIX A: JOINT CLAIM CONSTRUCTION WORKSHEET**
**A2: U.S. Patent 7,848,701**
**Asserted Claims: 1, 6, 10, 13, 14, 15**

| CLAIM LANGUAGE (Disputed Terms in BOLD) | AGREED PROPOSED CONSTRUCTION | PLAINTIFF'S PROPOSED CONSTRUCTION AND EVIDENCE | DEFENDANTS' PROPOSED CONSTRUCTION AND EVIDENCE | COURT'S CONSTRUCTION |
|---|---|---|---|---|
| | | | *this term, then Defendants proposes the following construction:* | |
| | | | *The second group of antennas, which are not in physical contact, are constructed to each transmit a radio frequency beam in a different direction with a preset time delay between the beams transmitted from each antenna.* | |
| **Claim 15** | | | | |
| 15. A movable base station in accordance with claim 10, further comprising a controller configured to compare the received **fixed port** signals received through the spatially separated antennas | | | | |

A2-8

**APPENDIX A: JOINT CLAIM CONSTRUCTION WORKSHEET**
**A2: U.S. Patent 7,848,701**
**Asserted Claims: 1, 6, 10, 13, 14, 15**

| CLAIM LANGUAGE (Disputed Terms in BOLD) | AGREED PROPOSED CONSTRUCTION | PLAINTIFF'S PROPOSED CONSTRUCTION AND EVIDENCE | DEFENDANTS' PROPOSED CONSTRUCTION AND EVIDENCE | COURT'S CONSTRUCTION |
|---|---|---|---|---|
| and to select a best signal. | | | | |

# APPENDIX A: JOINT CLAIM CONSTRUCTION WORKSHEET
## A3: U.S. Patent 7,979,023
## Asserted Claims: 1, 6, 7, 11, 14, 15, 16, 17, 21, 22, 23

**Construed Terms:** **bold or bold/underline** - <span style="color:red">1st occurrence in red</span>
**Proposed Constructions:** *italicized*
Independent claims denoted with "*"

| CLAIM LANGUAGE (Disputed Terms in BOLD) | AGREED PROPOSED CONSTRUCTION | PLAINTIFF'S PROPOSED CONSTRUCTION AND EVIDENCE | DEFENDANTS' PROPOSED CONSTRUCTION AND EVIDENCE | COURT'S CONSTRUCTION |
|---|---|---|---|---|
| **Claim 1** | | | | |
| 1. An apparatus **configured to move relative to Earth**, the apparatus comprising: | | | | |
| a plurality of spatially separated antennas; | | | | |
| a receiver configured to receive mobile device signals from a **mobile device through the plurality of spatially separated antennas**; and | | | | |
| a **transmitter configured to transmit radio frequency signals corresponding to the mobile device signals** to a **base station**. | | | | |
| **Claim 6** | | | | |
| 6. An apparatus in accordance with claim 1, | | | | |

## APPENDIX A: JOINT CLAIM CONSTRUCTION WORKSHEET
### A3: U.S. Patent 7,979,023
### Asserted Claims: 1, 6, 7, 11, 14, 15, 16, 17, 21, 22, 23

| CLAIM LANGUAGE (Disputed Terms in BOLD) | AGREED PROPOSED CONSTRUCTION | PLAINTIFF'S PROPOSED CONSTRUCTION AND EVIDENCE | DEFENDANTS' PROPOSED CONSTRUCTION AND EVIDENCE | COURT'S CONSTRUCTION |
|---|---|---|---|---|
| further comprising a controller configured to compare the received mobile device signals received through the spatially separated antennas and to select a best signal. | | | | |
| **Claim 7** | | | | |
| 7. An apparatus in accordance with claim 1, further comprising a controller configured to **align and combine the received mobile device signals**. | | | | |
| **Claim 11** | | | | |
| 11. An apparatus **configured to move relative to Earth**, the apparatus comprising: | | | | |
| a plurality of spatially separated antennas; and | | | | |
| a receiver configured to receive **fixed port** signals from a **fixed port through the plurality of** | | | | |

# APPENDIX A: JOINT CLAIM CONSTRUCTION WORKSHEET
## A3: U.S. Patent 7,979,023
## Asserted Claims: 1, 6, 7, 11, 14, 15, 16, 17, 21, 22, 23

| CLAIM LANGUAGE (Disputed Terms in BOLD) | AGREED PROPOSED CONSTRUCTION | PLAINTIFF'S PROPOSED CONSTRUCTION AND EVIDENCE | DEFENDANTS' PROPOSED CONSTRUCTION AND EVIDENCE | COURT'S CONSTRUCTION |
|---|---|---|---|---|
| **spatially separated antennas**; and | | | | |
| a transmitter configured to **transmit radio frequency signals to a mobile device corresponding to the received fixed port signals**. | | **transmit radio frequency signals to a mobile device corresponding to the received fixed port signals** (Appears in: '701 (10*); '023 (11*))<br><br>*Plain meaning: transmit radio frequency signals to a mobile device, the radio frequency signal corresponding to the received fixed port signals.* | **transmit radio frequency signals to a mobile device corresponding to the received fixed port signals** (Appears in: '701 (10*); '023 (11*))<br><br>*transmit radio signals at the same frequency as the received fixed port signals* | "transmit radio frequency signals to a mobile device, where the radio frequency signals correspond to the received fixed port signals" |
| **Claim 14** | | | | |
| 14. An apparatus in accordance with claim 11, further comprising another plurality of spatially separated antennas, the transmitter configured to transmit the radio frequency signals **through the another** | | | | |

**APPENDIX A: JOINT CLAIM CONSTRUCTION WORKSHEET**
**A3: U.S. Patent 7,979,023**
**Asserted Claims: 1, 6, 7, 11, 14, 15, 16, 17, 21, 22, 23**

| CLAIM LANGUAGE (Disputed Terms in BOLD) | AGREED PROPOSED CONSTRUCTION | PLAINTIFF'S PROPOSED CONSTRUCTION AND EVIDENCE | DEFENDANTS' PROPOSED CONSTRUCTION AND EVIDENCE | COURT'S CONSTRUCTION |
|---|---|---|---|---|
| **plurality of spatially separated antennas**. | | | | |
| **Claim 15** | | | | |
| 15. An apparatus in accordance with claim 14, **wherein the another plurality of spatially separated antennas is configured to transmit spatially separated radio frequency beams separated in time with a predefined time delay**. | | | | |
| **Claim 16** | | | | |
| 16. An apparatus in accordance with claim 11, further comprising a controller configured to compare the received **fixed port** signals received through the spatially separated antennas and to select a best signal. | | | | |
| **Claim 17** | | | | |
| 17. An apparatus in accordance with claim 11, | | | | |

**APPENDIX A: JOINT CLAIM CONSTRUCTION WORKSHEET**
**A3: U.S. Patent 7,979,023**
**Asserted Claims: 1, 6, 7, 11, 14, 15, 16, 17, 21, 22, 23**

| CLAIM LANGUAGE (Disputed Terms in BOLD) | AGREED PROPOSED CONSTRUCTION | PLAINTIFF'S PROPOSED CONSTRUCTION AND EVIDENCE | DEFENDANTS' PROPOSED CONSTRUCTION AND EVIDENCE | COURT'S CONSTRUCTION |
|---|---|---|---|---|
| further comprising a controller configured to **align and combine the received radio frequency signals**. | | | | |
| **Claim 21** | | | | |
| 21. An apparatus in accordance with claim 11, wherein the receiver is further configured to receive fixed port signals from a plurality of **fixed ports through the plurality of spatially separated antennas**. | | | | |
| **Claim 22** | | | | |
| 22. An apparatus in accordance with claim 21, wherein each fixed port signal transmitted from each of the plurality of **fixed ports** includes common data. | | | | |
| **Claim 23** | | | | |
| 23. An apparatus in accordance with claim 22, wherein **transmission of** | | **transmission of each fixed port signal from each of the plurality of fixed ports** | **transmission of each fixed port signal from each of the plurality of fixed ports** | No construction. |

## APPENDIX A: JOINT CLAIM CONSTRUCTION WORKSHEET
### A3: U.S. Patent 7,979,023
### Asserted Claims: 1, 6, 7, 11, 14, 15, 16, 17, 21, 22, 23

| CLAIM LANGUAGE (Disputed Terms in BOLD) | AGREED PROPOSED CONSTRUCTION | PLAINTIFF'S PROPOSED CONSTRUCTION AND EVIDENCE | DEFENDANTS' PROPOSED CONSTRUCTION AND EVIDENCE | COURT'S CONSTRUCTION |
|---|---|---|---|---|
| **each fixed port signal from each of the plurality of fixed ports is delayed by a different time** and the receiver is configured to receive and separate the fixed port signals. | | <u>is delayed by a different time</u><br>(Appears in: '023 (23))<br><br>*Fixed port signals are transmitted in a time delay relative to each other.* | <u>is delayed by a different time</u><br>(Appears in: '023 (23))<br><br>*The signal transmitted from each fixed port is transmitted at a different time.* | |

# APPENDIX A: JOINT CLAIM CONSTRUCTION WORKSHEET
## A4: U.S. Patent 8,718,543
### Asserted Claims: 10, 16, 18, 21, 25

**Construed Terms:**     **bold or bold/underline - 1st occurrence in red**
**Proposed Constructions:**     *italicized*
Independent claims denoted with "*"

| CLAIM LANGUAGE (Disputed Terms in BOLD) | AGREED PROPOSED CONSTRUCTION | PLAINTIFF'S PROPOSED CONSTRUCTION AND EVIDENCE | DEFENDANTS' PROPOSED CONSTRUCTION AND EVIDENCE | COURT'S CONSTRUCTION |
|---|---|---|---|---|
| **Claim 10** | | | | |
| 10. An apparatus comprising: | | | | |
| a plurality of spatially separated antennas; | | | | |
| a receiver configured to receive, **through the plurality of spatially separated antennas**, a plurality of **cellular signals** from a plurality of **base station interface circuits**; and | | **cellular signals** (Appears in: '543 (10*, 21*); '191 (1*)) <br><br> *Radio frequency signals used by a cellular communication network.* | **cellular signals** (Appears in: '543 (10*, 21*); '191 (1*)) <br><br> *Defendants maintains that no construction is necessary for this term. This claim term should be afforded its plain and ordinary meaning.* <br><br> *However, should the Court decide to construe this term, then Defendants proposes the following construction:* <br><br> *Radio frequency signals used in a communication* | No construction. |

**APPENDIX A: JOINT CLAIM CONSTRUCTION WORKSHEET**
**A4: U.S. Patent 8,718,543**
**Asserted Claims: 10, 16, 18, 21, 25**

| CLAIM LANGUAGE (Disputed Terms in BOLD) | AGREED PROPOSED CONSTRUCTION | PLAINTIFF'S PROPOSED CONSTRUCTION AND EVIDENCE | DEFENDANTS' PROPOSED CONSTRUCTION AND EVIDENCE | COURT'S CONSTRUCTION |
|---|---|---|---|---|
| | | | *network geographically organized as a collection of cells.* | |
| | | **base station interface circuits** (Appears in: '543 (10*, 21*); '191 (1*)) *Circuits in base stations that can transmit and receive cellular signals.* | **base station interface circuits** (Appears in: '543 (10*, 21*); '191 (1*)) *Radio interface circuit of a fixed port [A stationary radio communication device that communicates with the mobile device/unit only via a movable intermediary device and does not perform call handling functions (e.g., handoff).]* | "circuits in a base station that can transmit and receive cellular signals" |

A4-2

## APPENDIX A: JOINT CLAIM CONSTRUCTION WORKSHEET
### A4: U.S. Patent 8,718,543
### Asserted Claims: 10, 16, 18, 21, 25

| CLAIM LANGUAGE (Disputed Terms in BOLD) | AGREED PROPOSED CONSTRUCTION | PLAINTIFF'S PROPOSED CONSTRUCTION AND EVIDENCE | DEFENDANTS' PROPOSED CONSTRUCTION AND EVIDENCE | COURT'S CONSTRUCTION |
|---|---|---|---|---|
| **a transmitter configured to transmit a mobile device radio frequency signal to a mobile device moving relative to Earth while the apparatus is moving relative to the plurality of base station radio interface circuits and relative to Earth**, the **mobile device** radio frequency signal including data extracted from the **cellular signals**. | | a transmitter configured to transmit a mobile device radio frequency signal to a mobile device moving relative to Earth while the apparatus is moving relative to the plurality of base station radio interface circuits and relative to Earth (Appears in: '543 (10*)) *Cited claim limitations take plain meaning, with exception of the claim terms "mobile device," and base station radio interface circuits." "Configured to" takes plain meaning.* | a transmitter configured to [transmit a mobile device radio frequency signal to a mobile device][1] moving relative to Earth while the apparatus is moving relative to the plurality of base station radio interface circuits and relative to Earth (Appears in: '543 (10*)) *A transmitter constructed to move by a conveying device to track the movement of a mobile device.* | No further construction beyond the construction for the term "configured to." |

---

[1]  Defendants have bracketed words that are not addressed by Defendants' proposed construction but have included the bracketed language for context.

A4-3

## APPENDIX A: JOINT CLAIM CONSTRUCTION WORKSHEET
### A4: U.S. Patent 8,718,543
### Asserted Claims: 10, 16, 18, 21, 25

| CLAIM LANGUAGE (Disputed Terms in BOLD) | AGREED PROPOSED CONSTRUCTION | PLAINTIFF'S PROPOSED CONSTRUCTION AND EVIDENCE | DEFENDANTS' PROPOSED CONSTRUCTION AND EVIDENCE | COURT'S CONSTRUCTION |
|---|---|---|---|---|
| | | **base station radio interface circuit** (Appears in: '543 (10*, 21*); '191 (1*)) <br><br> *A radio transceiver circuit in a base station that can transmit and receive cellular signals.* | **base station radio interface circuit** (Appears in: '543 (10*, 21*); '191 (1*)) <br><br> *Radio interface circuit of a fixed port [A stationary radio communication device that communicates with the mobile device/unit only via a movable intermediary device and does not perform call handling functions (e.g., handoff).]* | "a radio transceiver circuit in a base station that can transmit and receive cellular signals" |
| **Claim 16** | | | | |
| 16. An apparatus in accordance with claim 10, further comprising another plurality of spatially separated antennas, the transmitter configured to transmit the mobile device radio frequency **signal through the another plurality of spatially separated antennas**. | | | | |

## APPENDIX A: JOINT CLAIM CONSTRUCTION WORKSHEET
### A4: U.S. Patent 8,718,543
### Asserted Claims: 10, 16, 18, 21, 25

| CLAIM LANGUAGE (Disputed Terms in BOLD) | AGREED PROPOSED CONSTRUCTION | PLAINTIFF'S PROPOSED CONSTRUCTION AND EVIDENCE | DEFENDANTS' PROPOSED CONSTRUCTION AND EVIDENCE | COURT'S CONSTRUCTION |
|---|---|---|---|---|
| **Claim 18** | | | | |
| 18. An apparatus in accordance with claim 10, further comprising a controller configured to **align and combine the plurality of cellular signals**. | | | | |
| **Claim 21** | | | | |
| 21. An apparatus comprising: | | | | |
| a plurality of spatially separated antennas; | | | | |
| a first receiver configured to receive, **through the plurality of spatially separated antennas**, a **cellular signal** transmitted from a **base station radio interface circuit**; | | | | |
| <span style="color:red">**a first transmitter configured to** transmit a mobile device signal to a mobile device moving relative to Earth while the apparatus is moving relative to the base</span> | | a first transmitter configured to transmit a mobile device signal to a mobile device moving relative to Earth while the apparatus is moving relative to the base station | a first transmitter configured to [transmit a mobile device signal to a | No further construction beyond the construction for the term "configured to." |

A4-5

## APPENDIX A: JOINT CLAIM CONSTRUCTION WORKSHEET
### A4: U.S. Patent 8,718,543
### Asserted Claims: 10, 16, 18, 21, 25

| CLAIM LANGUAGE (Disputed Terms in BOLD) | AGREED PROPOSED CONSTRUCTION | PLAINTIFF'S PROPOSED CONSTRUCTION AND EVIDENCE | DEFENDANTS' PROPOSED CONSTRUCTION AND EVIDENCE | COURT'S CONSTRUCTION |
|---|---|---|---|---|
| **station radio interface circuit and in the same direction as the mobile device**, the **mobile device** signal including data extracted from the **cellular signal**; | | **radio interface circuit and in the same direction as the mobile device** (Appears in: '543 (21*)) *Cited claim limitations take plain meaning, with exception of the claim terms "mobile device," and base station radio interface circuit." "Configured to" take plain meaning.* | **mobile device]² moving relative to Earth while the apparatus is moving relative to the base station radio interface circuit and in the same direction as the mobile device** (Appears in: '543 (21*)) *A transmitter constructed to move by a conveying device to track the movement of a mobile device.* | |
| a second receiver configured to receive another mobile device signal transmitted from the **mobile device**; and | | | | |
| a **second transmitter configured to transmit,** | | **a second transmitter configured to transmit . . .** | **a second transmitter configured to [transmit . . .** | No further construction beyond |

---

² Defendants have bracketed words that are not addressed by Defendants' proposed construction but have included the bracketed language for context.

## APPENDIX A: JOINT CLAIM CONSTRUCTION WORKSHEET
### A4: U.S. Patent 8,718,543
### Asserted Claims: 10, 16, 18, 21, 25

| CLAIM LANGUAGE (Disputed Terms in BOLD) | AGREED PROPOSED CONSTRUCTION | PLAINTIFF'S PROPOSED CONSTRUCTION AND EVIDENCE | DEFENDANTS' PROPOSED CONSTRUCTION AND EVIDENCE | COURT'S CONSTRUCTION |
|---|---|---|---|---|
| **using at least one of the plurality of spatially separated antennas, another <u>cellular signal</u> to the base station radio interface circuit while the apparatus is moving relative to the <u>base station radio interface circuit</u> and relative to Earth**, the another **cellular signal** including other data extracted from the another mobile device signal. | | <u>another cellular signal to the base station radio interface circuit while the apparatus is moving relative to the base station radio interface circuit and relative to Earth</u> (Appears in: '543 (21*))<br><br>*Cited claim limitations take plain meaning, with exception of the claim terms "cellular signal," "plurality of spatially separated antennas," and "base station radio interface circuit." "Configured to" takes plain meaning.* | <u>another cellular signal to the base station radio interface circuit]³ while the apparatus is moving relative to the base station radio interface circuit and relative to Earth</u> (Appears in: '543 (21*))<br><br>*A transmitter constructed to move by a conveying device to track the movement of a mobile device.* | the construction for the term "configured to." |
| **Claim 25** | | | | |
| 25. An apparatus in accordance with claim 21, wherein the **cellular signal** is a **code division** | | <u>code division multiple access (CDMA) signal</u> (Appears in: '543 (25)) | <u>code division multiple access (CDMA) signal</u> (Appears in: '543 (25)) | No construction. |

---

³ Defendants have bracketed words that are not addressed by Defendants' proposed construction but have included the bracketed language for context.

## APPENDIX A: JOINT CLAIM CONSTRUCTION WORKSHEET
### A4: U.S. Patent 8,718,543
### Asserted Claims: 10, 16, 18, 21, 25

| CLAIM LANGUAGE (Disputed Terms in BOLD) | AGREED PROPOSED CONSTRUCTION | PLAINTIFF'S PROPOSED CONSTRUCTION AND EVIDENCE | DEFENDANTS' PROPOSED CONSTRUCTION AND EVIDENCE | COURT'S CONSTRUCTION |
|---|---|---|---|---|
| **multiple access (CDMA) signal**. | | *Plain meaning, i.e., also called spread spectrum, is a name for a form of digital cellular phone and data service.* | *Signals compliant with the IS-95 standard.* | |

# APPENDIX A: JOINT CLAIM CONSTRUCTION WORKSHEET
## A5: U.S. Patent 8,849,191
## Asserted Claim: 1

**Construed Terms:**      **bold or <u>bold/underline</u> - <span style="color:red">1st occurrence in red</span>**
**Proposed Constructions:**      *italicized*
Independent claims denoted with "*"

| CLAIM LANGUAGE (Disputed Terms in BOLD) | AGREED PROPOSED CONSTRUCTION | PLAINTIFF'S PROPOSED CONSTRUCTION AND EVIDENCE | DEFENDANTS' PROPOSED CONSTRUCTION AND EVIDENCE | COURT'S CONSTRUCTION |
|---|---|---|---|---|
| **Claim 1** | | | | |
| 1. A system comprising: | | | | |
| a plurality of **base station interface circuits** positioned on Earth and geographically <span style="color:red">**distributed in accordance with a path**</span>; | | <u>**distributed in accordance with a path**</u> (Appears in: '191 (1*)) *Plain meaning.* | <u>**distributed in accordance with a path**</u> (Appears in: '191 (1*)) *Installed along a path of travel, e.g., a roadway.* | No construction. |
| a first plurality of spatially separated antennas; | | | | |
| a first receiver connected to the first plurality of spatially separated antennas, the first receiver configured to receive, **through the first plurality of spatially separated antennas**, a plurality of **cellular signals** transmitted from | | | | |

## APPENDIX A: JOINT CLAIM CONSTRUCTION WORKSHEET
## A5: U.S. Patent 8,849,191
## Asserted Claim: 1

| CLAIM LANGUAGE (Disputed Terms in BOLD) | AGREED PROPOSED CONSTRUCTION | PLAINTIFF'S PROPOSED CONSTRUCTION AND EVIDENCE | DEFENDANTS' PROPOSED CONSTRUCTION AND EVIDENCE | COURT'S CONSTRUCTION |
|---|---|---|---|---|
| the plurality of **base station interface circuits**, each **cellular signal** of the plurality of cellular signals including first data for a **mobile device**, | | | | |
| a second plurality of spatially separated antennas; | | | | |
| **a first transmitter connected to the second plurality of spatially separated antennas, the first transmitter configured to transmit, through the second plurality of spatially separated antennas, the first data to the mobile device while the mobile device, the first receiver, and the first transmitter are moving in the same** | | **a first transmitter . . . configured to transmit . . . the first data to the mobile device while the mobile device, the first receiver, and the first transmitter are moving in the same direction relative to the plurality of base station interface circuits and along the path** (Appears in: '191 (1*)) | **a first transmitter . . . configured to [transmit . . . the first data to the mobile device][1] while the mobile device, the first receiver, and the first transmitter are moving in the same direction relative to the plurality of base station interface circuits and along the path** (Appears in: '191 (1*)) | No further construction beyond the construction for the term "configured to." |

[1] Defendants have bracketed words that are not addressed by Defendants' proposed construction but have included the bracketed language for context.

**APPENDIX A: JOINT CLAIM CONSTRUCTION WORKSHEET**
**A5: U.S. Patent 8,849,191**
**Asserted Claim: 1**

| CLAIM LANGUAGE (Disputed Terms in BOLD) | AGREED PROPOSED CONSTRUCTION | PLAINTIFF'S PROPOSED CONSTRUCTION AND EVIDENCE | DEFENDANTS' PROPOSED CONSTRUCTION AND EVIDENCE | COURT'S CONSTRUCTION |
|---|---|---|---|---|
| **direction relative to the plurality of base station interface circuits and along the path**; | | *Cited claim limitations take plain meaning, with exception of the claim terms "plurality of spatially separated antennas," "mobile device," and "base station interface circuits."* | *A transmitter constructed to move by a conveying device to track the movement of a mobile device.* | |
| a second receiver connected to the second plurality of spatially separated antennas, the second receiver configured to receive, through the second plurality of spatially separated antennas, second data from the mobile device; and | | | | |
| **a second transmitter connected to at least one of the first plurality of spatially separated antennas, the second transmitter configured** | | **a second transmitter . . . configured to transmit another cellular signal . . . to at least one base station radio interface circuit . . . while the** | **a second transmitter . . . configured to [transmit another cellular signal . . . to at least one base station radio interface** | No further construction beyond the construction for the term "configured to." |

## APPENDIX A: JOINT CLAIM CONSTRUCTION WORKSHEET
### A5: U.S. Patent 8,849,191
### Asserted Claim: 1

| CLAIM LANGUAGE (Disputed Terms in BOLD) | AGREED PROPOSED CONSTRUCTION | PLAINTIFF'S PROPOSED CONSTRUCTION AND EVIDENCE | DEFENDANTS' PROPOSED CONSTRUCTION AND EVIDENCE | COURT'S CONSTRUCTION |
|---|---|---|---|---|
| **to transmit another cellular signal comprising the second data to at least one base station radio interface circuit of the plurality of base station interface circuits while the mobile device, the second receiver, and the second transmitter are moving in the same direction relative to the plurality of base station interface circuits and along the path**. | | **mobile device, the second receiver, and the second transmitter are moving in the same direction relative to the plurality of base station interface circuits and along the path** (Appears in: '191 (1*))  *Cited claim limitations take plain meaning, with exception of the claim terms "plurality of spatially separated antennas," "cellular signal," "mobile device," and "base station radio interface circuit," and "base station interface circuit." "Configured to" takes plain meaning.* | **circuit . . .]² while the mobile device, the second receiver, and the second transmitter are moving in the same direction relative to the plurality of base station interface circuits and along the path** (Appears in: '191 (1*))  *A transmitter constructed to move by a conveying device to track the movement of a mobile device.* | |

---

² Defendants have bracketed words that are not addressed by Defendants' proposed construction but have included the bracketed language for context.

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARUCEL INVESTMENTS, L.P., a Delaware limited partnership,<br><br>                                    Plaintiff,<br><br>v.<br><br>NOVATEL WIRELESS, INC., a Delaware corporation; AT&T MOBILITY LLC, a Delaware limited liability company; VERIZON COMMUNICATIONS, INC., a Delaware corporation; and CELLCO PARTNERSHIP d/b/a/VERIZON WIRELESS, a Delaware general partnership,<br><br>                                    Defendants. | Case No.:  16-cv-118-H-KSC<br><br>**ORDER DENYING WITHOUT PREJUDICE PLAINTIFF'S <u>DAUBERT</u> MOTION TO EXCLUDE EXPERT TESTIMONY**<br><br>[Doc. No. 157.] |

On January 27, 2017, Plaintiff Carucel Investments, L.P. filed a <u>Daubert</u>[1] motion to exclude portions of the expert testimony of Defendants Novatel Wireless, Inc., Verizon

---

[1]    <u>Daubert v. Merrell Dow Pharm., Inc.</u>, 509 U.S. 579 (1993).

Communications, Inc., and Cellco Partnership doing business as Verizon Wireless's non-infringement and invalidity expert, Dr. J. Stevenson Kenney.  (Doc. No. 157.)  On February 16, 2017, Defendants filed an opposition to Plaintiff's <u>Daubert</u> motion.  (Doc. No. 191.)  On February 23, 2017, Plaintiff file its reply.  (Doc. No. 206.)

The Court held a hearing on the matter on March 2, 2017.  Robert F. Ruyak, Michael K. Lindsey, and James M. Sarnecky appeared for Plaintiff.  Amardeep L. Thakur and Bruce R. Zisser appeared for Defendants.  For the reasons below, the Court denies Plaintiff's <u>Daubert</u> motion without prejudice.

## **Background**

On May 27, 2015, Plaintiff Carucel Investments, L.P. filed a complaint for patent infringement in the United States District Court for the Southern District of Florida against Defendants Novatel Wireless, Inc., AT&T Mobility LLC, Verizon Communications, Inc., and TigerDirect, Inc., alleging infringement of U.S. Patent No. 7,221,904, U.S. Patent No. 7,848,701, U.S. Patent No. 7,979,023, U.S. Patent No. 8,463,177, U.S. Patent No. 8,718,543, and U.S. Patent No. 8,849,191.[2]  (Doc. No. 1, Compl.)  Specifically, Plaintiff alleges that Defendants' mobile broadband hotspot devices infringe the patents-in-suit.  (<u>Id.</u> ¶¶ 28-29.)

On September 15, 2015, Carucel dismissed its claims against Defendant TigerDirect, Inc. with prejudice.  (Doc. No. 11.)  On October 29, 2015, Defendants Novatel Wireless, Inc., AT&T Mobility LLC, and Verizon Communications, Inc. each filed an answer to Carucel's complaint.  (Doc. Nos. 41-43.)

On December 16, 2015, Carucel filed a first amended complaint alleging infringement of the same six patents and adding as a new Defendant Cellco Partnership d/b/a Verizon Wireless.  (Doc. No. 58.)  On January 11, 2016, the Defendants each filed an answer to the first amended complaint.  (Doc. Nos. 64-67.)

---

[2]     The '177 and '191 patents are no longer asserted in this action.  (Doc. No. 198; Doc. No. 120 at 1; Doc. No. 123 at 1.)

16-cv-118-H-KSC

On January 15, 2016, the action was transferred to the Southern District of California.  (Doc. Nos. 69-70.)  On January 20, 2016, the action was transferred to the calendar of the Honorable Marilyn L. Huff.  (Doc. No. 75.)  On September 19, 2016, the Court issued a claim construction order construing the disputed terms in the patents-in-suit.  (Doc. No. 131.)  On December 9, 2016, the Court dismissed Defendant AT&T with prejudice.  (Doc. No. 139.)

By the present motion, Plaintiff moves to exclude portions of the expert testimony and opinions of Defendants' non-infringement and invalidity expert, Dr. Kenney.  (Doc. No. 157.)  Plaintiff moves to exclude portions of Dr. Kenney's opinions and testimony on two grounds.  First, Plaintiff argues that Dr. Kenney's opinions should be excluded to the extent his invalidity opinions rely on Dr. Uhlirz's 2016 deposition transcript.  (Id. at 8-14.)  Second, Plaintiff argues that Dr. Kenney's non-infringement and invalidity opinions should be excluded to the extent they rely on inconsistent interpretations of the Court's construction for the "adapted to/configured to" claim limitation.  (Id. at 14-16.)

**Discussion**

**I.  Legal Standards for Daubert Motion**

A district court's decision to admit expert testimony under Daubert in a patent case is governed by the law of the regional circuit.  Summit 6, LLC v. Samsung Elecs. Co., 802 F.3d 1283, 1294 (Fed. Cir. 2015).  When considering expert testimony offered pursuant to Rule 702, the trial court acts as a "gatekeeper" by "making a preliminary determination of whether the expert's testimony is reliable."  Elsayed Mukhtar v. Cal. State Univ., Hayward, 299 F.3d 1053, 1063 (9th Cir. 2002); see Kumho Tire Co. v. Carmichael, 526 U.S. 137, 150 (1999); Daubert, 509 U.S. at 597.  Under Rule 702 of the Federal Rules of Evidence, a court may permit opinion testimony from an expert only if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case."  The test for

16-cv-118-H-KSC

reliability of expert testimony under <u>Daubert</u> is flexible and depends on the particular circumstances of the case. <u>Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.</u>, 738 F.3d 960, 969 (9th Cir. 2013).

"Under <u>Daubert</u>, the district judge is 'a gatekeeper, not a fact finder.' When an expert meets the threshold established by Rule 702 as explained in <u>Daubert</u>, the expert may testify and the jury decides how much weight to give that testimony." <u>Primiano v. Cook</u>, 598 F.3d 558, 564-65 (9th Cir. 2010). "'[T]he test under <u>Daubert</u> is not the correctness of the expert's conclusions but the soundness of his methodology.'" <u>Primiano</u>, 598 F.3d at 564. "Shaky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion." <u>Id.</u> (citing <u>Daubert</u>, 509 U.S. at 594, 596); <u>accord</u> <u>Summit 6</u>, 802 F.3d at 1296. "Basically, the judge is supposed to screen the jury from unreliable nonsense opinions, but not exclude opinions merely because they are impeachable." <u>Alaska Rent-A-Car</u>, 738 F.3d at 969. Further, the Ninth Circuit has explained that "Rule 702 should be applied with a 'liberal thrust' favoring admission." <u>Messick</u>, 747 F.3d at 1196.

Whether to admit or exclude expert testimony lies within the trial court's discretion. <u>Gen. Elec. Co. v. Joiner</u>, 522 U.S. 136, 141-42 (1997); <u>United States v. Verduzco</u>, 373 F.3d 1022, 1032 n.6 (9th Cir. 2004) ("We . . . have stressed that the 'trial court has broad discretion to admit or exclude expert testimony'."). The Ninth Circuit has explained that "[a] trial court not only has broad latitude in determining whether an expert's testimony is reliable, but also in deciding how to determine the testimony's reliability." <u>Ellis v. Costco Wholesale Corp.</u>, 657 F.3d 970, 982 (9th Cir. 2011).

## II.    Analysis

### A.    Dr. Kenney's Reliance on the Uhlirz Deposition Transcript

Plaintiff argues that the Court should exclude Dr. Kenney's opinions to the extent they rely on Dr. Uhlirz's deposition transcript from his November 2016 deposition because the deposition transcript is not prior art. (Doc. No. 157 at 8-14.) Plaintiff requests, in light of this, that the Court exclude Dr. Kenney's opinions that rely on the Uhlirz reference in

their entirety. (Id. at 7, 14.) In response, Defendants concede that the Dr. Uhlirz's deposition testimony is not prior art. (Doc. No. 191 at 1.) Defendants argue, nevertheless, that Dr. Kenney's testimony should not be excluded because he does not directly rely on Dr. Uhlirz's deposition testimony in performing his invalidity analysis. (Id. at 1-2.) Defendants argue that Dr. Kenney simply cites to the testimony to corroborate his opinions that certain features would have been inherently present in the prior art reference, which is a permissible use of that testimony. (Id. at 3-4.)

In his invalidity expert report, Dr. Kenney relies on as part of his invalidity analysis the prior art reference "Concept of a GSM-based Communication System for High-Speed Trains," by Dr. Markus Uhlirz. (Doc. No. 157-5, Lindsey Decl. Ex. 4 ¶¶ 85-88, 92-96, 112-19). On November 29, 2016, the parties deposed Dr. Uhlirz. (Doc. No. 157-3, Lindsey Decl. Ex. 2.) Dr. Kenney's invalidity expert report contains citations to the transcript from Dr. Uhlirz's deposition. (Doc. No. 157-5, Lindsey Decl. Ex. 4 ¶¶ 112, 115, 118-19; Doc. No. 157-6, Lindsey Decl. Ex. 5.) In the invalidity expert report, Dr. Kenney explains: "While I have not directly relied on [Dr. Uhlirz's deposition] testimony, it confirms my understanding of the Uhlirz reference and confirms my opinions with respect to how one or ordinary skill in the art would understand this reference and understand how the disclosed system would have or could have been implemented." (Doc. No. 157-5, Lindsey Decl. Ex. 4 ¶ 95.)

After reviewing the parties' arguments and Dr. Kenney's invalidity expert report, the Court declines to exclude Dr. Kenney's analysis regarding the Uhlirz reference. Although his expert report cites to Dr. Uhlirz's deposition testimony, Dr. Kenney explicitly states that he has not directly relied on that testimony in performing his invalidity analysis and forming his opinions. (Doc. No. 157-5, Lindsey Decl. Ex. 4 ¶ 95.) Defendants explain that Dr. Kenney simply cites to Dr. Uhlirz's deposition testimony in his report to corroborate that certain features are inherent in the prior art reference. (Doc. No. 191 at 3-4.) This is a permissible use of Dr. Uhlirz's deposition testimony. See, e.g., Tyler Refrigeration v. Kysor Indus. Corp., 777 F.2d 687, 689 (Fed. Cir. 1985) (relying on

5

inventor testimony regarding inherency in affirming district court's finding of anticipation); see also Telemac Cellular Corp. v. Topp Telecom, Inc., 247 F.3d 1316, 1328 (Fed. Cir. 2001) ("[R]ecourse to extrinsic evidence is proper to determine whether a feature, while not explicitly discussed, is necessarily present in a reference."); Finnigan Corp. v. Int'l Trade Comm'n, 180 F.3d 1354, 1365 (Fed. Cir. 1999) ("'To serve as an anticipation when the reference is silent about the asserted inherent characteristic, such gap in the reference may be filled with recourse to extrinsic evidence.'").

Further, to the extent Plaintiff believes that, contrary to his assertions, Dr. Kenney will attempt to directly rely on Dr. Uhlirz's deposition testimony as prior art at trial, such concerns would more appropriately be addressed through a contemporaneous objection at trial rather than through preclusion of Dr. Kenney's testimony. Accordingly, the Court declines to exclude Dr. Kenney's expert opinions and testimony regarding the Uhlirz reference.

B.     Dr. Kenney's Opinions Related to the "Adapted to/Configured to" Claim Limitation

Plaintiff argues that portions of Dr. Kenney's non-infringement and invalidity opinions should be excluded because he impermissibly uses inconsistent interpretations of the Court's construction for the "adapted to/configured to" claim limitation. (Doc. No. 157 at 14-16.) Plaintiff argues that Dr. Kenney uses a broader meaning for the claim limitation "adapted to/configured to" in his invalidity opinions and a narrower meaning for that limitation in his non-infringement opinions. (Id. at 7, 15.) In response, Defendants argue that Dr. Kenney's analysis is proper. Defendants argue that Dr. Kenney can appropriately apply his own interpretation of the Court's claim construction when performing his infringement analysis, and then apply Carucel's interpretation, which Dr. Kenney disagrees with, when performing his invalidity analysis. (Doc. No. 191 at 11-12.)

"[T]he construction of a patent, including terms of art within its claim, is exclusively within the province of the court." Markman v. Westview Instruments, Inc., 517 U.S. 370, 372 (1996). "Once a district court has construed the relevant claim terms, and unless

altered by the district court, then that legal determination governs for purposes of trial." Exergen Corp. v. Wal-Mart Stores, Inc., 575 F.3d 1312, 1321 (Fed. Cir. 2009. "No party may contradict the court's construction to a jury." Id. Thus, "[a]ny expert testimony must adhere to the court's claim constructions and must not apply alternative claim constructions." Dynetix Design Sols., Inc. v. Synopsys, Inc., No. C 11-5973 PSG, 2013 WL 4537838, at *4 (N.D. Cal. Aug. 22, 2013).

Nevertheless, the Federal Circuit has explained that "nothing precludes [an accused infringer] from arguing for a narrower application of the limitation on the infringement context, while also arguing, in the alternative, that—if the district court were to disagree—the patent claim would be so broad as to be invalid." Stryker Corp. v. Zimmer, Inc., 782 F.3d 649, 658 n.4 (Fed. Cir. 2015), vacated in part on other grounds Halo Elecs., Inc. v. Pulse Elecs., Inc., 136 S. Ct. 1923 (2016); see also Int'l Seaway Trading Corp. v. Walgreens Corp., 589 F.3d 1233, 1239 (Fed. Cir. 2009) ("[I]t has been well established for over a century that the same test must be used for both infringement and anticipation."). This is precisely what Dr. Kenney has done in his expert report. (See, e.g., Doc. No. 157-5, Lindsey Decl. Ex. 4 ¶¶ 90-91 (explaining that although he disagrees with Carucel's interpretation of the Court's claim construction for the terms "adapted to/configured to," he has applied that purportedly broader reading of the claims to his invalidity analysis).) Accordingly, the Court declines to exclude Dr. Kenney's expert testimony on this basis. [3]

///

///

///

---

[3]      The Court does not find persuasive Plaintiff's reliance on Corelogic Info. Sols., Inc. v. Fiserv, Inc., No. 2:10-CV-132-RSP, 2012 WL 12899116, at *2 (E.D. Tex. Sept. 20, 2012). (Doc. No. 157 at 16; Doc. No. 206 at 7.) That district court decision was issued prior to the Federal Circuit's decision in Stryker.

16-cv-118-H-KSC

1

## **Conclusion**

2         For the reasons above, the Court denies Plaintiff's motion to exclude portions of the

3  expert report and testimony of Dr. Kenney without prejudice to a contemporaneous

4  objection at trial.

5         **IT IS SO ORDERED.**

6  DATED:  March 2, 2017

7                                                    _____

8                                                    MARILYN L. HUFF, District Judge
                                                     UNITED STATES DISTRICT COURT

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

16-cv-118-H-KSC

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CARUCEL INVESTMENTS, L.P., a Delaware limited partnership,<br><br>                          Plaintiff,<br><br>v.<br><br>NOVATEL WIRELESS, INC., a Delaware corporation; VERIZON COMMUNICATIONS, INC., a Delaware corporation; and CELLCO PARTNERSHIP d/b/a/VERIZON WIRELESS, a Delaware general partnership,<br><br>                        Defendants. | Case No.:  16-cv-118-H-KSC<br><br>**ORDER:**<br><br>**(1) GRANTING IN PART AND DENYING IN PART PLAINTIFF'S <u>DAUBERT</u> MOTIONS;**<br><br>**[Doc. Nos. 163, 210.]**<br><br>**(2) DENYING WITHOUT PREJUDICE DEFENDANTS' <u>DAUBERT</u> MOTIONS;**<br><br>**[Doc. Nos. 154, 207.]**<br><br>**(3) DENYING WITHOUT PREJUDICE PLAINTIFF'S MOTIONS IN LIMINE; AND**<br><br>**[Doc. Nos. 232, 233, 234, 235.]** |

1

**(4) GRANTING IN PART AND DENYING PART DEFENDANTS' MOTIONS IN LIMINE**

**[Doc. Nos. 238, 239, 240, 241, 242, 287.]**

On January 27 and February 24, 2017, the parties each filed <u>Daubert</u> motion to exclude portions of the testimony and opinions of the opposing party's damages expert. (Doc. Nos. 154, 163, 207, 210.)  On March 20, 2017, the parties filed their respective oppositions to the <u>Daubert</u> motions.  (Doc. Nos. 248, 249, 256, 257.)  On March 27, 2017, the parties filed their respective replies.  (Doc. Nos. 267, 274, 279, 280.)

On March 13, 2017, the parties each filed their respective motions in limine.  (Doc. Nos. 232, 233, 234, 235, 238, 239, 240, 241, 242.)  On March 20, 2017, the parties filed their respective oppositions to the motions in limine.  (Doc. Nos. 252, 253, 254, 255, 258, 259, 260, 261, 262.)  On March 27, 2017, the parties filed their respective replies.  (Doc. Nos. 268, 269, 270, 271, 272, 281, 282, 283, 284.)

The Court held a hearing on the matter on April 3, 2017.  Robert F. Ruyak, Robert M. Harkins, Jr., and Michael K. Lindsey appeared for Plaintiff.  Amardeep L. Thakur, David M. Grable, Joshua L. Sohn, and Viola Trebicka appeared for Defendants.  For the reasons below, the Court: (1) grants in part and denies in part without prejudice Plaintiff's <u>Daubert</u> motions; (2) denies without prejudice Defendants' <u>Daubert</u> motions; (3) denies without prejudice Plaintiff's motions in limine; and grants in part and denies in part without prejudice Defendants' motions in limine.

## <u>Background</u>

On May 27, 2015, Plaintiff Carucel Investments, L.P. filed a complaint for patent infringement in the United States District Court for the Southern District of Florida against Defendants Novatel Wireless, Inc., AT&T Mobility LLC, Verizon Communications, Inc.,

and TigerDirect, Inc., alleging infringement of U.S. Patent No. 7,221,904, U.S. Patent No. 7,848,701, U.S. Patent No. 7,979,023, U.S. Patent No. 8,463,177, U.S. Patent No. 8,718,543, and U.S. Patent No. 8,849,191.[1]  (Doc. No. 1, Compl.)  Specifically, Plaintiff alleges that Defendants' mobile broadband hotspot devices, their MiFi devices, infringe the patents-in-suit.  (Id. ¶¶ 28-29.)

On September 15, 2015, Carucel dismissed its claims against Defendant TigerDirect, Inc. with prejudice.  (Doc. No. 11.)  On December 16, 2015, Carucel filed a first amended complaint alleging infringement of the same six patents and adding as a new Defendant Cellco Partnership d/b/a Verizon Wireless.  (Doc. No. 58.)

On January 15, 2016, the action was transferred to the Southern District of California.  (Doc. Nos. 69-70.)  On September 19, 2016, the Court issued a claim construction order construing the disputed terms in the patents-in-suit.  (Doc. No. 131.)  On December 9, 2016, the Court dismissed Defendant AT&T with prejudice.  (Doc. No. 139.)  On March 2, 2017, the Court denied Defendants' motion for summary judgment.  (Doc. No. 226.)

The patents-in-suit are all entitled "Mobile Communication System with Moving Base Station" and share an essentially identical specification.  (See Doc. No. 1, Compl. Exs. A-C, E-F.)  The invention disclosed in the patents-in-suit "relates to cellular telephone systems in which a mobile unit communicates by wireless communication to a base station connection to the wire telephone network and more particularly to cellular telephone systems adapted for use with fast-moving mobile units."  '904 Patent at 1:16-19.  The specification details the problems that prior art telecommunications systems have with fast-moving mobile units, particularly the problem of dealing with transfers of fast-moving mobile units between stationary cell sites as the mobile units move through the cellular network.  See id. at 1:22-2:61.  The specification provides the following summary of the

---

[1]      The '177 and '191 patents are no longer asserted in this action.  (Doc. No. 198; Doc. No. 277 at 3, 5.)

16-cv-118-H-KSC

1    invention:

2         These and other problems of the prior art are overcome in accordance with
3         this invention by means of a moving base station which is interposed between
          a moving mobile telephone unit and a fixed base station.  In accordance with
4         this invention, a movable base station moves with the traffic at a rate of speed
5         which is comparable to the speed of the traffic and communicates with a
          moving mobile telephone unit via standard mobile radio transmission.  The
6         movable base station further communicates by radio signals with a plurality
7         of fixed antennas spaced along the path of travel of the mobile base station.
          The several fixed antennas are connected to a telephone wire line network via
8         a telephone gateway office in a standard fashion.  In accordance with this
9         invention, the fixed radio ports are synchronized and the interface between the
          moving base station and the fixed radio ports is a time division multiplexed
10        (TDM)-direct-sequence, spread-spectrum CDMA.

11   Id. at 3:18-34.  Figure 1 of the '904 patent displays an embodiment of the claimed system:

12

13   

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

4

As an example of the claimed invention, Claim 22 of the '904 Patent provides:

> An apparatus adapted to move in accordance with a movement of a mobile unit moving relative to a plurality of fixed radio ports, the apparatus comprising:
>
> a receiver adapted to receive a plurality of signals, each of the plurality of signals transmitted from each of the plurality of fixed radio ports within a frequency band having a lower limit greater than 300 megahertz;
>
> a transmitter adapted to transmit, within the frequency band, a resultant signal to the mobile unit in accordance with at least one of the plurality of signals; and
>
> a processor adapted to maximize an amount of transferred information to the mobile unit by evaluating a quality of each of the plurality of signals transmitted from the plurality of fixed radio ports.

Id. at 12:65-13:11.  Currently, Plaintiff asserts that Defendants' accused products (the MiFi 5510L, MiFi 6620, MiFi 4510L, MiFi 4620, and MiFi 2200) literally infringe claims 22 and 30 of the '904 patent; claims 10 and 15 of the '701 patent; claims 11 and 23 of the '023 patent; and claim 10 of the '543 patent.  (Doc. No. 198; Doc. No. 277 at 5-6.)  By the present motions, the parties move to exclude certain opinions, arguments, testimony and evidence from the trial.

## Discussion

### I.     **Daubert** Motions

#### A.     Legal Standards for Daubert Motions

A district court's decision to admit expert testimony under Daubert in a patent case is governed by the law of the regional circuit.  Summit 6, LLC v. Samsung Elecs. Co., 802 F.3d 1283, 1294 (Fed. Cir. 2015).  When considering expert testimony offered pursuant to Rule 702, the trial court acts as a "gatekeeper" by "making a preliminary determination of whether the expert's testimony is reliable."  Elsayed Mukhtar v. Cal. State Univ., Hayward, 299 F.3d 1053, 1063 (9th Cir. 2002); see Kumho Tire Co. v. Carmichael, 526 U.S. 137, 150 (1999); Daubert, 509 U.S. at 597.  Under Rule 702 of the Federal Rules of Evidence,

16-cv-118-H-KSC

a court may permit opinion testimony from an expert only if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case."

The test for reliability of expert testimony is flexible and depends on the particular circumstances of the case.  Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc., 738 F.3d 960, 969 (9th Cir. 2013).  "To aid courts in exercising [their] gatekeeping role, the Supreme Court has suggested a non-exclusive and flexible list of factors that a court may consider when determining the reliability of expert testimony, including: (1) whether a theory or technique can be tested; (2) whether it has been subjected to peer review and publication; (3) the known or potential error rate of the theory or technique; and (4) whether the theory or technique enjoys general acceptance within the relevant scientific community."  Messick v. Novartis Pharm. Corp., 747 F.3d 1193, 1197 (9th Cir. 2014); Estate of Barabin v. AstenJohnson, Inc., 740 F.3d 457, 463 (9th Cir. 2014) (en banc).  The Ninth Circuit has stressed that this list of factors is meant to be helpful, not definitive.  Alaska Rent-A-Car, 738 F.3d at 969.

"Under Daubert, the district judge is 'a gatekeeper, not a fact finder.'  When an expert meets the threshold established by Rule 702 as explained in Daubert, the expert may testify and the jury decides how much weight to give that testimony."  Primiano v. Cook, 598 F.3d 558, 564-65 (9th Cir. 2010).  "'[T]he test under Daubert is not the correctness of the expert's conclusions but the soundness of his methodology.'"  Primiano, 598 F.3d at 564.  "Shaky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion."  Id. (citing Daubert, 509 U.S. at 594, 596); accord Summit 6, 802 F.3d at 1296.  "Basically, the judge is supposed to screen the jury from unreliable nonsense opinions, but not exclude opinions merely because they are impeachable."  Alaska Rent-A-Car, 738 F.3d at 969.  Further, the Ninth Circuit has explained that "Rule 702 should be applied with a 'liberal thrust' favoring

admission." Messick, 747 F.3d at 1196.

Whether to admit or exclude expert testimony lies within the trial court's discretion. Gen. Elec. Co. v. Joiner, 522 U.S. 136, 141-42 (1997); United States v. Verduzco, 373 F.3d 1022, 1032 (9th Cir. 2004) ("We . . . have stressed that the 'trial court has broad discretion to admit or exclude expert testimony'."). The Ninth Circuit has explained that "[a] trial court not only has broad latitude in determining whether an expert's testimony is reliable, but also in deciding how to determine the testimony's reliability." Ellis v. Costco Wholesale Corp., 657 F.3d 970, 982 (9th Cir. 2011).

    B.    Plaintiff's Daubert Motions

In its two Daubert motions, Plaintiff moves to exclude certain opinions contained in Defendants' damages expert Dr. McDuff's rebuttal expert report and his supplemental rebuttal expert report for various reasons. (Doc. Nos. 167, 210-1.) The Court addresses each of these challenges in turn below.

        i.    Apportionment

In his expert report, Dr. McDuff applies a two-step apportionment to the relevant royalty base to determine the reasonable royalty in this case. (Doc. No. 168-1, McDuff Report at 43.) First, Dr. McDuff reduces the royalty base according to survey data regarding the use of the MiFi that occurs while the user and device are in transit – what Defendants refer to as a "relevant use apportionment." (Id. at 21, 43, 52-55.) Second, Dr. McDuff reduced the royalty base by comparing the price of later models of the accused products to the original MiFi 2200 in order to account for the value of non-infringing features – what Defendants refer to as a "price-based apportionment." (Id. at 43, 53.) Plaintiff argues that Dr. McDuff's apportionment opinions should be excluded. (Doc. No. 167 at 3-14.)

            a.    Double Apportionment

As an initial matter, Plaintiff argues that Dr. McDuff's analysis is inappropriate because he engages in a double apportionment. (Doc. No. 167 at 6.) In response, Defendants argue that Plaintiff's challenge to Dr. McDuff's two-step apportionment is not

7

supported by any authority and this his two-step apportionment was proper. (Doc. No. 268 at 10.)

The Court agrees with Defendants. Plaintiff has failed to provide the Court with any authority holding that it is improper for a damages expert to engage in a two-step apportionment. To the contrary, the Federal Circuit has sanctioned multi-step apportionments in appropriate circumstances. See, e.g., Summit 6, 802 F.3d at 1296-97 (approving the damages expert's multi-step apportionment). Accordingly, the Court declines to exclude Dr. McDuff's analysis on the basis that he utilizes a two-step apportionment.

### b.    Use Apportionment

Plaintiff argues that the Court should exclude Dr. McDuff's use apportionment because it is based on the incorrect assumption that the accused products have non-infringing uses. (Doc. No. 167 at 3-7.) Plaintiff explains that the claims at issue are apparatus claims, not method claims, and, under patent law, unlike with a method claim, a device that directly infringes an apparatus claim always infringes. (Id. at 5.) Plaintiff argues, therefore, that it was improper for Dr. McDuff to restrict the economic value of the patents-in-suit to the period in which the accused devices are used at high speeds. (Id.)

In response, Defendants argue that Dr. McDuff does not improperly assume that the accused products only infringe when used at high speeds. (Doc. No. 288 at 7-8.) Defendants argue that Dr. McDuff properly utilizes data showing how often MiFi users actually utilize the claimed inventions technology to determine the actual economic value of the patents-in-suit. (Id. at 3-4, 8-9.)

The Court recognizes that system and apparatus claims do not require the performance of any method steps and can be infringed by a device that is merely capable of operating in the relevant infringing mode even if it even though it may also be capable of noninfringing modes of operation. Finjan, Inc. v. Secure Computing Corp., 626 F.3d 1197, 1204 (Fed. Cir. 2010). Nevertheless, how often a user of an accused device actually uses the relevant infringing technology can be relevant to the reasonable royalty

determination. The Federal Circuit has "has sanctioned the use of the <u>Georgia–Pacific</u> factors to frame the reasonable royalty inquiry." <u>Uniloc USA, Inc. v. Microsoft Corp.</u>, 632 F.3d 1292, 1317 (Fed. Cir. 2011). <u>Georgia-Pacific</u> factor 10 considers "'the nature of the patented invention, its character in the commercial embodiment owned and produced by the licensor, and the benefits to those who used it.'" <u>AstraZeneca AB v. Apotex Corp.</u>, 782 F.3d 1324, 1338 (Fed. Cir. 2015). How often a user of an accused product actually utilizes the infringing technology is relevant to an analysis of how the claimed invention benefits the user, regardless of whether the claimed invention involves system/apparatus or method claims. <u>Cf.</u> <u>Lucent Techs., Inc. v. Gateway, Inc.</u>, 580 F.3d 1301, 1327 (Fed. Cir. 2009) ("the more frequently most inventions are used, the more valuable they generally are").[2]

The Court's role is not to make credibility decisions in deciding a <u>Daubert</u> issue. <u>See</u> <u>Primiano</u>, 598 F.3d at 564-65. The patent's benefit to the user is a recognized factor under <u>Georgia-Pacific</u>. As a result, the proper apportionment, if any, based on use goes to the weight of the damages expert's testimony, not its admissibility.[3] <u>See</u> <u>Finjan, Inc. v. Blue Coat Sys., Inc.</u>, No. 13-CV-03999-BLF, 2015 WL 4272870, at *6 (N.D. Cal. July 14, 2015). The Ninth Circuit has explained that "[s]haky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion." <u>Primiano</u>, 598 F.3d at 564; <u>accord</u> <u>Summit 6</u>, 802 F.3d at 1296. Accordingly, the Court declines to exclude Dr. McDuff's use apportionment at this time.

c.     Usage Data

Plaintiff also challenges the usage data relied on by Dr. McDuff to perform his use apportionment. (Doc. No. 167 at 7-12.) Plaintiff argues that Dr. McDuff cannot rely on

---

[2]     The Court recognizes that when the Federal Circuit stated this general economic principle in <u>Lucent</u>, it was dealing with method claims not apparatus claims. But Plaintiff has failed to provide the Court with any case law holding that this general principle is limited to cases involving method claims.

[3]     The Court reserves the right, upon further development of the record at trial, to exclude Dr. McDuff's use apportionment.

9

the Verizon "Use Survey" and the "American Time Use Survey" because the surveys are heavily flawed and contain incomplete and speculative data.  (Id.)

In response, Defendants argue that Dr. McDuff's reliance on these usage statistics is reasonable and reliable.  (Doc. No. 288 at 11-14.)  Defendants argue that any flaws contained in the surveys are matters for cross-examination, not exclusion.  (Id. at 12.)

In his expert report to perform his use apportionment, Dr. McDuff relies on data Verizon collected from users of the accused products during two 24-hour periods in two cities.  (Doc. No. 168-1, McDuff Report at 21-22, Attachment D-2.)  In addition, Dr. McDuff relies on an "American Time Use Survey," which is based on a Bureau of Labor Statistics 2015 survey of "American Time Use," and a Department of Transportation 2001 National Household Travel Study.  (Id. at 22-23, Attachment D-3.)

The Ninth Circuit has "long held that survey evidence should be admitted 'as long as [it is] conducted according to accepted principles and [is] relevant.'"  Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc., 618 F.3d 1025, 1036 (9th Cir. 2010). The Ninth Circuit has explained that:

> Treatment of surveys is a two-step process.  First, is the survey admissible? That is, is there a proper foundation for admissibility, and is it relevant and conducted according to accepted principles?  This threshold question may be determined by the judge.  Once the survey is admitted, however, follow-on issues of methodology, survey design, reliability, the experience and reputation of the expert, critique of conclusions, and the like go to the weight of the survey rather than its admissibility.  These are issues for a jury or, in a bench trial, the judge.

Clicks Billiards, Inc. v. Sixshooters, Inc., 251 F.3d 1252, 1263 (9th Cir. 2001); see also Wendt v. Host Int'l, Inc., 125 F.3d 806, 814 (9th Cir. 1997) ("Challenges to survey methodology go to the weight given the survey, not its admissibility.").

Here, the usage data relied on by Dr. McDuff is relevant to the reasonable royalty determination in this case, specifically, as explained above, it is relevant to an analysis of at least Georgia-Pacific factor 10.  See also Lucent, 580 F.3d at 1327 (explaining that usage data can, under appropriate circumstances, be relevant to the reasonable royalty

16-cv-118-H-KSC

determination, and that such data may come from surveys and other sources).  Plaintiff raises several challenges to the methodologies contained in the surveys and the conclusions Dr. McDuff draws from the surveys.  (Doc. No. 167 at 7-12.)  But those challenges go to the weight to be given the surveys, not their admissibility.  See Clicks Billiards, 251 F.3d at 1263; see also Wendt, 125 F.3d at 814.  Thus, the surveys are admissible, and Dr. McDuff may appropriately rely on the data contained in the surveys under Federal Rule of Evidence 703 to form his damages opinions.[4]  See i4i Ltd. P'ship v. Microsoft Corp., 598 F.3d 831, 856 (Fed. Cir. 2010) (holding that district court did not abuse its discretion in admitting usage survey into evidence and allowing damages expert to rely on the survey under Rule 703).  Accordingly, the Court declines to exclude Dr. McDuff's reliance on the usage statistics in his expert report.[5]

### d.    Price-Base Apportionment

Plaintiff argues that Dr. McDuff's price-based apportionment should be excluded because it violates the entire market value rule.  (Doc. No. 167 at 12-14.)  Specifically, Plaintiff argues that this apportionment runs afoul of the entire market value rule because Dr. McDuff fails to identify or analyze the components of the accused products to determine what components are infringing and non-infringing.  (Id. at 13.)

In response, Defendants argue that Dr. McDuff's analysis does not violate the entire market value because his reasonable royalty determination is not based on the entire market value of the accused products.  (Doc. No. 288 at 14.)  Defendants argue that contrary to Plaintiff's assertions, the entire market value rule does not mandate a single correct methodology for performing an apportionment.  (Id.)

The Court rejects Plaintiff's arguments.  The Court agrees with Defendants that Dr.

---

[4]    Because the data is admissible under Rule 703, the Court rejects Plaintiff's challenge to the Verizon data as not being admissible under Federal Rule of Evidence 1006.  (Doc. No. 279 at 3.)

[5]    In addition, the Court rejects Plaintiff's contention that Dr. McDuff is not qualified to render an opinion based on these statistics.  (Doc. No. 167 at 6-7.)

McDuff's analysis does not violate the entire market value rule because his reasonable royalty analysis is not based on the entire market value of the accused products. Under the entire market value rule, a party "can rely on the end product's entire market value as the royalty base" only if the party "can prove that the patented invention drives demand for the accused end product." Commonwealth Sci. & Indus. Research Organisation v. Cisco Sys., Inc., 809 F.3d 1295, 1302 (Fed. Cir. 2015). Here, Dr. McDuff does not attempt to rely on the end product's entire market value as the royalty base in his reasonable royalty determination. (See generally Doc. No. 168-1, McDuff Report.) Thus, his analysis does not run afoul of the entire market value rule.

Further, the Court rejects Plaintiff's assertion that Dr. McDuff was required to conduct a component analysis of the accused products in order to perform an apportionment. The Federal Circuit has recognizes that "under th[e] apportionment principle, 'there may be more than one reliable method for estimating a reasonable royalty.'" Commonwealth Sci., 809 F.3d at 1301. In his expert report, Dr. McDuff explains: "For non-infringing functionality, I apportion based on the ratio of the first accused MiFi device (MiFi2200) divided by the observed average sales price over time . . . . This allows for removal of non-infringing functionality that has been added to the products over time, which improve the products value but do not relate to the patents-in-suit." (Doc. No. 168-1, McDuff Report at 43.) Here, Dr. McDuff provides a reasonable explanation for his apportionment, and, to the extent Plaintiff disagrees with his apportionment, Plaintiff may address the issue through cross-examination. Accordingly, the Court declines to exclude Dr. McDuff's opinions regarding his price-based apportionment.

### ii. Licenses

Plaintiff challenges Dr. McDuff's use of comparable licenses in his reasonable royalty analysis. (Doc. No. 167 at 2, 14-18.) The Federal Circuit has "held many times, using sufficiently comparable licenses is a generally reliable method of estimating the value of a patent." Apple Inc. v. Motorola, Inc., 757 F.3d 1286, 1325 (Fed. Cir. 2014),

16-cv-118-H-KSC

overruled by on other grounds by Williamson v. Citrix Online, LLC, 792 F.3d 1339 (Fed. Cir. 2015) (en banc); see Prism Techs. LLC v. Sprint Spectrum L.P., 849 F.3d 1360, slip op. at 14 (Fed. Cir. 2017) (stating that it is a "long-accepted proposition that a 'party may use the royalty rate from sufficiently comparable licenses'"); see also LaserDynamics, Inc. v. Quanta Computer, Inc., 694 F.3d 51, 79 (Fed. Cir. 2012) ("Actual licenses to the patented technology are highly probative as to what constitutes a reasonable royalty for those patent rights because such actual licenses most clearly reflect the economic value of the patented technology in the marketplace."). The Federal Circuit "has long required district courts performing reasonable royalty calculations to exercise vigilance when considering past licenses to technologies other than the patent in suit." ResQNet.com, Inc. v. Lansa, Inc., 594 F.3d 860, 869 (Fed. Cir. 2010).

"[I]n attempting to establish a reasonable royalty, the 'licenses relied on by the patentee in proving damages [must be] sufficiently comparable to the hypothetical license at issue in suit.'" VirnetX, Inc. v. Cisco Sys., Inc., 767 F.3d 1308, 1330 (Fed. Cir. 2014). "Prior licenses, however, are almost never perfectly analogous to the infringement action." Ericsson, Inc. v. D-Link Sys., Inc., 773 F.3d 1201, 1227 (Fed. Cir. 2014); see also VirnetX, 767 F.3d at 1330 ("[W]e have never required identity of circumstances."). "Comparisons of past patent licenses to the infringement must account for 'the technological and economic differences' between them." Wordtech Sys., Inc v. Integrated Networks Sols., Inc., 609 F.3d 1308, 1320 (Fed. Cir. 2010). Further, alleging "a loose or vague comparability between different technologies or licenses" is insufficient. LaserDynamics, 694 F.3d at 79.

Damages expert testimony "relying on licenses must account for such distinguishing facts when invoking them to value the patented invention. Recognizing that constraint, however, the fact that a license is not perfectly analogous generally goes to the weight of the evidence, not its admissibility." Ericsson, 773 F.3d at 1227; see also ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc., 694 F.3d 1312, 1333 (Fed. Cir. 2012) ("The degree of comparability of the Gemstar and Grande license agreements as well as any

failure on the part of ActiveVideo's expert to control for certain variables are factual issues best addressed by cross examination and not by exclusion.").

### a.    The Gogo License

Plaintiff argues that Dr. McDuff's analysis of the Gogo license is flawed and should be excluded.  (Doc. No. 167 at 14.)  Specifically, Plaintiff criticizes Dr. McDuff for not performing the same apportionment in his analysis of the Gogo license that he applies to his analysis of the reasonable royalty for the accused products.  (Id. at 14-15; Doc. No. 279 at 4.)  Plaintiff further argues that Dr. McDuff's failure to apportion the Gogo license violates the entire market value rule.  (Doc. No. 167 at 14-15.)

In response, Defendants argue that Dr. McDuff's analysis of the Gogo license does not violate the entire market value rule.  (Doc. No. 288 at 15.)  Defendants argue that Plaintiff fails to cite to any authority excluding an expert from opining on a license due to a failure to apportion.  (Id. at 15-16.)  Defendants further argue that it was proper for Dr. McDuff to decline to apply a use apportionment to the Gogo license because Gogo's products, unlike the accused products, can only be used when moving at high speeds.  (Id. at 16.)

The Court agrees with Defendants.  Plaintiff has failed to provide any authority holding a damages expert's failure to apportion a license violates the entire market value rule.  The fact that a license is not perfectly analogous to the license at issue in the hypothetical negotiation "generally goes to the weight of the evidence, not its admissibility."  Ericsson, 773 F.3d at 1227; see ActiveVideo, 694 F.3d at 1333.  Further, Dr. McDuff provides a reasonable explanation for not applying a use apportionment to the Gogo license: that the Gogo products, unlike the accused products, are always used while traveling at high speeds.  (Doc. No. 168-1, McDuff Report ¶ 72.)  Plaintiff disagrees with Dr. McDuff's assertion that the Gogo products are only used at high speeds.  (Doc. No. 279 at 4.)  But the factual basis of an expert's opinion goes to its credibility, not admissibility.  Hose v. Chicago Nw. Transp. Co., 70 F.3d 968, 974 (8th Cir. 1995); see also Apple, 757 F.3d at 1314 (explaining that evaluating the credibility of "one expert over

1  another" is a task "solely reserved for the fact finder").  Accordingly, the Court declines to
2  exclude Dr. McDuff's opinions regarding the Gogo license.

3  <u>b.</u>    <u>Novatel Licenses</u>

4  Plaintiff also argues that the Court should exclude Dr. McDuff's opinions regarding
5  the Novatel licenses.  (Doc. No. 167 at 15-18.)  Plaintiff argues that Dr. McDuff's analysis
6  of the various Novatel licenses fails to properly analyze the economic comparability
7  between those licenses and the facts in this case.  (<u>Id.</u> at 15.)  Plaintiff further argues that
8  Dr. McDuff is not qualified to evaluate the technical comparability of the Novatel licenses
9  to the patents-in-suit.  (<u>Id.</u> at 16.)

10  In response, Defendants argue that Dr. McDuff took a standard economic approach
11  to the Novatel licenses.  (Doc. No. 288 at 16.)  Defendants assert that Dr. McDuff first
12  determined which agreements involved comparable technology relying on technical
13  considerations from Defendants' technical expert Dr. Kenney, and he then assessed the
14  economic comparability of the licenses to determine which ones were sufficiently
15  comparable.  (<u>Id.</u> at 16-17.)

16  A review of Dr. McDuff's expert report shows that he considered and accounted for
17  the technological and economic differences between the Novatel licenses and the
18  hypothetical license at issue here.  (Doc. No. 168-1, McDuff Report ¶¶ 55-56, 58-60, 75-
19  84.)  Plaintiff criticizes Dr. McDuff for failing to consider certain factors or for failing to
20  make certain adjustments in his analysis.  But these concerns go to the weight of Dr.
21  McDuff's testimony, not its admissibility, and should be addressed through cross-
22  examination rather than through exclusion.  <u>See</u> <u>ActiveVideo</u>, 694 F.3d at 1333.

23  Further, there is nothing improper about Dr. McDuff relying on discussions with
24  Defendants' technical expert Dr. Kenney in determining that the Novatel licenses involve
25  comparable technology.  (<u>See, e.g.</u>, Doc. No. 168-1, McDuff Report ¶ 56.)  Dr. McDuff's
26  reliance on Dr. Kenney's opinions to form his own damages opinions is permissible.  <u>See</u>
27  <u>Apple</u>, 757 F.3d at 1321 ("Consistent with Rule 703, patent damages experts often rely on
28  technical expertise outside of their field.").  Accordingly, the Court declines to exclude Dr.

15

McDuff's opinions and testimony regarding the Novatel licenses.

### c. Licenses in Supplemental Report

Plaintiff argues that the Court should strike the analysis of certain licenses contained in Dr. McDuff's supplemental expert report because those licenses were never produced by Defendants during discovery in this action. (Doc. No. 210-1 at 3-4.) In response, Defendants argue that a <u>Daubert</u> motion is not the proper vehicle to challenge the timeliness of Defendants' production. (Doc. No. 249 at 5.) Defendants further argue that the timing of its production was proper, and that Plaintiff has failed to articulate any prejudice that it has suffered. (<u>Id.</u>)

Defendants' production of those licenses concurrent with its service of Dr. McDuff's supplemental expert report was proper under the Court's January 26, 2017 scheduling order. (Doc. No. 152.) Further, the timing of the production was harmless. Accordingly, the Court declines to strike the analysis of licenses contained in Dr. McDuff's supplemental expert report.

### iii. The Hypothetical Negotiation Between Carucel and Verizon

Plaintiff argues that the Court should exclude Dr. McDuff's opinion that there would be no hypothetical negotiation between Carucel and Verizon because that opinion is improper as a matter of law. (Doc. No. 210-1 at 1.) Plaintiff argues that under Federal Circuit law, the hypothetical negotiation analysis must be made between the patentee and each infringer; whether the plaintiff and the defendant would have negotiated in actuality is legally irrelevant. (<u>Id.</u>)

In response, Defendants argue that Dr. McDuff was justified in asserting that there would be no hypothetical negotiation between Plaintiff and Verizon because the hypothetical negotiation between Plaintiff and Novatel would have covered Verizon's infringement. (Doc. No. 249 at 1.) Defendants argue that when a downstream reseller such as Verizon is sued for infringement, it is appropriate to consider whether the hypothetical royalty would have been paid by the upstream manufacturer. (<u>Id.</u> at 1-2.)

"Upon a showing of infringement, a patentee is entitled to 'damages adequate to

compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer.'" ResQNet, 594 F.3d at 868 (quoting 35 U.S.C. § 284). "A 'reasonable royalty' derives from a hypothetical negotiation between the patentee and the infringer when the infringement began." Id. "Critically, the hypothetical negotiation presumes that the patentee is a willing licensor and the alleged infringer is a willing licensee, with both parties assuming the patent was valid, enforceable, and infringed." IP Innovation L.L.C. v. Red Hat, Inc., 705 F. Supp. 2d 687, 689 (E.D. Tex. 2010) (Radar, C.J.); accord Aqua Shield v. Inter Pool Cover Team, 774 F.3d 766, 771 (Fed. Cir. 2014) (explaining that the hypothetical negotiation "assumes infringement and validity of the patents and willingness of the parties to negotiate an agreement"); see LaserDynamics, Inc. v. Quanta Computer, Inc., 694 F.3d 51, 75-76 (Fed. Cir. 2012) (describing the hypothetical negotiation as occurring between "a willing licensor and licensee").

In his expert report, Dr. McDuff opines that in this case, there would be no hypothetical negotiation between Plaintiff and Verizon. (Doc. No. 221, McDuff Supp. Report at 4, ¶ 10.) Dr. McDuff opines that the hypothetical negotiation "would be between Plaintiff and Novatel only." (Id. ("From an economic perspective, there would not be separate negotiations between Carucel and Novatel as a first negotiation, and then Carucel and Verizon as an additional negotiation . . . .").) The Court agrees with Plaintiff that this opinion is legally flawed.

In this case, Plaintiff accuses Verizon of infringing the patents-in-suit in addition to accusing Novatel of infringement. (Doc. No. 190 at 10-30.) The Federal Circuit has explained that a separate and distinct infringement "requires a separate evaluation of reasonable royalty damages." Applied Med. Res. Corp. v. U.S. Surgical Corp., 435 F.3d 1356, 1362 (Fed. Cir. 2006). Further, because the hypothetical negotiation presumes "a willing licensor and licensee," LaserDynamics, 694 F.3d at 75-76, Dr. McDuff cannot assert that Verizon would not have engaged in the hypothetical negotiation with Plaintiff. Whether Verizon would have actually negotiated with Plaintiff is irrelevant to the

16-cv-118-H-KSC

hypothetical negotiation.  See Oracle Corp. v. SAP AG, 765 F.3d 1081, 1088 (9th Cir. 2014); On Davis v. The Gap, Inc., 246 F.3d 152, 171 (2d Cir. 2001), as amended (May 15, 2001).

In addition, the primary cases relied on by Defendants in support of Dr. McDuff's position – Stickle v. Heublein, Inc., 716 F.2d 1550 (Fed. Cir. 1983) and Glenayre Elecs., Inc. v. Jackson, 443 F.3d 851, 857 (Fed. Cir. 2006) – are distinguishable from the present situation at this stage in the proceedings.  In Stickle, the Federal Circuit explained that when damages are based on a reasonable royalty, "a reasonable royalty is not to be separately calculated against each successive infringer.  Once full recovery is obtained from one infringer with respect to a particular infringing device, at most nominal additional damages may be awarded against another with respect to the same device."  716 F.2d at 1562; see also Glenayre Elecs., Inc. v. Jackson, 443 F.3d 851, 864 (Fed. Cir. 2006) ("[A] party is precluded from suing to collect damages for direct infringement by a buyer and user of a product when actual damages covering that very use have already been collected from the maker and seller of that product.").  Here, there has not yet been a full recovery from one infringer with respect to the accused products.  Thus, Stickle and Glenayre are inapplicable at this time.  See Cambrian Sci. Corp. v. Cox Comm'ns, Inc., No. SACV111011AGJPRX, 2012 WL 12894475, at *3 (C.D. Cal. Nov. 19, 2012) (finding Stickle distinguishable because at the stage of the litigation "full recovery has not been obtained from any of the alleged infringers").  Accordingly, the Court grants this aspect of Plaintiff's Daubert motions.  The Court excludes Dr. McDuff's opinion that there would have been no hypothetical negotiation between Carucel and Verizon.

///

///

///

18

16-cv-118-H-KSC

C.     Defendants' Daubert Motions

In their two <u>Daubert</u> motions, Defendants move to exclude certain opinions in Plaintiff's damages expert Dr. Kennedy's expert report and his supplemental expert report for various reasons.[6]  (Doc. Nos. 166, 220.)  The Court addresses each of these challenges in turn below.

i.     Licenses

Defendants move to exclude Dr. Kennedy's reliance on the SPH-Novatel license in his two expert reports.  (Doc. No. 166 at 3-14; Doc. No. 220 at 9-10.)  Defendants argue that Dr. Kennedy's reliance on the SPH-Novatel license is unreliable because it is a settlement agreement and because Dr. Kennedy failed to properly account for the circumstances surrounding the settlement agreement.  (<u>Id.</u> at 7-11.)  Defendants also argue that Dr. Kennedy's opinions regarding the agreement are unreliable because he failed to account for the covenant not to sue contained in the license.  (<u>Id.</u> at 11-12.)

In response, Plaintiff argues that Dr. Kennedy's reliance on the SPH-Novatel license was proper because he evaluated the technical and economic comparability of the SPH-Novatel license to the hypothetical license at issue here and took into account the differences between the licenses.  (Doc. No. 289 at 3.)  Plaintiff further argues that Defendants' challenges go to the weight of his opinions, not their admissibility.  (<u>Id.</u> at 3-10.)

The Court declines to exclude Dr. Kennedy's reliance on the SPH-Novatel license in his damages analysis.  The Federal Circuit has "held many times, using sufficiently comparable licenses is a generally reliable method of estimating the value of a patent." <u>Apple</u>, 757 F.3d at 1325; <u>see</u> <u>Prism Techs.</u>, 849 F.3d 1360, slip op. at 14.  Further, the

---

[6]     As an initial matter, the Court rejects Plaintiff's argument that Defendants' <u>Daubert</u> motion regarding Dr. Kennedy's supplemental expert report is an impermissible second bite at the apple because Defendants previous moved to strike Dr. Kennedy's supplemental expert.  (Doc. No. 289-3 at 1.)  A motion to strike portions of an expert report for not being in compliance with the Court's scheduling orders is not the same thing as a <u>Daubert</u> motion.  <u>See, e.g.</u>, <u>Suchanek v. Sturm Foods, Inc.</u>, 311 F.R.D. 239, 244 (S.D. Ill. 2015).

16-cv-118-H-KSC

Federal Circuit "has recognized that, depending on the circumstances, a license agreement entered into in settling an earlier patent suit sometimes is admissible in a later patent suit involving the value of the patented technology, and sometimes is not." Prism Techs., 849 F.3d 1360, slip op. at 11; see also In re MSTG, Inc., 675 F.3d 1337, 1348 (Fed. Cir. 2012) ("Our cases appropriately recognize that settlement agreements can be pertinent to the issue of reasonable royalties."); LaserDynamics, 694 F.3d at 79 ("Despite the longstanding disapproval of relying on settlement agreements to establish reasonable royalty damages, we recently permitted such reliance under certain limited circumstances."). Indeed, in certain circumstances, it may be "the most reliable license in th[e] record." ResQNet, 594 F.3d at 872. Indeed, Defendants themselves recognize that settlement agreements can be relevant to the reasonable royalty determination as their own damages expert, Dr. McDuff, relies on settlement agreements in performing his reasonable royalty analysis – for example the Gogo license and the EON-Novatel license. (Doc. No. 168-1, McDuff Report at 34, 36, 44-46, 59.)

A review of Dr. Kennedy's expert reports shows that he considered and accounted for the technological and economic comparability of the SPH-Novatel license to the hypothetical license at issue here. (Doc. No. 187-1, Kennedy Report at 24-28.) See Wordtech Sys., 609 F.3d at 1320 ("Comparisons of past patent licenses to the infringement must account for 'the technological and economic differences' between them."). Based on those consideration, Dr. Kennedy determined that the license was informative of the Carucel-Novatel reasonable royalty in this case. (Doc. No. 187-1, Kennedy Report at 28.) Thus, Dr. Kennedy can rely on SPH-Novatel license despite the fact that it is a litigation settlement agreement, just as Defendants' damages expert can rely on the Gogo license and the EON-Novatel license despite the fact that those are also litigation settlement agreements. To the extent Defendants disagree with Dr. Kennedy's considerations or contend that he failed to consider certain other factors or licenses in his analysis, (Doc. No. 166 at 8-11), these concerns go to the weight of Dr. Kennedy's testimony, not its admissibility. See Ericsson, 773 F.3d at 1227; ActiveVideo, 694 F.3d at 1333.

Further, the Court rejects Defendants' challenges to Dr. Kennedy's use of the face value of the royalties in the settlement agreement. (Doc. No. 166 at 11-12.) In his analysis, Dr. Kennedy relies on the royalty payments that are provided on the face of the agreement itself. (Doc. No. 187, Kennedy Report at 28.) To the extent Defendants contend that Dr. Kennedy also needed to account for the covenant not to sue, that is a matter for cross-examination, not exclusion.

Finally, the Court rejects Defendants' challenges to Dr. Kennedy's adjustments to the SPH-Novatel agreement's royalty. (Doc. No. 166 at 12-14.) Dr. Kennedy may rely on Dr. Kiasaleh's expert opinions along with his own opinions to determine that the diversity patents are roughly three times as valuable as the '904 patent. (Doc. No. 187-1, Kennedy Report at 53-54.) See Apple, 757 F.3d at 1321 ("Consistent with Rule 703, patent damages experts often rely on technical expertise outside of their field."). Accordingly, the Court declines to exclude Dr. Kennedy's opinions regarding the SPH-Novatel license.

## ii. Entire Market Value Rule

Defendants argue that Dr. Kennedy's incremental profit analysis should be excluded because it violates the entire market value rule. (Doc. No. 166 at 14-17.) In response, Plaintiff argues that Defendants' challenge to Dr. Kennedy's incremental profit analysis is based on the incorrect assumption that he used the antenna costs in that analysis as a royalty base in this case. (Doc. No. 289 at 11-12.) Plaintiff argues that because he did not do this, his analysis does not violate the entire market value rule. (Id.)

The Court agrees with Plaintiff and rejects Defendants' arguments. Dr. Kennedy's incremental profit analysis does not run afoul of the entire market value rule because, as Defendants' concede, Dr. Kennedy does not actually present a damages calculation based on this analysis. (Doc. No. 166 at 15.) (See Doc. No. 187-1, Kennedy Report at 29-31, Ex. D.7.) The entire market value rule is at issue when a damages expert uses the "end product's entire market value as the royalty base." Commonwealth Sci., 809 F.3d at 1302. Because in his incremental profits analysis Dr. Kennedy does not attempt to use the cost of the antenna components as the royalty base in this case, the entire market value rule is

16-cv-118-H-KSC

1  inapplicable.  Accordingly, the Court declines to exclude Dr. Kennedy's incremental
2  profits analysis.

3                    iii.    Separate Reasonable Royalty Analysis for Verizon

4          Defendants argue that the Court should exclude the reasonable royalty analysis
5  contained in Dr. Kennedy's supplemental expert report because it is predicated on a
6  hypothetical negotiation between Carucel and Verizon rather than a hypothetical
7  negotiation between Carucel and Novatel.  (Doc. No. 220 at 10-14.)  Defendants argue that
8  Verizon would not be a party to the hypothetical negotiation because Novatel is defending
9  and indemnifying Verizon in this case.  (Id. at 11.)  Defendants further argue that patent
10 law recognizes that the hypothetical negotiation should generally be conducted between
11 the patentee and the manufacturer of the accused product, not the patentee and a
12 downstream user or re-seller.  (Id. at 12.)

13         In response, Plaintiff argues that it was proper for Dr. Kennedy to perform a separate
14 hypothetical negotiation between Carucel and Verizon because different acts of
15 infringement necessitate different hypothetical negotiations.  (Doc. No. 289-3 at 2-3.)
16 Plaintiff argue that under the "full compensation rule" they are entitled to damages from
17 both Novatel and Verizon's acts of infringement.  (Id. at 3-4.)

18         In his expert report, Dr. Kennedy performs a reasonable royalty analysis that "is
19 based on a hypothetical negotiation between Carucel and Novatel."  (Doc. No. 187-1,
20 Kennedy Report at 19.)  At the conclusion of this analysis, Dr. Kennedy opines that the
21 amount Novatel would have paid to obtain a license to the patents-in-suit would be
22 $15,504,196 as a running royalty or $12,898,192 as a lump sum.  (Id. at 51-55.)  In his
23 supplemental expert report, Dr. Kennedy performs a reasonable royalty analysis as to
24 Verizon.  In the supplemental expert report, Dr. Kennedy explains that his "Verizon
25 analysis reflects a separate royalty negotiation between Carucel and Verizon."  (Doc. No.
26 187-1, Kennedy Supp. Report at 2.)  At the conclusion of this analysis, Dr. Kennedy opines
27 that the amount Verizon would have paid to obtain a license to the patents-in-suit through
28 this separate negotiation would be $32,866,614 as a running royalty or $29,762,601 as a

lump sum.  (Id. at 54-61.)

The Court declines to exclude Dr. Kennedy's separate reasonable royalty analysis for Verizon.  In this case, Plaintiff accuses Verizon of infringing the patents-in-suit in addition to accusing Novatel of infringement.  (Doc. No. 190 at 10-30.)  The Federal Circuit has explained that a separate and distinct infringement "requires a separate evaluation of reasonable royalty damages."  Applied Med. Res., 435 F.3d at 1362.  Thus, it was not improper for Dr. Kennedy to perform a separate reasonable royalty analysis based on a separate hypothetical negotiation as to Defendant Verizon.  Further, because a hypothetical negotiation assumes validity and infringement of the patents-in-suit and a willing licensor and licensee, Aqua Shield, 774 F.3d at 771; LaserDynamics, 694 F.3d at 75-76, Dr. Kennedy can perform this separate reasonable analysis despite the existence of an indemnity agreement between Novatel and Verizon.  Whether Verizon would have actually negotiated with Plaintiff is irrelevant to the hypothetical negotiation.  See Oracle, 765 F.3d at 1088; On Davis, 246 F.3d at 171.  Moreover, as explained with respect to Plaintiff's Daubert motions, the primary cases relied on by Defendants in support of their position that Dr. Kennedy cannot perform two separate reasonable royalty analyses are distinguishable from the present situation at this stage in the proceedings.  See Cambrian Sci., 2012 WL 12894475, at *3 (finding Stickle distinguishable because at the stage of the litigation "full recovery has not been obtained from any of the alleged infringers").  Accordingly, the Court declines to exclude Dr. Kennedy's separate reasonable royalty analysis as to Verizon contained in his supplemental expert report.[7]

Nevertheless, the Court expressly notes that although Plaintiff through Dr. Kennedy may present to the jury a reasonable royalty analysis as to Novatel and a separate

---

[7]    In their Daubert motion, Defendants state that if Dr. Kennedy's damages theory against Verizon is precluded, then they request that Verizon be severed and stayed from this case.  (Doc. No. 220 at 19-20.)  Because the Court has not precluded Dr. Kennedy's damages analysis against Verizon, Defendants' untimely request for severance is moot.

reasonable royalty analysis as to Verizon, Plaintiff may not recovery both reasonable royalties. In <u>Stickle</u>, the Federal Circuit explained that when damages are based on a reasonable royalty, "a reasonable royalty is not to be separately calculated against each successive infringer. Once full recovery is obtained from one infringer with respect to a particular infringing device, at most nominal additional damages may be awarded against another with respect to the same device." 716 F.2d at 1562; <u>see also</u> <u>Glenayre Elecs.</u>, 443 F.3d at 864 ("[A] party is precluded from suing to collect damages for direct infringement by a buyer and user of a product when actual damages covering that very use have already been collected from the maker and seller of that product."). Dr. Kennedy clearly states in his expert reports that he has performed two separate reasonable royalty analyses based on two separate hypothetical negotiations – one involving Carucel and Novatel and one involving Carucel and Verizon – to determine what Novatel would have paid for a license to the patents-in-suit and what Verizon separately would have paid for a license. (<u>See</u> Doc. No. 187-1, Kennedy Report at 19, 51-55; Doc. No. 187-1, Kennedy Supp. Report at 2, 54-61.) Because these reasonable royalty determinations are separate as to the two successive infringers, Plaintiff may not recover both royalties.[8] <u>See</u> <u>Stickle</u>, 716 F.2d at 1562;

_____

[8]     In this context, the Court rejects Plaintiff's reliance on <u>Applied Med. Res. Corp. v. U.S. Surgical Corp.</u> and <u>Matter of Mahurkar Double Lumen Hemodialysis Catheter Patent Litig.</u>, as those two cases are easily distinguishable from the present case. In <u>Applied Med. Res.</u>, the Federal Circuit explained that a separate and distinct infringement "requires a separate evaluation of reasonable royalty damages." 435 F.3d at 1362. But, here, the Federal Circuit is merely discussing how reasonable royalty damages are to be evaluated, not what is actually recoverable. More importantly, in that case, the two different infringements that the Federal Circuit was referencing involved two different products, not the same product being sold by two different defendants, an upstream manufacturer and a downstream reseller. In <u>Stickle</u>, the Federal Circuit expressly stated that its holding applies when the reasonable royalty is being awarded "with respect to the same device." 716 F.2d at 1562.

        In <u>Mahurkar</u>, the district explained that "[f]ull compensation is possible only if each infringer pays damages computed by multiplying the total lost profit by each infringer's share of the infringing sales." But in this passage, the district court is expressly talking about lost profit damages, not reasonable royalty damages. This distinction is important because in <u>Stickle</u>, the Federal Circuit explained that for lost profit damages, unlike reasonable royalty damages, "[i]n appropriate circumstances a patent owner may be able to recover the patent owner's lost profits attributable to each of a series of infringers." 716 F.2d at 1562. Further, the Court notes that Plaintiff has failed to cite to

24

Glenayre, 443 F.3d at 864; see also Donald S. Chisum, Chisum on Patents §
20.03[7][b][iii]2 (2017.) ("[R]ecovery of an appropriate royalty-based award against an
infringing manufacturer should preclude any further recovery against resellers or users of
the products in question.").

### iv.    The Broadcom-Verizon License

Defendants argue that even if the Court permits Dr. Kennedy to perform a separate
reasonable royalty analysis as to Verizon, the Court should exclude Dr. Kennedy's reliance
on the Broadcom-Verizon license because that license is not sufficiently comparable to the
hypothetical negotiation between Carucel and Verizon.  (Doc. No. 220 at 14-17.)   In
response, Plaintiff argues that Dr. Kennedy's use of the Broadcom-Verizon license is
permissible because he performed an extensive analysis of the technical and economic
comparability of the Broadcom-Verizon license and took into account differences between
the Broadcom-Verizon license and the hypothetical Carucel-Verizon license.  (Doc. No.
289-3 at 4-5.)  Plaintiff further argues that Defendants' criticism of Dr. Kennedy's analysis
of the license should be addressed through cross-examination, not exclusion.  (Id. at 6-7.)

A review of Dr. Kennedy's supplemental expert report shows that he considered and
accounted for the technological and economic comparability of the Broadcom-Verizon
license to the hypothetical license at issue here.  (Doc. No. 187-1, Kennedy Supp. Report
at 22-26, 42-45, 50, 52-53, 56-60.)  See Wordtech Sys., 609 F.3d at 1320 ("Comparisons
of past patent licenses to the infringement must account for 'the technological and
economic differences' between them.").   In their motion, Defendants identify several
differences between the Broadcom-Verizon license and the license at issue here and argue
that Dr. Kennedy has failed to properly account for those differences.  But these differences
go to the weight of Dr. Kennedy's testimony, not its admissibility.  See Ericsson, 773 F.3d
at 1227; ActiveVideo, 694 F.3d at 1333.  Defendants also criticize Dr. Kennedy for relying

one case where a patentee was permitted to recover a reasonable royalty against an upstream
manufacturer/seller and then also recover a separate reasonable royalty against a downstream
customer/reseller on the same product.

16-cv-118-H-KSC

on the $6 per-unit royalty rate in the license without also accounting for the license's $200 million royalty cap.  (Doc. No. 220 at 16-17.)  The Court agrees with Plaintiff that this issue would more appropriately be addressed through cross-examination rather than through exclusion.  Accordingly, the Court declines to exclude Dr. McDuff's opinions and testimony regarding the Broadcom-Verizon license.

v.    Verizon's Profits

Defendants argue that Dr. Kennedy's analysis of Verizon's profitability on the MiFi devices is unreliable.  (Doc. No. 220 at 17-19.)  Specifically, Defendants argue that it was improper for Dr. Kennedy to calculate Verizon's profitability as to the MiFi devices based on Verizon's no-contract sales prices for the devices when Verizon actually sells the vast majority of the devices below that no-contract price.  (Id. at 17.)

In response, Plaintiff argues that Defendants' contention should be rejected because Defendants' arguments are based on the fiction that Verizon does not profit from its sales of the MiFi devices.  (Doc. No. 289-3 at 7.)  Plaintiff explains that Verizon is able to sell the majority of the MiFi devices at a loss because it bundles its sales of those devices with sales of data plans.  (Id. at 7-9.)  Plaintiff argues, therefore, it was reasonable and proper for Dr. Kennedy to analyze Verizon's profitability based on the standalone price of the devices when they are purchased without a contract.  (Id. at 9.)

The Court agrees with Plaintiff.  It was entirely reasonable for Dr. Kennedy to evaluate Verizon's profitability as to the MiFi devices based on the standalone no-contract sales prices for the devices in light of the evidence in the record showing that Verizon subsidizes the price for its MiFi devices through data plan revenues.  (See Doc. No. 187-1, Kennedy Supp. Report at 10-18 ("The standalone no-contract price is an actual market price charged by Verizon and paid by consumers without additional obligations by Verizon related to the provision of wireless services.").)  To the extent Defendants assert that this was unreasonable, they can address that issue through cross-examination of Dr. Kennedy.

In addition, the Court agrees with Plaintiff that Defendants' arguments regarding convoyed sales are without merit.  The law regarding convoyed sales is inapplicable here

26

because Dr. Kennedy did not include the service plan revenues in his royalty base. Rather, Dr. Kennedy only included Verizon's revenue as measured by the stand-alone equipment price of the MiFi devices. (See Doc. No. 187-1, Kennedy Supp. Report at 19.) Accordingly, the Court declines to exclude Dr. Kennedy's analysis of Verizon's profitability on the MiFi devices.

## II.    Motions in Limine

### A.    Plaintiff's Motion in Limine No. 1

In its first motion in limine, Plaintiff moves to preclude Defendants from using derogatory or misleading characterizations of Plaintiff, including, for example, the terms "patent troll," "patent assertion entity," and "a company that just sues people for money." (Doc. No. 232 at 2.) Plaintiff argues that such terms or characterizations are irrelevant to the issues in this case and would be unduly prejudicial to Plaintiff due to the high risk of creating a negative impression of Plaintiff. (Id.)

In response, Defendants state that they agree not to use derogatory terms, such as "patent troll" and "a company that just sues people for money" at trial. (Doc. No. 252 at 1.) But Defendants argue that they should be able to describe Plaintiff's business in neutral and factual terms, such as by referring to Plaintiff as a "patent assertion entity." (Id.) Defendants assert that Plaintiff has no history of making or bringing a product to market, and, therefore, the term "patent assertion entity" is an accurate description of the Plaintiff's business. (Id. at 2.)

Because Defendants agree not to refer to Plaintiff as a "patent troll" or "a company that just sues people for money," that aspect of Plaintiff's motion in limine is denied as moot. As for the remainder of Plaintiff's motion in limine, the Court agrees with Defendants that it is permissible for Defendants to refer to Plaintiff in neutral, factual terms, such as "non-practicing entity" or "patent assertion entity."[9] See Digital Reg. of Texas,

---

[9]    At the hearing on the parties' motions in limine, Plaintiff stated that the term "patent assertion entity" is permissible.

16-cv-118-H-KSC

LLC v. Adobe Sys., Inc., No. C 12-1971 CW, 2014 WL 4090550, at *12 (N.D. Cal. Aug. 19, 2014) (explaining that the plaintiff's "status as a non-practicing entity is relevant to damages and the Georgia–Pacific factors"); see, e.g., Rembrandt Wireless Techs., LP v. Samsung Elecs. Co., No. 2:13-CV-213-JRG-RSP, 2015 WL 627430, at *1 (E.D. Tex. Jan. 31, 2015) (permitting the defendant to refer to the plaintiff as a "patent assertion entity"); HTC Corp. v. Tech. Properties Ltd., No. 5:08-CV-00882-PSG, 2013 WL 4782598, at *4 (N.D. Cal. Sept. 6, 2013) (permitting the defendant to refer to the plaintiff as a "non-practicing entity" or a "patent assertion entity"). Accordingly, the Court denies Plaintiff's first motion in limine without prejudice to a contemporaneous objection at trial.

### B.    Plaintiff's Motion in Limine No. 2

In its second motion in limine, Plaintiff moves to exclude certain licenses and other documents that were produced concurrently with Defendants' damages expert Dr. McDuff's supplemental damages expert report.[10]  (Doc. No. 233 at 2.)  Plaintiff argues that these documents should be excluded pursuant to Federal Rule of Civil Procedure 37(c)(1) because Defendants failed to produce these documents prior to the fact discovery deadline in this case.  (Id.)  Plaintiff argues that Defendants failed to produce these documents during fact discovery despite the fact that Plaintiff specifically sought these documents in its Requests for Production Nos. 26, 27, 32, 48, 49, and 51.  (Id. at 4.)  Plaintiff further argues that it was prejudiced by Defendants' untimely disclosure.  (Id. at 5.)

In response, Defendants argue that the documents should not be excluded because the production at issue was properly served in response to Plaintiff's supplemental damages expert report.  (Doc. No. 253 at 1-2.)  Defendants further argue that none of Plaintiff's RFPs reasonably required production of the documents at issue.  (Id. at 3-4.)  In addition, Defendants argue that the timing of the production was harmless.  (Id. at 4-5.)

The Court declines to exclude the documents at issue.  The documents were not

---

[10]     Some of the exhibits that Plaintiff moved to exclude in its motion in limine are publicly available documents.  (See Doc. No. 253 at 5-6.)  In its reply brief, Plaintiff clarifies that it is no longer seeking to exclude these publicly available exhibits.  (Doc. No. 282 at 1 n.1.)

untimely produced.  On January 26, 2017, the Court granted the parties' joint motion to modify the scheduling order to allow for supplemental damages expert reports.  (Doc. No. 152.)  These document were timely produced under that scheduling order in response to Plaintiff's supplemental damages expert report.  Further, the Court agrees with Defendants that none of the RFPs identified by Plaintiff in its motion in limine reasonably requested production of the documents at issue.  (See Doc. No. 253 at 3-4.)

Moreover, even assuming Defendants' production of these documents was untimely, the timing of the production was harmless.  Under the Court's January 26, 2017 Order, Plaintiff was permitted to depose Defendants' damages expert regarding his supplemental rebuttal expert report[11] and to file a <u>Daubert</u> motion as to the supplemental rebuttal expert report.  (Doc. No. 152.)  Plaintiff argues that it was prejudiced by the disclosure of these documents because its damages expert, Dr. Kennedy, was unable to consider these documents and include them in his expert report.  (Doc. No. 233 at 5.)  But this claim of prejudice is remedied by the fact that the Court will grant Plaintiff's request to allow Dr. Kennedy to address the licenses at issue at trial. Because the disclosure of these documents was harmless, the documents should not be excluded pursuant to Rule 37(c)(1).  <u>See</u> Fed. R. Civ. P. 37(c)(1); <u>Yeti by Molly, Ltd. v. Deckers Outdoor Corp.</u>, 259 F.3d 1101, 1106 (9th Cir. 2001) (explaining that "information may be introduced [despite a failure to comply with Rule 26(a) or (e)] if the parties' failure to disclose the required information is . . . harmless").  Accordingly, the Court denies Plaintiff's second motion in limine without prejudice to a contemporaneous objection at trial.

C.     Plaintiff's Motion in Limine No. 3

In its third motion in limine, Plaintiff moves to exclude Trial Exhibit FG (Verizon's "Use Survey").  (Doc. No. 234 at 2.)  Plaintiff argues that the exhibit should be excluded because Verizon failed to produce the document during discovery.  (Id. at 2-3.)  Plaintiff

---

[11]     Plaintiff declined to depose Dr. McDuff regarding his supplemental rebuttal expert report.  (Doc. No. 253 at 5.)

16-cv-118-H-KSC

further argues that the Use Survey is inadmissible hearsay and that it is not admissible under Federal Rule of Evidence 703.  (Id. at 3-7.)

In response, Defendants argue that they timely produced the Use Survey by attaching it to Dr. McDuff's expert report, which was served during the discovery period.  (Doc. No. 254 at 2-3.)  Defendants further argue that the survey may be properly admitted under Federal Rule of Evidence 703.  (Id. at 3-6.)

The Court declines to exclude the use survey.  Defendants' production of the Use Survey was timely.  Defendants attached the use survey and its underlying data to Dr. McDuff's expert report, which was served on December 23, 2016 within the Court's deadlines for fact and expert discovery.  Further, Plaintiff fails to explain how it was prejudiced by the timing of Defendants' disclosure of the Use Survey.

Further, even assuming the survey is hearsay, the Use Survey is admissible under Federal Rule of Evidence 703.[12]  See i4i, 598 F.3d at 856; see also Paddack v. Dave Christensen, Inc., 745 F.2d 1254, 1261–62 (9th Cir. 1984) ("Rule 703 . . . permits . . . hearsay, or other inadmissible evidence, upon which an expert properly relies, to be admitted to explain the basis of the expert's opinion).  Plaintiff argues that for the reasons given in its pending Daubert motion, the Use Survey is unreliable and prejudicial.  (Doc. No. 234 at 7.)  But the Court has denied this aspect of Plaintiff's Daubert motion and rejected Plaintiff's challenges to the Use Survey.  See supra.  Accordingly, the Court denies Plaintiff's third motion in limine without prejudice to a contemporaneous objection at trial.

### D.     Plaintiff's Motion in Limine No. 4

In its fourth motion in limine, Plaintiff moves for the Court to issue an order holding that the parties may not contradict the Court's claim construction order or the Court's order denying Defendants' motion for summary judgment, specifically as to the terms "adapted to/configured to" and "frequency band."  (Doc. No. 286 at 1.)  Plaintiff argues that such an

---

[12]     At the motion in limine hearing, Defendants clarified that they will not be moving to admit the Use Survey into evidence at trial.

order is necessary because it would be inappropriate, confusing, and unduly prejudicial for Defendant to present argument and testimony asserting constructions that the Court has already rejected as a matter of law. (Id.)

In response, Defendants argue that Plaintiff's motion is an untimely partial motion for summary judgment of infringement disguised as a motion in limine. (Doc. No. 255 at 1.) Defendants further assert that their non-infringement arguments do not contradict the Court's claim construction order, and that the Court has held that there is a genuine issue of fact as to whether the accused products satisfy the "adapted to/configured to" and "frequency band" claim limitations. (Id.)

"[T]he construction of a patent, including terms of art within its claim, is exclusively within the province of the court." Markman v. Westview Instruments, Inc., 517 U.S. 370, 372 (1996); accord Teva Pharm. USA, Inc. v. Sandoz, Inc., 135 S. Ct. 831, 835 (2015). A court's claim construction is "law of the case" for purposes of trial. Andersen Corp. v. Fiber Composites, LLC, 474 F.3d 1361, 1371 n.2 (Fed. Cir. 2007). "No party may contradict the court's construction to a jury." Exergen Corp. v. Wal-Mart Stores, Inc., 575 F.3d 1312, 1321 (Fed. Cir. 2009) ("Once a district court has construed the relevant claim terms, and unless altered by the district court, then that legal determination governs for purposes of trial."); see also Cordis Corp. v. Boston Sci. Corp., 561 F.3d 1319, 1337 (Fed. Cir. 2009) ("[I]t is improper to argue claim construction to the jury because the 'risk of confusing the jury is high when experts opine on claim construction.'"). Thus, "[a]ny expert testimony must adhere to the court's claim constructions and must not apply alternative claim constructions." Dynetix Design Sols., Inc. v. Synopsys, Inc., No. C 11-5973 PSG, 2013 WL 4537838, at *4 (N.D. Cal. Aug. 22, 2013); see, e.g., BMC Software, Inc. v. Servicenow, Inc., No. 2:14-CV-903-JRG, 2016 WL 367251, at *2 (E.D. Tex. Jan. 29, 2016). Nevertheless, "[a]t trial, parties may 'introduc[e] evidence as to the plain and ordinary meaning of terms not construed by the Court to one skilled in the art,' so long as the evidence does not amount to 'argu[ing] claim construction to the jury.'" Apple, Inc. v. Samsung Elecs. Co., No. 12-CV-00630-LHK, 2014 WL 660857, at *3 (N.D. Cal. Feb. 20,

2014) (citations omitted); accord Icon-IP Pty Ltd. v. Specialized Bicycle Components, Inc., 87 F. Supp. 3d 928, 945 (N.D. Cal. 2015).

The Court cautions the parties that the arguments and evidence they present at trial must adhere to the Court's claim construction order, and the parties may not argue claim construction to the jury. Nevertheless, the Court concludes that any concerns about a party presenting argument or testimony that is contrary to the Court's claim constructions at trial would more appropriately be addressed through a contemporaneous objection at trial rather than through preclusion of certain arguments or testimony. Accordingly, the Court denies Plaintiff's motion in limine without prejudice to a contemporaneous objection at trial.[13]

E.    Defendants' Motion in Limine No. 1

In their first motion in limine, Defendants move to preclude any evidence, testimony, opinion, or argument regarding the infringement theories presented in Plaintiff's technical expert Dr. Kamran Kiasaleh's February 2017 declaration that was attached to Plaintiff's opposition to Defendants' motion for summary judgment. (Doc. No. 238 at 1.) Defendants argue that the declaration included a new theory of infringement that Dr. Kiasaleh had failed to disclose in his original expert report and, therefore, the declaration should be excluded. (Id. at 2.)

In response, Plaintiff argues that the declaration should not be excluded because Dr. Kiasaleh did not present substantively new testimony, opinions, or theories on

_____

[13]    In its reply to its motion in limine, Plaintiff states that the parties dispute the meaning of the term "frequency band" and, therefore, Plaintiff requests that the Court resolve the parties' dispute prior to trial. (Doc. No. 284 at 2 n.1.) The Court rejects Plaintiff's request. It is entirely improper for Plaintiff to make this request in a footnote in a reply brief to a motion in limine that is filed one week prior to trial. See Novosteel SA v. U.S., Bethlehem Steel Corp., 284 F.3d 1261, 1274 (Fed. Cir. 2002) (explaining that "as a matter of litigation fairness and procedure" arguments and issues raised for the first time in a reply brief are waived). This request could have been raised at the summary judgment stage and Plaintiff provides no explanation for why it did not do so at that time or why it did not do so at least when it filed the present motion in limine rather than through a reply brief. Further, the Court has not received briefing from the parties as to the construction of the term "frequency band." See SIPCO, LLC V. Abb, Inc., No. 6:11-CV-0048 LED-JDL, 2012 WL 3112302, at *17 (E.D. Tex. July 30, 2012), adopted by 2012 WL 12842877 (E.D. Tex. Oct. 23, 2012) (declining to construe term where there was an absence of briefing and argument on the term).

1    infringement in his February 2017 declaration.  (Doc. No. 258 at 1.)  Plaintiff argues that

2    Dr. Kiasaleh has always opined that the accused devices were designed to work in traffic

3    and comply with LTE and CDMA standards.  (Id.)

4         Federal Rule of Civil Procedure 26(a)(2)(B)(i) provides that an expert report must

5    contain "a complete statement of all opinions the witness will express."  Thus, "[a]ll expert

6    witnesses at trial must tether their testimony to the contents of their respective reports, and

7    are precluded from exceeding the scope of their reports."  AngioScore, Inc. v. TriReme

8    Med., Inc., No. 12-CV-03393-YGR, 2015 WL 5258786, at *1 n.1 (N.D. Cal. Sept. 8,

9    2015); see, e.g., Cheese Sys., Inc. v. Tetra Pak Cheese & Powder Sys., Inc., 725 F.3d 1341,

10   1354 (Fed. Cir. 2013) (affirming district court's striking in part of an expert declaration

11   that included untimely disclosures); Honeywell Int'l Inc. v. Universal Avionics Sys. Corp.,

12   488 F.3d 982, 995 (Fed. Cir. 2007) (affirming district court's exclusion of expert testimony

13   that fell outside the expert's report).  Nevertheless, "[t]he purpose of [an expert] report[] is

14   not to replicate every word that the expert might say on the stand.  It is instead to convey

15   the substance of the expert's opinion (along with the other background information

16   required by Rule 26(a)(2)(B)) so that the opponent will be ready to rebut, to cross-examine,

17   and to offer a competing expert if necessary."  Walsh v. Chez, 583 F.3d 990, 994 (7th Cir.

18   2009); accord Ohio Six Ltd. v. Motel 6 Operating L.P., No. CV 11-08102 MMM (EX),

19   2013 WL 12125747, at *14 (C.D. Cal. Aug. 7, 2013).

20        The Court has reviewed the opinions set forth in the Dr. Kiasaleh's expert report and

21   in his declaration.  The Court disagrees with Defendants that the Kiasaleh declaration

22   includes a new theory of infringement that was not disclosed in his expert report.  Rather,

23   the declaration contains the same theory of infringement as his expert report, and it simply

24   provides more detail as to that theory of infringement – that the accused products satisfy

25   the "adapted to/configured to" limitation because they connect to the internet through

26   wireless technologies and are designed to be portable and to operate in a moving vehicle

27   in traffic.  (Compare Doc. No. 202-2, Kiasaleh Decl. ¶¶ 20-22 with Doc. No. 202-2,

28   Kiasaleh Decl. Ex. 3 at 55, 108, 159, 215.)  This is permissible under Rule 26(a)(2)(B).

16-cv-118-H-KSC

See Cheese Sys., 725 F.3d at 1354; Vaxiion Therapeutics, Inc. v. Foley & Lardner LLP, No. 07CV280-IEGRBB, 2008 WL 5147201, at *11 (S.D. Cal. Dec. 8, 2008). Accordingly, the Court denies Defendants' first motion in limine without prejudice to a contemporaneous objection at trial.

F.    Defendants' Motion in Limine No. 2

Charles D. Gavrilovich is the named inventor of the '904 patent. See '904 Patent. In their second motion in limine, Defendants move to exclude Plaintiff from discussing the technology or value of non-asserted patents that list Mr. Gavrilovich as the named inventor and that Plaintiff purports were valued at over $1 billion. (Doc. No. 239 at 2.) Defendants clarify that they do not necessarily object to Plaintiff making a general statement that Mr. Gavrilovich is the named inventor of roughly twenty other patents. (Id. at 3 n.1.) Rather, Defendants specifically object to any discussion of the technology or the purported value of the non-asserted patents because such argument or testimony is irrelevant and has a risk of causing jury confusion and wasting time by having a mini-trial as to the merits and actual value of these patents. (Id. at 2.)

In response, Plaintiff argues that it should be allowed to provide a brief background to the jury explaining who Mr. Gavrilovich was, what jobs he had, and what he did with his life. (Doc. No. 259 at 1.) Plaintiff argues that in this context, it is appropriate for it to mention that Mr. Gavrilovich was an inventor with many high-value patents. (Id.)

The Court recognizes that the parties in this case should able to present themselves to the jury and give a general background of themselves and their witnesses without causing any undue prejudice. Therefore, Plaintiff may provide a limited discussion of these non-asserted patents and their general subject matter at trial when discussing Mr. Gavrilovich's background. Nevertheless, the Court agrees with Defendants that a discussion of the value of these non-asserted patents would likely lead to unfair prejudice and jury confusion substantially outweighing the limited probative value of such evidence. See Fed. R. Evid. 403. Accordingly, the Court grants in part and denies in part Defendants' second motion in limine. Plaintiff is precluded from providing argument or testimony

16-cv-118-H-KSC

regarding the purported value of the non-asserted patents.[14]   The Court denies the remainder of Defendants' motion in limine without prejudice to a contemporaneous objection at trial.[15]

### G.     Defendants' Motion in Limine No. 3

In their third motion in limine, Defendants move to preclude Plaintiff from offering into evidence at trial Plaintiff's Exhibit TE125, a YouTube video entitled "Sprint MiFi Commercial." (Doc. No. 240 at 2.)  Defendants argue that the video should be precluded because Plaintiff has failed to lay a proper foundation for the video regarding authentication.  (Id.)  In addition, Defendants argue that the video is inadmissible hearsay.  (Id. at 3-4.)

In response, Plaintiff argues that it has made a sufficient showing for authentication because the video itself includes information showing Sprint as the source of the commercial, and Novatel's former CTO Dr. Souissi testified at his deposition about the existence of such a commercial.  (Doc. No. 260 at 1.)  In addition, Plaintiff argues that the video is not hearsay because Plaintiff will not be introducing the video at trial to prove the truth of the matters asserted in the commercial, but rather will introduce it to simply show what representations were made to the public.  (Id. at 2.)  Plaintiff further argues that statements offering a product for sale are "verbal acts," not hearsay.  (Id.)

"Authentication is a 'condition precedent to admissibility.'"  Orr v. Bank of Am., NT & SA, 285 F.3d 764, 773 (9th Cir. 2002).  Under Federal Rule of Evidence 901(a), to satisfy the requirement of authentication, "the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is."  Accord Orr, 285 F.3d

---

[14]     The Court cautions Defendants that although the Court at this time is precluding argument and testimony regarding the value of the non-asserted patents, the Court will reconsider this ruling if, at trial, Defendants open the door to such testimony.

[15]     At the pretrial conference, Defendants argued that Plaintiff should not be permitted to introduce these non-asserted patents into evidence.  But, at that same hearing, Plaintiff represented that it will not move to admit the non-asserted patents into evidence.

at 773. This rule requires the proponent of the evidence to make a prima facie showing of authenticity such that a reasonable juror could find in favor of authenticity. <u>United States v. Yin</u>, 935 F.2d 990, 996 (9th Cir. 1991).

Plaintiff has made a sufficient prima facie showing of authenticity as to the YouTube video. The information in the video combined with Dr. Souissi's testimony is sufficient for a reasonable jury to find in favor of authenticity.[16] In addition, Plaintiff has represented that it will not seek to introduce the video at trial to prove the truth of the matters asserted in the video, but will instead introduce it to show what representations were made in the video. <u>See</u> Fed. R. Evid. 801(c) (defining hearsay as a statement "a party offers in evidence to prove the truth of the matter asserted in the statement"); <u>see also</u> <u>Burtscher v. Moore</u>, No. CV1102309DMGJEMX, 2013 WL 12122230, at *10 n.5 (C.D. Cal. Feb. 7, 2013) (explaining that offering a product for sale is a "verbal act," which is not hearsay). Accordingly, the Court denies Defendants' third motion in limine without prejudice to a contemporaneous objection at trial.

### H.    Defendants' Motion in Limine No. 4

In their fourth motion in limine, Defendants move to preclude Plaintiff from referencing Verizon's revenue or profit on a total, per-customer, or per-unit basis. (Doc. No. 287 at 1.) Defendants argue that Verizon's revenue and profit numbers are irrelevant to the issues in this case because Plaintiff's damages expert does not rely on those numbers in performing his reasonable royalty analysis. (<u>Id.</u> at 2-3.) Defendants also argue that Verizon's revenue and profit should be excluded under the entire market value rule. (<u>Id.</u> at 3-4.)

In response, Plaintiff argues that Verizon's revenue numbers are relevant to Dr.

---

[16]    The Court notes that in his deposition, Dr. Souissi referred to a Sprint commercial on YouTube featuring a family rather than a group of co-workers as depicted in Plaintiff's Exhibit 125. (Doc. No. 289-5, Harkins Decl. Ex. 1 at 74.) But a reasonable juror could conclude that this difference is due to an honest mistake by Dr. Souissi and that he was indeed referring to the commercial depicted in Plaintiff's Exhibit 125 during his deposition.

Kennedy's damages analysis, in particular to aid him in determining the economic comparability of the Broadcom license that he relies on in performing his damages analysis. (Doc. No. 289-6 at 1-3.)  Plaintiff further argues that reference to Verizon's profit and revenue would not violate the entire market value rule.  (Id. at 3-8.)  In addition, Plaintiff argues that Verizon's revenue numbers are relevant to secondary considerations of nonobviousness.  (Id. at 9.)

The Court agrees with Defendants that the probative value, if any, of Verizon's overall revenue and overall profit is substantially outweighed by the risk of unfair prejudice and, therefore, should be excluded.  See Fed. R. Evid. 403; HTC Corp. v. Tech. Properties Ltd., No. 5:08-CV-00882-PSG, 2013 WL 4782598, at *6 (N.D. Cal. Sept. 6, 2013); see also Uniloc USA, Inc. v. Microsoft Corp., 632 F.3d 1292, 1320 (Fed. Cir. 2011) ("The disclosure that a company has made $19 billion dollars in revenue from an infringing product cannot help but skew the damages horizon for the jury, regardless of the contribution of the patented component to this revenue."); LaserDynamics, Inc. v. Quanta Computer, Inc., 694 F.3d 51, 68 (Fed. Cir. 2012) ("Admission of such overall revenues, which have no demonstrated correlation to the value of the patented feature alone, only serve to make a patentee's proffered damages amount appear modest by comparison, and to artificially inflate the jury's damages calculation beyond that which is 'adequate to compensate for the infringement.'").  Nevertheless, the Court agrees with Plaintiff that it should be permitted to present evidence and testimony disclosing Defendants' per-unit revenue or per-unit profit.  This information is relevant to the damages issues in this case, and the probative value of such evidence is not substantially outweighed by the risk of unfair prejudice.[17]

---

[17]    The Court rejects Defendants' citation to this Court's prior ruling in Multimedia Patent Trust v. Apple Inc., No. 10-CV-2618-H (KSC), 2012 WL 12868264, at *6 (S.D. Cal. Nov. 20, 2012). Defendants assert that in that order, the Court excluded any mention of the defendants' revenue or profit, on an overall, per-customer, or per-unit basis. (Doc. No. 287 at 5; Doc. No. 290 at 2.)  That is not correct.  The Court's prior order only excluded reference to the defendants' overall profits and revenues.

16-cv-118-H-KSC

In addition, the Court cannot conclude at this stage in the proceedings that Plaintiff's use of Verizon's per-unit revenue or per-unit profit would violate the entire market value rule.  The Federal Circuit has explained that a patentee may assess damages based on the entire market value of the accused product if the patentee establishes that the patented feature creates the basis for customer demand or substantially creates the value of the component parts.  <u>Virnetx</u>, 767 F.3d at 1326.  Here, Plaintiff asserts that it will be able to establish at trial that the patented aspects of the MiFi devices drive consumer demand.  (Doc. No. 289-6 at 4-5.)  Thus, it would improper at this time to exclude certain evidence based on the entire market value rule.  To the extent Defendants might contend that Plaintiff's evidence related to consumer demand is insufficient as a matter of law (Doc. No. 290 at 4-5), such arguments would have more appropriately been raised at summary judgment rather than through a motion in limine.

Accordingly, the Court grants in part and denies in part Defendants' fourth motion in limine.  The Court excludes any testimony or evidence disclosing Verizon's overall revenue or overall profit for the accused products.[18]  The Court denies the remainder of Defendants' motion in limine without prejudice to a contemporaneous objection at trial.

I.      Defendants' Motion in Limine No. 5

In their fifth motion in limine, Defendants move to exclude any evidence, argument, or testimony regarding the 2014 PWC Litigation Report referenced in the supplemental expert report of Plaintiff's damages expert, Dr. Kennedy.  (Doc. No. 242 at 1.)  Defendants argue that the litigation report is unreliable hearsay.  (<u>Id.</u> at 2.)  Defendants further argue that the report should be excluded under Rule 403 because presenting the jury with general litigation success rates has a high risk of causing unfair prejudice and of misleading or

---

<u>See</u> <u>Multimedia Patent Trust</u>, 2012 WL 12868264, at *6.  It made no mention of per-customer or per-unit revenue or profit.  <u>See</u> <u>id.</u>

[18]     If at trial Plaintiff contends that Defendants opened the door to such evidence allowing it to disclose these financial numbers, Plaintiff must make a further showing to the Court outside the presence of the jury prior to presenting any evidence or testimony disclosing such financial numbers.

16-cv-118-H-KSC

confusing the jury.  (Id. at 2-4.)

In response, Plaintiff argues that the PWC report is a standard publication that sets forth noncontroversial statistics regarding patent litigation.  (Doc. No. 262 at 1.)  Plaintiff argues that the report is relevant to the damages issues in this case and it is not hearsay.  (Id. at 1-3.)

"To properly carry [its] burden [of proving damages], the patentee must 'sufficiently [tie the expert testimony on damages] to the facts of the case.'"  Uniloc, 632 F.3d at 1315.  "If the patentee fails to tie the theory to the facts of the case, the testimony must be excluded."  Id.; see also id. at 1317 ("To be admissible, expert testimony opining on a reasonable royalty rate must 'carefully tie proof of damages to the claimed invention's footprint in the market place.'").  In light of these principles, the Federal Circuit has rejected damages expert testimony that is "insufficiently tied to the facts of the case."  Virnetx, 767 F.3d at 1334; see Uniloc, 632 F.3d at 1318 ("[I]t is clear that [the damages expert]'s testimony was based on the use of the 25% rule of thumb as an arbitrary, general rule, unrelated to the facts of this case.").

In his supplemental expert report, Plaintiff's damages expert relies on statistics from the PWC report showing that from 1995 to 2013 patent cases that proceeded to trial were decided in the plaintiff's favor approximately one-third of the time and that from 2007 to 2011 approximately 71% of the cases were appealed.  (Doc. No. 187-1, Zisser Decl. Ex. F at 29.)  Plaintiff's damages expert relies on these statistics in his reasonable royalty analysis to justify an upward adjustment of the royalty rate.  (Id.)

The Court agrees with Defendants that the litigation report should be excluded.  The PWC report provides general statistics that are untethered to the facts in this case and, therefore, should be excluded.  See Virnetx, 767 F.3d at 1334; Uniloc, 632 F.3d at 1315; see, e.g., Avocent Redmond Corp. v. Rose Elecs., No. C06-1711RSL, 2013 WL 8844098, at *5 (W.D. Wash. Mar. 11, 2013) (excluding damages expert testimony that attempted to rely on national litigation statistics because "[t]he fact that patent holders are successful in only 33% of cases nationwide tells us nothing about the actual or perceived strength of

[plaintiff]'s claims as it was negotiating the settlement with [defendant]").  Further, the Court agrees with Defendants that the limited probative value of the PWC report is substantially outweighed by the danger of undue prejudice and misleading the jury.  See Fed. R. Evid. 403.  Accordingly, the Court grants Defendants' fifth motions in limine.  The Court excludes any argument, testimony, or evidence regarding the PWC Report.[19]

**Conclusion**

For the reasons above, the Court:

1.     Grants in part and denies in part without prejudice Plaintiff's <u>Daubert</u> motions;

2.     Denies without prejudice Defendants' <u>Daubert</u> motions;

3.     Denies without prejudice Plaintiff's motions in limine;

4.     Grants in part and denies in part without prejudice Defendants' motions in limine.

**IT IS SO ORDERED.**

DATED:  April 3, 2017

MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT

---

[19]     At the hearing on the parties' motion in limine, Plaintiff stated that it would no longer be seeking to introduce the PWC Report at trial.

40

1

2

ORIGINAL



**FILED**

APR 1 0 2017

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY                          DEPUTY

3

4

5

6

7

8

**UNITED STATES DISTRICT COURT**

9

**SOUTHERN DISTRICT OF CALIFORNIA**

10

11

CARUCEL INVESTMENTS, L.P., a
Delaware limited partnership,

Case No. 16-cv-0118-H-KSC

12

13

Plaintiff,

14

v.

JURY INSTRUCTIONS

15

NOVATEL WIRELESS, INC., a
Delaware corporation, and VERIZON
COMMUNICATIONS, INC., a
Delaware corporation, et al,

16

17

18

Defendants.

19

20

21

22

23

24

25

26

27

28

COURT'S INSTRUCTION NO. 1

Members of the jury: Now that you have heard all the evidence and the arguments of the attorneys, it is my duty to instruct you as to the law of the case. A copy of these instructions will be sent with you to the jury room when you deliberate.

You must not infer from these instructions or from anything I may say or do as indicating that I have an opinion regarding the evidence or what your verdict should be.

It is your duty to find the facts from all the evidence in the case. To those facts you will apply the law as I give it to you. You must follow the law as I give it to you whether you agree with it or not. And you must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy. That means that you must decide the case solely on the evidence before you. You will recall that you took an oath to do so.

In following my instructions, you must follow all of them and not single out some and ignore others; they are all important.

COURT'S INSTRUCTION NO. 2

The evidence you are to consider in deciding what the facts are consists of:

1.   the sworn testimony of any witness;

2.   the exhibits which are received into evidence; and

3.   any facts to which the parties have agreed.

COURT'S INSTRUCTION NO. 3

The parties have agreed to certain facts. You should treat these facts as having been proved.

The parties have agreed:

1. Carucel Investments, L.P. is a Delaware limited partnership with its principal place of business at 3121 N.E. 51st Street, #401, Fort Lauderdale, Florida 33308. Charles Gavrilovich, the named inventor of the patents in this lawsuit, formed Carucel in 1999. He passed away in 2015. Today Carucel is owned and run by his children Charles Gavrilovich Jr. and Vera Gavrilovich.

2. Novatel is a Delaware corporation with its principal place of business at 9645 Scranton Rd., Suite 205, San Diego, California 92121.

3. Verizon is a Delaware corporation with its principal place of business at 1095 Avenue of the Americas, New York, NY 10016 and includes Verizon Communications, Cellco Partnership and Verizon Wireless

4. U.S. Patent No. 7,221,904 or "the '904 Patent" has a filing priority date of June 2, 1995, issued on May 22, 2007, and expired on June 2, 2015.

5. U.S. Patent No. 7,848,701 or "the '701 Patent" has a filing priority date of June 2, 1995, issued on December 7, 2010, and expired on June 2, 2015.

6. U.S. Patent No. 7,979,023 or "the '023 Patent" has a filing priority date of June 2, 1995, issued on July 12, 2011, and expired on June 2, 2015.

7. U.S. Patent No. 8,718,543 or "the '543 Patent" has a filing priority date of June 2, 1995, issued on May 6, 2014, and expired on June 2, 2015.

8. Carucel Investments, L.P. owns all rights, title and interest in the '904 Patent, the '701 Patent, the '023 Patent, and the '543 Patent.

9. The MiFi 2200 is a representative product for all the MiFi Devices including the MiFi 2200, 4510L, 4620, 5510L, and 6620 products, whereby there is no difference in design, form or function of later sold MiFi products with respect to

1    the accused functionality, and if the representative product infringes, then all the
2    accused MiFi products infringe.

3        10. Novatel Wireless, Inc., offered for sale, sold and used each of the MiFi
4    Devices in the United States before the expiration of the Asserted Patents.

5        11. Verizon offered for sale, sold, and used each of the MiFi Devices in the
6    United States before the expiration of the Asserted Patents.

7        12. The number of accused MiFi devices sold by Novatel in the United States
8    during the alleged damages period is 7,907,388.

9        13. Of the total number of accused MiFi devices sold by Novatel, the number
10   of accused MiFi devices that were re-sold by Verizon in the United States during
11   the damages period is 4,936,879.

12       For all Asserted Patents, a person of ordinary skill in the art would be
13   someone with: (1) a Bachelor's degree in Electrical Engineering, or Physics, at least
14   two years of experience with wireless communications, and a general familiarity
15   with cellular communications technology; or (2) a Master's degree in either of the
16   above-referenced fields with at least one year experience with wireless and cellular
17   communications.

18
19
20
21
22
23
24
25
26
27
28

COURT'S INSTRUCTION NO. 4

In reaching your verdict, you may consider only the testimony and exhibits received into evidence. Certain things are not evidence, and you may not consider them in deciding what the facts are. I will list them for you:

(1)     Arguments and statements by lawyers are not evidence. The lawyers are not witnesses. What they have said in their opening statements, closing arguments, and at other times is intended to help you interpret the evidence, but it is not evidence. If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

(2)     Questions and objections by lawyers are not evidence. Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence. You should not be influenced by the objection or by the court's ruling on it.

(3)     Testimony that has been excluded or stricken, or that you have been instructed to disregard, is not evidence and must not be considered. In addition sometimes testimony and exhibits are received only for a limited purpose; when I have given a limiting instruction, you must follow it.

(4)     Anything you may have seen or heard when the court was not in session is not evidence.

You are to decide the case solely on the evidence received at the trial.

1

COURT'S INSTRUCTION NO. 5

2

3     Evidence may be direct or circumstantial. Direct evidence is direct proof of a
4   fact, such as testimony by a witness about what that witness personally saw or
5   heard or did. Circumstantial evidence is proof of one or more facts from which you
6   could find another fact. You should consider both kinds of evidence. The law
7   makes no distinction between the weight to be given to either direct or
8   circumstantial evidence. It is for you to decide how much weight to give to any
9   evidence.

10     Here is an example of how circumstantial evidence might be distinguished
11   from direct evidence. If a witness testified that they were out in rain or saw rain
12   from a window while indoors, that testimony would be considered direct evidence
13   that it was raining. By comparison, if the witness testified that they observed that
14   the sidewalk was wet, you may consider that to be circumstantial evidence that it
15   had rained. However, other evidence, such as a turned-on garden hose, may
16   provide a different explanation for the presence of water on the sidewalk.
17   Therefore, before you decide that a fact has been proven by circumstantial
18   evidence, you must consider all the evidence in the light of reason, experience, and
19   common sense.

20

21

22

23

24

25

26

27

28

COURT'S INSTRUCTION NO. 6

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, or part of it, or none of it. Proof of a fact does not necessarily depend on the number of witnesses who testify about it.

In considering the testimony of any witness, you may take into account:

(1)     the opportunity and ability of the witness to see or hear or know the things testified to;

(2)     the witness's memory;

(3)     the witness's manner while testifying;

(4)     the witness's interest in the outcome of the case and any bias or prejudice;

(5)     whether other evidence contradicted the witness's testimony;

(6)     the reasonableness of the witness's testimony in light of all the evidence; and

(7)     any other factors that bear on believability.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify about it.

COURT'S INSTRUCTION NO. 7

As I did at the start of the case, I will first give you a summary of each side's contentions in this case. I will then provide you with detailed instructions on what each side must prove to win on each of its contentions.

As I previously told you, Carucel seeks money damages from Novatel and/or Verizon for allegedly infringing the Asserted Patents by making, using, selling, and offering for sale products that Carucel argues are covered by claims of the Asserted Patents. The specific patent claims asserted in this case are claims 22 and 30 of U.S. Patent No. 7,221,904 (called the '904 patent), claims 10 and 15 of U.S. Patent No. 7,848,701 (the '701 patent), claims 11 and 23 of U.S. Patent No. 7,989,023 (the '023 patent), and claim 10 of U.S. Patent No. 8,718,543 (the '543 patent). The products that are alleged to infringe are accused MiFi devices, which include the MiFi 2200, 4510L, 4620, 5510L, and 6620 models. For the purposes of this case, the parties have agreed that all of the Accused MiFi products work the same way, so if one of the products infringes, they all do.

Novatel and Verizon deny that their products infringed the asserted claims of the Asserted Patents, and they argued that the patents are invalid because the claims of the 904 patent, the '701 patent, the '023 patent, and the '543 patent (the "Asserted Patents") were already disclosed in the prior patents and publications or were legally obvious based on prior patents and publications.

Your job is to decide whether Carucel proves that it is more likely than not that Novatel and Verizon infringed the asserted claims of the Asserted Patents and whether Novatel and Verizon prove by clear and convincing evidence that the asserted claims of the Asserted Patents are invalid. If you decide that any claim of any Asserted Patent has been infringed and is valid, you will then need to decide any money damages to be awarded to Carucel to compensate it for the infringement.

COURT'S INSTRUCTION NO. 8

A deposition is the sworn testimony of a witness taken before trial. The witness is placed under oath to tell the truth and lawyers for each party may ask questions. The questions and answers are recorded. When a person is unavailable to testify at trial, the deposition of that person may, under certain circumstances, be used in lieu of live testimony.

During this trial, certain testimony was presented to you by the reading of a deposition transcript or the playing of videotaped excerpts from a deposition. You should consider deposition testimony, presented to you in court in lieu of live testimony, insofar as possible, in the same way as if the witness had been present to testify.

1  COURT'S INSTRUCTION NO. 9

2

3      You have heard testimony from certain witnesses identified as "Rule

4  30(b)(6)" witnesses for the parties.  A Rule 30(b)(6) witness is a person that a party

5  has chosen to designate to speak on its behalf on designated topics.  The persons

6  designated by the party must testify about information known or reasonably

7  available to the organization.  For answers within the designated topics, the party is

8  bound by the answers of its Rule 30(b)(6) deponents.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

COURT'S INSTRUCTION NO. $\underline{10}$

2

3      You have heard testimony from persons who, because of their education or
4  experience, are permitted to state opinions and the reasons for those opinions.
5  These include technical experts and damages experts.  You, not the experts, must
6  decide the facts in this case.  Just because testimony comes from an expert witness
7  does not mean that you must or should accept it.  Opinion testimony should be
8  judged just like any other testimony.  You may accept it or reject it, and give it as
9  much weight as you think it deserves, considering the witness' education and
10 experience, the reasons given for the opinion, and all the other evidence in the case.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## COURT'S INSTRUCTION NO. 11

2

3      Certain charts and summaries not received in evidence have been shown to

4  you in order to help explain the contents of books, records, documents, or other

5  evidence in the case. They are not themselves evidence or proof of any facts. If

6  they do not correctly reflect the facts or figures shown by the evidence in the case,

7  you should disregard these charts and summaries and determine the facts from the

8  underlying evidence.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COURT'S INSTRUCTION NO. 12

Certain charts and summaries have been received into evidence to illustrate information brought out in the trial. Charts and summaries are only as good as the underlying evidence that supports them. You should, therefore, give them only such weight as you think the underlying evidence deserves.

COURT'S INSTRUCTION NO. 13

When a party has the burden of proving any claim by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim or defense is more probably true than not true.

You should base your decision on all of the evidence, regardless of which party presented it.

COURT'S INSTRUCTION NO. 14

When a party has the burden of proving any defense by clear and convincing evidence, it means that the party must present evidence that leaves you with a firm belief or conviction that it is highly probable that the factual contentions of the claim or defense are true. This is a higher standard of proof than proof by a preponderance of the evidence. You should base your decision on all of the evidence, regardless of which party presented it.

COURT'S INSTRUCTION NO. 15

In this action, Carucel seeks to recover money damages from Novatel and Verizon (collectively "Defendants") based on its allegations that:

1. Novatel, through its sale, offer for sale, and/or manufacture of the MiFi devices, infringed claims 22 and 30 of the '904 Patent, claims 10 and 15 of the '701 Patent, claims 11 and 23 of the '023 Patent, and claim 10 of the '543 Patent.

2. Verizon, through its sale and/or offer for sale of the MiFi devices, infringed claims 22 and 30 of the '904 Patent, claims 10 and 15 of the '701 Patent, claims 11 and 23 of the '023 Patent, and claim 10 of the '543 Patent.

Defendants deny these allegations. In these instructions, I will give you the law to apply to determine whether Carucel should prevail on any or all of its claims.

COURT'S INSTRUCTION NO. 16

Before you can decide many of the issues in this case, you will need to understand the role of patent "claims."

The patent claims are the numbered sentences at the end of each patent. The claims are important because it is the words of the claims that define what a patent covers. The coverage of a patent is assessed claim-by-claim. A claim sets forth, in words, a set of requirements. Each claim may be narrower or broader than another claim by setting forth more or fewer requirements. In patent law, the requirements of a claim are often referred to as "claim elements" or "claim limitations." When a thing (such as a product) meets all of the requirements of a claim, the claim is said to "cover" that thing. In other words, a claim covers a product where each of the claim elements or limitations is present in that product.

You will first need to understand what each claim covers in order to decide whether or not there is infringement of the claim. The law says that it is my role to define the terms of the claims and it is your role to apply my definitions to the issues that you are asked to decide in this case. Therefore, I have determined the meaning of the claims and I will provide to you my definitions of certain claim terms. You must accept my definitions of these words in the claims as being correct. It is your job to take these definitions and apply them to the issues that you are deciding, including the issues of infringement and invalidity.

COURT'S INSTRUCTION NO. 17

I am providing you with a claim construction chart. You will note that each claim construction chart lists in the left of two columns the verbatim language of the claims at issue in this case. In the right column, I have provided definitions of some of the terms and phrases used in the claims. As I have previously instructed you, you must accept my definition of these words, as well as the parties' agreed upon constructions as correct in these claims. For any words in the claim for which I have not provided you with a definition, you should apply their plain and ordinary meaning.

**Court's Claim Constructions**

| Term | Court's Construction |
|---|---|
| "fixed radio ports" | "stationary devices that each transmit and receive radio frequency signals to provide access to a communication network" |
| "fixed port" | "a stationary device at which signals can enter or exit a communication network" |
| "base station" | "a fixed device a mobile radio transceiver (transmitter/receiver) talks to, to talk to a person or to get to the landline phone network, public or private" |
| "base station interface circuits" | "circuits in a base station that can transmit and receive cellular signals." |
| "adapted to" and "configured to" (with respect to movement) | "constructed to move with the traffic at a rate of speed which is comparable to the speed of the traffic." |
| "transmit radio frequency signals to a mobile device corresponding to the received fixed port signals" | "transmit radio frequency signals to a mobile device, where the radio frequency signals correspond to the received fixed port signals." |

1

COURT'S INSTRUCTION NO. 18

2

3      The words "a" or "an" in a claim mean "one or more." Thus, for example, if

4 a claim recites "a widget," that claim limitation can be satisfied by one or more

5 widgets.

COURT'S INSTRUCTION NO. 19

This case involves two types of patent claims: independent claims and dependent claims.

An independent claim sets forth all of the requirements that must be met in order to be covered by that claim. Thus, it is not necessary to look at any other claim to determine what an independent claim covers.

The following claims of the patents asserted by Carucel against Defendants are each independent claims:

- The '904 Patent: Claim 22.
- The '701 Patent: Claim 10.
- The '023 Patent: Claim 11.
- The '543 Patent: Claim 10.

The remainder of the claims at issue in the asserted patents are dependent claims:

- The '904 Patent: Claim 30.
- The '701 Patent: Claim 15.
- The '023 Patent: Claim 23.

A dependent claim does not itself recite all of the requirements of the claim, but refers to another claim for some of its requirements. In this way, the claim "depends" on another claim. A dependent claim incorporates all of the requirements of the claim(s) to which it refers. The dependent claim then adds its own additional requirements. To determine what a dependent claim covers, it is necessary to look at both the dependent claim and any other claim(s) to which it refers. A product that meets all of the requirements of both the dependent claim and the claim(s) to which it refers is covered by the dependent claim.

COURT'S INSTRUCTION NO. 20

The independent claims at issue in this case use the word "comprising" before reciting some of the elements of the claims. "Comprising" means "including but not limited to." A claim that uses the word "comprising" is not limited to the products having only the elements or steps that are recited in the claim, but also covers products that add additional elements.

COURT'S INSTRUCTION NO. 21

The '904, '701, '023, and '543 Patents at issue in this case are all continuation patents, meaning that they resulted from continuation patent applications. After an inventor files an initial patent application, he or she may then file a continuation application, which is a second application with a different sent of claims for the same invention claimed in an earlier application.

Because these Asserted Patents in this case are all continuations of a common parent application, they all expired on the same date – June 2, 2015.

COURT'S INSTRUCTION NO. 22

I will now explain the elements of infringement.

A party is liable for infringing a patent if the patent holder has proven by a preponderance of the evidence that the accused infringer made, used, offered to sell, or sold the invention defined in at least one claim of the patent.

To decide whether an accused product infringes a claim, you must compare the product to the claim and determine whether every element of the claim is in that product. If it does, the product infringes. If, however, the accused product does not have every requirement of the patent claim, the accused product does not infringe. You must decide infringement for each asserted claim separately.

COURT'S INSTRUCTION NO. 23

Patent law gives the owner of a valid patent the right to exclude others from importing, making, using, offering to sell, or selling a patented invention within the United States during the term of the patent. Any person or business entity that has engaged in any of those acts without the patent owner's permission infringes the patent.

COURT'S INSTRUCTION NO. 24

A patent is granted in exchange for a patentee's disclosure of an invention, not for the patentee's use of the invention. There is no requirement in this country that a patentee make, use, or sell its patented invention.

1

2

# COURT'S INSTRUCTION NO. 25

3

    In this case, plaintiff Carucel asserts that defendants Novatel and Verizon

4  have directly infringed the asserted patents. If you find that plaintiff Carucel has

5  proven that it is more likely that not that defendants Novatel and Verizon made,

6  used, imported, offered to sell, or sold the invention defined in at least one claim of

7  plaintiff Carucel's asserted valid patents, defendants Novatel and Verizon are liable

8  for directly infringing one or more of plaintiff Carucel's patents.

9     Someone can directly infringe a patent without knowing of the patent or

10  without knowing that what they are doing is an infringement of the patent.  They

11  also may directly infringe a patent even though they believe in good faith that what

12  they are doing does not infringe a patent or if they believe in good faith that the

13  patent is invalid.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COURT'S INSTRUCTION NO. 26

A party is liable for directly infringing a patent if the patent holder has proven by a preponderance of the evidence that the accused infringer made, used, imported, offered to sell, or sold the invention defined in at least one claim of the patent.

Someone can directly infringe a patent without knowing of the patent, without knowing that what they are doing is an infringement of the patent or even though they believe in good faith that what they are doing is not an infringement of any patent.

Whether or not someone copied an invention is not relevant to the question of whether a patent is infringed; even someone that developed a product independently can be liable for infringing a patent.

To find that the product infringes, it must include all the parts of the patent claim. If it has all the claim requirements, the product infringes, but if it is missing some requirement of a claim, it does not infringe. You must decide infringement for each patent claim separately.

Some of the patent claims in this case are independent claims and some are dependent claims. Independent claims stand alone, whereas dependent claims refer back to other claims. An independent claim sets forth all of the requirements that must be met in order to be covered by that claim. Thus, it is not necessary to look at any other claim to determine what an independent claim covers.

The following claims of the Asserted Patents are independent claims:

- Claim 22 of '904 patent
- Claim 10 of '701 patent
- Claim 11 of '023 patent
- Claim 10 of '053 patent

If you find that a dependent claim is infringed, you must find that all the

elements of any claims from which it depends are found in the Accused Product and that separately the Accused Product meets the additional requirements of the asserted dependent claims. In other words, a dependent claim includes all the requirements of any of the claims to which it refers plus additional requirements of its own.

The following claims of the Asserted Patents are dependent claims:

- Claim 30 of '904 patent is a dependent claim that refers to Claims 22, 28, and 29 and requires each of the elements of Claims 22, 28 and 29 as well as the additional elements recited in Claim 30 itself.

- Claim 15 of '701 patent is a dependent claim that refers to Claim 10 and requires each of the elements of Claim 10 as well as the additional elements recited in Claim 15 itself.

- Claim 23 of '023 patent is a dependent claim that refers to Claims 11, 21, and 22 and requires each of the elements of Claims 11, 21, and 22 as well as the additional elements recited in Claim 23 itself.

# COURT'S INSTRUCTION NO. 27

I will now instruct you on the rules you must follow in deciding whether or not Novatel and Verizon have proved that the claims of the Asserted Patents are invalid.

The patent in this case is presumed to be valid because the United States Patent and Trademark Office has determined that the inventors have satisfied the legal requirements for obtaining a patent.

In order to overcome this presumption of validity, Novatel and Verizon must prove facts supporting their claims of invalidity by clear and convincing evidence.

Clear and convincing evidence is a standard of proof which is higher than a preponderance of the evidence and lower than beyond a reasonable doubt.

Clear and convincing evidence is evidence that leaves you with a firm belief or conviction that it is highly probable that the factual contentions of Novatel and Verizon's claims of invalidity are true.

1  COURT'S INSTRUCTION NO. 28

2

3  You must apply the claim language the same way for purposes of invalidity

4  as you do for purposes of infringement.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

COURT'S INSTRUCTION NO. 29

3          Under the patent laws, a person is entitled to a patent only if the invention

4    claimed in the patent is new, not anticipated and non-obvious in light of what came

5    before it.  That which came before is referred to as the "prior art."  In this case,

6    Novatel and Verizon argue that Carucel's patents are invalid by anticipation and

7    obviousness based on the prior art.

8    Prior art includes any of the following items received into evidence during trial:

9          1. Patents that issued more than one year before the effective filing date of

10   the patents or before the inventions were made by named inventors;

11         2. Printed publications that were publicly accessible to interested persons

12   more than one year before the effective filing date of the patents or before the

13   inventions were made;

14         3. Any United States patent that was granted on an application filed in the

15   United States prior to the date the inventions were made.

16

17

18

19

20

21

22

23

24

25

26

27

28

COURT'S INSTRUCTION NO. _30_

In this case Novatel and Verizon argue that the patent claims are invalid based on "anticipation."

An invention is not new or novel if it is "anticipated by the prior art." Under the U.S. patent laws, an invention that is "anticipated" is not entitled to patent protection. Anticipation must be determined on a claim-by-claim basis. To anticipate a claim, each and every element in the claim must be present in a single item of prior art. Prior art is something that came before the priority date of the asserted patent, such as a single earlier patent or a single earlier publication. For a publication to be prior art it had to be published before the invention date of the asserted patents, here June 2, 1995 or published more than a year before the filing of the first patent application, here a year before June 2, 1995. For a patent to be prior art it had to be filed before June 2, 1995.

Prior art can anticipate a claim even if it includes elements in addition to those stated in the claim. You may not combine two or more items of prior art to prove anticipation.

An accused infringer that contends that claims of the patent are invalid because the claimed inventions are anticipated must convince you of this by clear and convincing evidence.

COURT'S INSTRUCTION NO. 31

Here is a list of ways that the alleged infringer can show anticipation – i.e., that a patent claim was not new or that the patentee lost the right to patent the claim(s):

1. An invention is not new if it was known to or used by others in the United States before the date of invention. An invention is known when the information about it was reasonably accessible to the public on that date. Private or secret knowledge does not invalidate a patent claim. Similarly, if something is only publicly known outside of the United States, this is not invalidating public knowledge.

2. An invention is not new if it was already patented or described in a printed publication anywhere in the world before the date of the invention. A description is a "printed publication" only if it was publicly accessible before the date of the invention. I will explain later what it means for a publication to be publicly accessible.

3. The patent holder has lost its rights if the claimed invention was already patented or described in a printed publication, anywhere in the world by the patent holder or anyone else, more than a year before the effective filing date of the application for the patent. An invention was patented by another if the other patent describes the same invention claimed by patent holder to a person having ordinary skill in the technology.

4. The patent holder has lost her or his rights if the claimed invention was publicly used, sold, or offered for sale in the United States more than one year before the effective filing date of the application for the patent.

COURT'S INSTRUCTION NO. 32

For the purposes of determining whether a printed publication constitutes prior art, a printed publication must have been maintained in some tangible form and must have been sufficiently accessible to persons interested in the subject matter of its contents. Information is publicly accessible if it was distributed or otherwise made available to the extent that persons interested and ordinarily skilled in the subject matter exercising reasonable diligence can locate it. It is not necessary for the printed publication to have been available to every member of the public. An issued patent is a printed publication. A published patent application is a printed publication as of its publication date.

COURT'S INSTRUCTION NO. 33

A claimed invention cannot be anticipated by a prior art reference if the allegedly anticipatory disclosures cited as prior art are not enabled. A reference is enabled when its disclosures are sufficient to allow one of skill in the art to make and use the claimed invention. A prior art reference is enabled even if some routine experimentation is required in order to practice the claimed invention, but such experimentation must not be undue. When considering whether or not a prior art reference requires "undue experimentation" we look at the reference from the perspective of a person of ordinary skill in the art.

When a piece of prior art discloses every element of the asserted patent claim, there is a presumption of enablement. The patent holder must present persuasive evidence of non-enablement to overcome this presumption. The patent holder can overcome the presumption by proving by a preponderance of the evidence that the prior art is not enabled.

COURT'S INSTRUCTION NO. 34

In determining whether a single item of prior art anticipates a patent claim, you should take into consideration not only what is expressly disclosed in the particular item of prior art, but also what is inherently present as a natural result of its practice. This is called "inherency." A party claiming inherency must prove it by clear and convincing evidence. To establish inherency, the evidence must make clear that the missing descriptive matter is necessarily present in the reference and that it would be so recognized by persons of ordinary skill in the art. Inherent anticipation, however, does not require that a person of ordinary skill in the art at the time would have recognized the inherent disclosure.

Thus, the prior use of the patented invention that was accidental, or unrecognized and unappreciated can still be an invalidating anticipation. For example, a claim to an apparatus capable of performing a particular function would be anticipated by a structurally-identical prior art device that inherently performed the same function —even if the function inherently performed by the prior art device previously went unrecognized or unappreciated.

You must keep these requirements in mind and apply them to each kind of anticipation you consider in this case.

COURT'S INSTRUCTION NO. 35

An inventor also is not entitled to a patent if his or her invention would have been obvious to a person of ordinary skill in the field of the invention at the time the invention was made. In other words, a patent claim is invalid if it is obvious. Obviousness may be shown by considering more than one item of prior art. The question is, would it have been obvious for a skilled person who knew of the prior art to make the claimed invention? If the answer to that question is yes, then the patent claims are invalid. A party has the burden of proving by clear and convincing evidence that one or more claims of the patent is invalid for obviousness.

Obviousness is determined from the perspective of a person of ordinary skill in the field of the invention. The issue is not whether the claimed invention would have been obvious to you, to me as a judge, or to a genius in the field of the invention. Rather, the question is whether or not the invention would have been obvious to a person of ordinary skill in the field of the invention.

In deciding obviousness, you must avoid using hindsight; that is, you should not consider what is known today or what was learned from the teachings of the patent. You should not use the patent as a road map for selecting and combining items of prior art. You must put yourself in the place of a person of ordinary skill at the time the invention was made.

In determining whether or not these claims would have been obvious, you must make the following determinations:

1. What is the scope and content of the prior art?

2. What differences, if any, are there between the invention of the claims of the patent and the prior art?

3. What was the level of ordinary skill in the art at the time the invention was made?

4. Are there any objective secondary indications of non-obviousness? I will provide more detail about what potential secondary indications of non-obviousness may be considered.

Against this background, you must decide whether or not the invention covered by the patent claims would have been obvious.

1    COURT'S INSTRUCTION NO. 36

2

3    In considering whether the claimed invention was obvious, you must first

4    determine the scope and content of the prior art.

5    The scope and content of prior art for deciding whether the invention was

6    obvious includes prior art in the same field as the claimed invention, regardless of

7    the problem addressed by the item or reference, and prior art from different fields

8    that a person of ordinary skill in the art using common sense might combine if

9    familiar so as to solve the problem, like fitting together the pieces of a puzzle.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COURT'S INSTRUCTION NO. 31

For the purposes of determining whether a printed publication constitutes prior art, a printed publication must have been maintained in some tangible form and must have been sufficiently accessible to persons interested in the subject matter of its contents. Information is publicly accessible if it was distributed or otherwise made available to the extent that persons interested and ordinarily skilled in the subject matter exercising reasonable diligence can locate it. It is not necessary for the printed publication to have been available to every member of the public. An issued patent is a printed publication. A published patent application is a printed publication as of its publication date.

COURT'S INSTRUCTION NO. 38

In making your decision as to the obviousness or non-obviousness of the claimed invention, you should take into account any objective evidence (sometimes called "secondary considerations") that may have existed at the time of the invention and afterwards that may shed light on the obviousness or not of the invention such as:

a. Whether the invention was commercially successful as a result of the merits of the claimed invention (rather than the result of design needs or market pressure advertising or similar activities);

b. Whether the invention satisfied a long-felt need;

c. Whether others had tried and failed to make the invention;

d. Whether others invented the invention at roughly the same time;

e. Whether others copied the invention;

f. Whether there were changes or related technologies, or market needs contemporaneous with the invention;

g. Whether the invention achieved unexpected results;

h. Whether others in the field praised the invention;

i. Whether persons having ordinary skill in the art of the invention expressed surprise or disbelief regarding the invention;

j. Whether others sought or obtained rights to the patent from the patent holder; or

k. Whether the inventor proceeded contrary to accepted wisdom in the field.

COURT'S INSTRUCTION NO. 39

Keep in mind that the existence of each and every element of the claimed invention in the prior art does not necessarily prove obviousness. Most, if not all, inventions rely on building blocks of prior art. In considering whether a claimed invention is obvious, you may but are not required to find obviousness if you find that at the time of the claimed invention there was a reason that would have prompted a person having ordinary skill in the field of technology of the patent to combine the known elements in a way the claimed invention does, taking into account such factors as (1) whether the claimed invention was merely the predictable result of using prior art elements according to their known function(s); (2) whether the claimed invention provides an obvious solution to a known problem in the relevant field; (3) whether the prior art teaches or suggests the desirability of combining elements claimed in the invention; (4) whether the prior art teaches away from combining elements in the claimed invention; and (5) whether it would have been obvious to try the combinations of elements, such as when there is a design need or market pressure to solve a problem and there are a finite number of identified, predictable solutions; and (6) whether the change resulted more from design incentives or other market forces. To find it rendered the invention obvious, you must find that the prior art provided a reasonable expectation of success.

In determining whether the claimed invention was obvious, consider each claim separately. Do not use hindsight, i.e., consider only what was known at the time of the invention.

1    COURT'S INSTRUCTION NO. 40

2

3        It is the duty of the Court to instruct you about the measure of damages.  By

4    instructing you on damages, I am not suggesting that you should award damages or

5    which party should win on any issue.  My instructions about damages are for your

6    guidance only in the event you find at least one asserted claim infringed and valid.

7        If you find that Carucel has proven infringement of at least one valid patent

8    claim by a preponderance of evidence, then you must determine the amount of

9    damages to be awarded to Carucel.

10        While Carucel is not required to prove the amount of its damages with

11    mathematical precision, it must prove them with reasonable certainty.  You may not

12    award damages that are speculative, damages that are only possible, or damages

13    that are based on guess work.

14        Any damages that you award must be adequate to compensate Carucel for the

15    infringement.  They are not meant to punish Novatel and Verizon.

16        The patent law provides that the amount of damages that the accused

17    infringer should pay the patent holder for infringing the patent must be enough to

18    compensate for the infringement, but may not be less than a reasonable royalty for

19    the use of the patent holder's invention.

20        A royalty is a payment made to a patent owner by someone else in exchange

21    for the rights to make, use, sell, or import a patented product.

22        A reasonable royalty is defined as the money amount Carucel and Novatel,

23    and Carucel and Verizon, would have agreed upon as a fee for use of the invention

24    at the time prior to when infringement began.

25        A reasonable royalty may be calculated using one of several approaches,

26    including the hypothetical negotiation approach.

27

28

COURT'S INSTRUCTION NO. _41_

In determining the amount of damages, you will need to determine damages that occurred during the relevant damages period. For the '904 patent, the relevant damages began on May 7, 2009, when Defendants began to sell accused devices. For the '701 patent, the damages period began on December 7, 2010, when the patent issued. For the '023 patent, the damages period began on June 12, 2011, when the patent issued. For the '543 patent, the damages period began on May 6, 2014, when the patent issued. For all of the patents, the damages period ended on June 2, 2015, which is when the patents expired.

COURT'S INSTRUCTION NO. 42

A royalty is a payment made to a patent holder in exchange for the right to make, use, or sell the claimed invention. A reasonable royalty is the amount of royalty payment that a patent holder and the infringer would have agreed to in a hypothetical negotiation taking place at a time prior to when the infringement first began.

In considering this hypothetical negotiation, you should focus on what the expectations of the patent holder and the infringer would have been had they entered into an agreement at that time, and had they acted reasonably in their negotiations. In determining this, you must assume that both parties believed the patent was valid and infringed and the patent holder and infringer were willing to enter into an agreement.

The reasonable royalty you determine must be a royalty that would have resulted from the hypothetical negotiation, and not simply a royalty either party would have preferred.

Evidence of things that happened after the infringement first began can be considered in evaluating the reasonable royalty only to the extent that the evidence aids in assessing what royalty would have resulted from a hypothetical negotiation.

Although evidence of the actual profits an alleged infringer made may be used to determine the anticipated profits at the time of the hypothetical negotiation, the royalty may not be limited or increased based on the actual profits the alleged infringer made.

COURT'S INSTRUCTION NO. 43

In determining the reasonable royalty, you should consider all the facts known and available to the parties at the time the infringement began.  Some of the kinds of factors that you may consider in making your determination are:

(1) The royalties received by the patentee for the licensing of the patent(s)-in-suit, proving or tending to prove an established royalty.

(2) The rates paid by the licensee for the use of other patents comparable to the patent(s)-in-suit.

(3) The nature and scope of the license, as exclusive or nonexclusive, or as restricted or nonrestricted in terms of territory or with respect to whom the manufactured product may be sold.

(4) The licensor's established policy and marketing program to maintain his or her patent monopoly by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that monopoly.

(5) The commercial relationship between the licensor and licensee, such as whether they are competitors in the same territory in the same line of business, or whether they are inventor and promoter.

(6) The effect of selling the patented specialty in promoting sales of other products of the licensee, the existing value of the invention to the licensor as a generator of sales of his nonpatented items, and the extent of such derivative or convoyed sales.

(7) The duration of the patent and the term of the license.

(8) The established profitability of the product made under the patents, its commercial success, and its current popularity.

(9) The utility and advantages of the patented property over the old modes or devices, if any, that had been used for working out similar results.

(10) The nature of the patented invention, the character of the commercial

embodiment of it as owned and produced by the licensor, and the benefits to those who have used the invention.

(11) The extent to which the infringer has made use of the invention and any evidence probative of the value of that use.

(12) The portion of the profit or of the selling price that may be customary in the particular business or in comparable business to allow for the use of the invention or analogous inventions.

(13) The portion of the realizable profits that should be credited to the invention as distinguished from nonpatented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer.

(14) The opinion and testimony of qualified experts.

(15) The amount that a licensor (such as the patentee) and a licensee (such as the infringer) would have agreed upon (at the time the infringement began) if both had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee—who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention—would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a prudent patentee who was willing to grant a license.

No one factor is dispositive and you can and should consider the evidence that has been presented to you in this case on each of these factors. You may also consider any other factors which in your mind would have increased or decreased the royalty the infringer would have been willing to pay and the patent holder would have been willing to accept, acting as normally prudent business people. The final factor establishes the framework which you should use in determining a reasonable royalty, that is, the payment that would have resulted from a negotiation between the patent holder and the infringer taking place at a time prior to when the infringement began.

1       Evidence of things that happened after the infringement first began can be

2 considered in evaluating the reasonable royalty only to the extent that the evidence

3 aids in assessing what royalty would have resulted from a hypothetical negotiation.

4       Although evidence of the actual profits an alleged infringer made may be

5 used to determine the anticipated profits at the time of the hypothetical negotiation,

6 the royalty may not be limited or increased based on the actual profits the alleged

7 infringer made.

COURT'S INSTRUCTION NO. 44

Payment of a reasonable royalty can be structured in different ways, and you may decide whatever payment structure you find is supported by a preponderance of the evidence. One way to calculate a royalty is to determine what is called a "per-unit royalty." To determine a per-unit royalty you should determine the royalty on a per-unit basis multiplied by the number of infringing units that are subject to the royalty as shown by the evidence. Another way to calculate a royalty is to determine a one-time lump sum payment that the infringer would have paid at the time of the hypothetical negotiation for a license covering all sales of the licensed product. This differs from payment of a per-unit royalty because, with a per-unit royalty, the licensee pays based on the number of licensed products it sells. When a one-time lump sum is paid, the infringer pays a single price for a license at the outset of the infringement.

Parties agreeing to a lump-sum royalty agreement may, during the license negotiation, consider the expected or estimated usage (or, for devices, production) of a given invention, assuming proof is presented to support the expectation, because the more frequently inventions are used, the more valuable they generally are and therefore the larger the lump-sum payment. Conversely, a minimally used feature, with all else being equal, will usually command a lower lump-sum payment.

It is for you to determine which form of royalty is appropriate in this case, based on all of the evidence you have heard.

1                     COURT'S INSTRUCTION NO. 45

2                               .

3        In this case, the parties have introduced evidence of licenses in an attempt to

4 establish a reasonable royalty. Past licensing practices of the parties and licenses

5 for similar technology in the industry may be useful for determining a reasonable

6 royalty. In order for a past license to be relevant to the reasonable royalty

7 determination, the license must be sufficiently comparable to the hypothetical

8 license at issue in the case. A loose or vague comparability between different

9 technologies or licenses does not suffice. However, identity of circumstances are

10 not required. In considering past licenses, you must take account of any

11 economically relevant differences in the technologies and economic circumstances

12 between the circumstances of those licenses and the circumstances of the matter in

13 litigation.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COURT'S INSTRUCTION NO. 46

You may find that the patented product is ordinarily or necessarily sold along with another product or service. These other products and services are called "bundled" or "convoyed sales."

To recover a reasonable royalty for Verizon data services, Carucel must prove that the bundled or convoyed services and the patented product are so closely related that they effectively act or are used together for a common purpose. Damages for bundled or convoyed sales, if any, are calculated in the same way as for calculating damages on the patented product.

1

COURT'S INSTRUCTION NO. 47

2

3      If plaintiff Carucel proves that defendants Verizon and Novatel both
4  infringed a valid patent, each defendant is liable for its own infringing acts. You
5  should not consider any evidence in this case regarding indemnification between
6  the defendants as a defense to the issues of infringement and invalidity.  A patent
7  owner is entitled to a finding of infringement and damages against each and every
8  defendant that the patent owner proves by a preponderance of the evidence
9  infringed a valid patent. That award must be at least a reasonable royalty.  And you
10  may consider the relevant Georgia Pacific factors to determine a reasonable royalty.
11  For that reason, you may but are not required to consider indemnification, if at all,
12  solely on the issue of whether it would affect a hypothetical negotiation.

COURT'S INSTRUCTION NO. 48

The parties have stipulated that the total number of Novatel MiFi devices sold by Novatel to entities other than Verizon during the damages period is 2,970,509 and the total number of Novatel MiFi devices sold by Verizon to customers during the damages period is 4,936,879.

If you determine that a reasonable royalty is appropriate, you must award reasonable royalty damages for the MiFi devices sold by Novatel separate and apart from the reasonable royalty damages you may award for MiFi devices sold by Verizon.

For Novatel MiFi devices sold by Verizon to customers, you may not award reasonable royalty damages against both Novatel and Verizon for the same MiFi device unit sale.

COURT'S INSTRUCTION NO. 49

Both parties have relied on other license agreements to help prove the terms of a reasonable royalty. In considering the probative value of other patent licenses, you may only consider comparable licenses. You may also consider whether a license to a patent and a covenant not to sue over that patent are functionally equivalent under the circumstances.

COURT'S INSTRUCTION NO. _50_

When you begin your deliberations, you should elect one member of the jury as your presiding juror (also known as a "foreperson"). That person will preside over the deliberations and speak for you here in court.

You will then discuss the case with your fellow jurors to reach agreement if you can do so. Your verdict must be unanimous.

Each of you must decide the case for yourself, but you should do so only after you have considered all of the evidence, discussed it fully with the other jurors, and listened to the views of your fellow jurors.

Do not hesitate to change your opinion if the discussion persuades you that you should. Do not come to a decision simply because other jurors think it is right. It is important that you attempt to reach a unanimous verdict but, of course, only if each of you can do so after having made your own conscientious decision. Do not change an honest belief about the weight and effect of the evidence simply to reach a verdict.

COURT'S INSTRUCTION NO. 51

A verdict form has been prepared for you. The verdict form is made up of questions. These questions must be answered "yes" or "no" unless other instructions are given. Your answers on each question must be unanimous.

After you have reached unanimous agreement on a verdict, your presiding juror will fill in the form that has been given to you, sign and date it, and advise the court that you are ready to return to the courtroom.

COURT'S INSTRUCTION NO. 52

Because you must base your verdict only on the evidence received in the case and on these instructions, I remind you that you must not be exposed to any other information about the case or to the issues it involves. Except for discussing the case with your fellow jurors during your deliberations:

Do not communicate with anyone in any way and do not let anyone else communicate with you in any way about the merits of the case or anything to do with it. This includes discussing the case in person, in writing, by phone or electronic means, via email, text messaging, or any Internet chat room, blog, website or other feature. This applies to communicating with your family members, your employer, the media or press, and the people involved in the trial. If you are asked or approached in any way about your jury service or anything about this case, you must respond that you have been ordered not to discuss the matter and to report the contact to the court.

Do not read, watch, or listen to any news or media accounts or commentary about the case or anything to do with it; do not do any research, such as consulting dictionaries, searching the Internet or using other reference materials; and do not make any investigation or in any other way try to learn about the case on your own. The law requires these restrictions to ensure the parties have a fair trial based on the same evidence that each party has had an opportunity to address. A juror who violates these restrictions jeopardizes the fairness of these proceedings. If any juror is exposed to any outside information, please notify the court immediately.

COURT'S INSTRUCTION NO. 53

Some of you may have taken notes during the trial. Whether or not you took notes, you should rely on your own memory of what was said. Notes are only to assist your memory. You should not be overly influenced by the notes.

COURT'S INSTRUCTION NO. 54

If it becomes necessary during your deliberations to communicate with me, you may send a note through the bailiff, signed by your presiding juror or by one or more members of the jury. No member of the jury should ever attempt to communicate with me except by a signed writing; I will communicate with any member of the jury on anything concerning the case only in writing, or here in open court. If you send out a question, I will consult with the parties before answering it, which may take some time. You may continue your deliberations while waiting for the answer to any question. Remember that you are not to tell anyone – including me – how the jury stands, numerically or otherwise, until after you have reached a unanimous verdict or have been discharged. Do not disclose any vote count in any note to the court.

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CARUCEL INVESTMENTS, L.P., a Delaware limited partnership,<br><br>                                    Plaintiff,<br><br>v.<br><br>NOVATEL WIRELESS, INC., a Delaware corporation; VERIZON COMMUNICATIONS, INC., a Delaware corporation; and CELLCO PARTNERSHIP d/b/a/VERIZON WIRELESS, a Delaware general partnership,<br><br>                                    Defendants. | Case No.:  16-cv-118-H-KSC<br><br>**JUDGMENT IN FAVOR OF DEFENDANTS** |

On April 4, 2017, this action came before the Court for a jury trial with the Honorable Marilyn L. Huff presiding.  (Doc. No. 316.)  Plaintiff Carucel Investments, L.P. appeared and was represented by Robert F. Ruyak, Brittany V. Ruyak, Michael K. Lindsey, Korula T. Cherian, and Robert M. Harkins, Jr.  Defendants Novatel Wireless, Inc., Verizon Communications, Inc., and Cellco Partnership doing business as Verizon Wireless appeared and were represented by Amardeep L. Thakur, David M. Grable, Bruce R. Zisser,

1

Joshua L. Sohn, and Viola Trebicka.[1]

The jury issues have been tried, and on April 10, 2017, the jury rendered its unanimous verdict on the following questions:

**Question No. 1: Infringement**

Do you find that Carucel has proven, by a preponderance of the evidence, that the MiFi devices have infringed any of the asserted patent claims?

    **a.**    **For the '904 patent:**

        Claim 22  No

        Claim 30  No

    **b.**    **For the '701 patent:**

        Claim 10  No

        Claim 15  No

    **c.**    **For the '023 patent:**

        Claim 11  No

        Claim 23  No

    **d.**    **For the '543 patent:**

        Claim 10  No

(Doc. No. 335.)

///

///

///

---

[1] On September 15, 2015, Plaintiff Carucel dismissed its claims against Defendant TigerDirect, Inc. with prejudice. (Doc. No. 11.) On December 9, 2016, the Court dismissed Defendant AT&T Mobility LLC with prejudice. (Doc. No. 139.)

During the reading of the verdict in Court, an issue arose as to the jury's answers to Question No. 3 regarding "Validity – Obvious or Non-Obvious" in the verdict form. At the hearing, the parties agreed that the jury's answers to Question No. 3 were moot in light of the jury's answers to Question No. 1 in the verdict form. Accordingly, pursuant to the jury's findings the Court enters judgment in favor of Defendants and against Plaintiff.

**IT IS SO ORDERED.**

DATED: April 10, 2017

MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT

3

16-cv-118-H-KSC

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARUCEL INVESTMENTS, L.P., a Delaware limited partnership, | Case No.: 16-cv-118-H-KSC |
| Plaintiff, | **ORDER DENYING PLAINTIFF'S MOTION FOR JUDGMENT AS A MATTER OF LAW OR, IN THE ALTERNATIVE, FOR A NEW TRIAL** |
| v. | |
| NOVATEL WIRELESS, INC., a Delaware corporation; VERIZON COMMUNICATIONS, INC., a Delaware corporation; and CELLCO PARTNERSHIP d/b/a/VERIZON WIRELESS, a Delaware general partnership, | [Doc. No. 348.] |
| Defendants. | |

On May 8, 2017, Plaintiff Carucel Investments, L.P. filed a motion for judgment as a matter of law or, in the alternative, for a new trial. (Doc. No. 348.) On May 26, 2017, Defendants Novatel Wireless, Inc., Verizon Communications, Inc., and Cellco Partnership doing business as Verizon Wireless filed a response in opposition to Plaintiff's motion. (Doc. No. 353.) On June 5, 2017, Plaintiff filed its reply. (Doc. No. 354.)

1

The Court held a hearing on the matter on June 12, 2017.  Robert F. Ruyak and Robert M. Harkins, Jr. appeared for Plaintiff.  Amardeep L. Thakur, Joshua L. Sohn, and Bruce Zisser appeared for Defendants.  For the reasons below, the Court denies Plaintiff's motion for judgment as a matter of law or, in the alternative, for a new trial.

### Background

On May 27, 2015, Plaintiff Carucel Investments, L.P. filed a complaint for patent infringement in the United States District Court for the Southern District of Florida against Defendants Novatel Wireless, Inc., AT&T Mobility LLC, Verizon Communications, Inc., and TigerDirect, Inc., alleging infringement of U.S. Patent No. 7,221,904, U.S. Patent No. 7,848,701, U.S. Patent No. 7,979,023, U.S. Patent No. 8,463,177, U.S. Patent No. 8,718,543, and U.S. Patent No. 8,849,191.[1]  (Doc. No. 1, Compl.)  Specifically, Plaintiff alleged that Defendants' mobile broadband hotspot devices, the MiFi devices, infringe the patents-in-suit.  (Id. ¶¶ 28-29.)

The patents-in-suit are all entitled "Mobile Communication System with Moving Base Station" and share an essentially identical specification.  (See Doc. No. 1, Compl. Exs. A-C, E-F.)  The invention disclosed in the patents-in-suit "relates to cellular telephone systems in which a mobile unit communicates by wireless communication to a base station connection to the wire telephone network and more particularly to cellular telephone systems adapted for use with fast-moving mobile units."  '904 Patent at 1:16-19.  The specification details the problems that prior art telecommunications systems had with fast-moving mobile units, particularly the problem of dealing with transfers of fast-moving mobile units between stationary cell sites as the mobile units move through the cellular network.  See id. at 1:22-2:61.  The specification provides the following summary of the invention:

> These and other problems of the prior art are overcome in accordance with this invention by means of a moving base station which is interposed between

---

[1]    The '177 and '191 patents are no longer asserted in this action.  (Doc. No. 198; Doc. No. 277 at 3, 5.)

a moving mobile telephone unit and a fixed base station.  In accordance with this invention, a movable base station moves with the traffic at a rate of speed which is comparable to the speed of the traffic and communicates with a moving mobile telephone unit via standard mobile radio transmission.  The movable base station further communicates by radio signals with a plurality of fixed antennas spaced along the path of travel of the mobile base station. The several fixed antennas are connected to a telephone wire line network via a telephone gateway office in a standard fashion.  In accordance with this invention, the fixed radio ports are synchronized and the interface between the moving base station and the fixed radio ports is a time division multiplexed (TDM)-direct-sequence, spread-spectrum CDMA.

<u>Id.</u> at 3:18-34.  Figure 1 of the '904 patent displays an embodiment of the claimed system:



As an example of the claimed invention, Claim 22 of the '904 Patent provides:

An apparatus adapted to move in accordance with a movement of a mobile unit moving relative to a plurality of fixed radio ports, the apparatus

3

16-cv-118-H-KSC

comprising:

a receiver adapted to receive a plurality of signals, each of the plurality of signals transmitted from each of the plurality of fixed radio ports within a frequency band having a lower limit greater than 300 megahertz;

a transmitter adapted to transmit, within the frequency band, a resultant signal to the mobile unit in accordance with at least one of the plurality of signals; and

a processor adapted to maximize an amount of transferred information to the mobile unit by evaluating a quality of each of the plurality of signals transmitted from the plurality of fixed radio ports.

Id. at 12:65-13:11.

On September 15, 2015, Carucel dismissed its claims against Defendant TigerDirect, Inc. with prejudice.  (Doc. No. 11.)  On December 16, 2015, Carucel filed a first amended complaint alleging infringement of the same six patents and adding as a new Defendant Cellco Partnership d/b/a Verizon Wireless.  (Doc. No. 58.)

On January 15, 2016, the action was transferred to the Southern District of California.  (Doc. Nos. 69-70.)  On September 19, 2016, the Court issued a claim construction order construing the disputed terms in the patents-in-suit.  (Doc. No. 131.)  On December 9, 2016, the Court dismissed Defendant AT&T with prejudice.  (Doc. No. 139.)

On March 2, 2017, the Court denied Defendants' motion for summary judgment. (Doc. No. 226.)  On April 3, 2017, the Court issued an order on the parties' Daubert motions and motions in limine.  (Doc. No. 305.)

The Court held a jury trial beginning on April 4, 2017.  (Doc. No. 316.)  On April 10, 2017, the jury returned a verdict finding that Plaintiff had failed to prove that any of the accused products infringed any of the asserted patent claims.[2]  (Doc. No. 335 at 2.)  On

---

[2] During the reading of the verdict in Court, an issue arose as to the jury's answers to Question No. 3 regarding "Validity – Obvious or Non-Obvious" in the verdict form.  At the hearing, the parties agreed that the jury's answers to Question No. 3 were moot in light of the jury's answers to Question No. 1 regarding "Infringement" in the verdict form.  (Doc. No. 341, Trial Tr. Vol. V at 6-7.)

4

April 10, 2017, the Court entered judgment in favor of Defendants and against Plaintiff. (Doc. No. 336.)  By the present motion, Plaintiff moves pursuant to Federal Rule of Civil Procedure 50(b) for judgment as a matter of law in its favor on the issue of infringement or, in the alternative, for a new trial under Rule 59.  (Doc. No. 348-1.)

## Discussion

## I.    Legal Standards

### A.    Rule 50 Motion for Judgment as a Matter of Law

In a patent case, a motion for judgment as a matter of law is governed by the law of the regional circuit, here the Ninth Circuit.  InTouch Techs., Inc. v. VGO Commc'ns, Inc., 751 F.3d 1327, 1338 (Fed. Cir. 2014).  Under Federal Rule of Civil Procedure 50, a court should render judgment as a matter of law ("JMOL") only when "a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue . . . ."  Fed. R. Civ. P. 50(a)(1); see Reeves v. Sanderson Plumbing Prods., 530 U.S. 133, 149 (2000).  In other words, judgment as a matter of law is proper when "the evidence, construed in the light most favorable to the nonmoving party, permits only one reasonable conclusion, and that conclusion is contrary to the jury's verdict."  Pavao v. Pagay, 307 F.3d 915, 918 (9th Cir. 2002); accord InTouch Techs., 751 F.3d at 1338; see also Hangarter v. Provident Life & Accident Ins. Co., 373 F.3d 998, 1005 (9th Cir. 2004) ("JMOL should be granted only if the verdict is 'against the great weight of the evidence, or it is quite clear that the jury has reached a seriously erroneous result.'"); Reeves, 530 U.S. at 150 ("[T]he standard for granting summary judgment 'mirrors' the standard for judgment as a matter of law.").  In contrast, "[a] jury's verdict must be upheld if it is supported by substantial evidence, which is evidence adequate to support the jury's conclusion, even if it is also possible to draw a contrary conclusion."  Pavao, 307 F.3d at 918.

In deciding a motion for judgment as a matter of law, a court "must view all evidence in the light most favorable to the nonmoving party, draw all reasonable inferences in the favor of the non-mover, and disregard all evidence favorable to the moving party that the

5

jury is not required to believe." <u>Harper v. City of Los Angeles</u>, 533 F.3d 1010, 1021 (9th Cir. 2008); <u>see</u> <u>Reeves</u>, 530 U.S. at 150-51.  A district court "may not make credibility determinations or weigh the evidence." <u>Reeves</u>, 530 U.S. at 150.  "'[T]he court must accept the jury's credibility findings consistent with the verdict' . . . [and] 'may not substitute its view of the evidence for that of the jury.'" <u>Winarto v. Toshiba Am. Elecs. Components, Inc.</u>, 274 F.3d 1276, 1283 (9th Cir. 2001).

> B.     Rule 59 Motion for New Trial

In a patent case, a motion for a new trial is also governed by the law of the regional circuit. <u>InTouch Techs.</u>, 751 F.3d at 1338.  Under Federal Rule of Civil Procedure 59(a), a district court "may, on motion, grant a new trial on all or some of the issues–and to any party– . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court."  "Rule 59 does not specify the grounds on which a motion for a new trial may be granted.  Rather, the court is bound by those grounds that have been historically recognized." <u>Molski v. M.J. Cable, Inc.</u>, 481 F.3d 724, 729 (9th Cir. 2007) (internal citations and quotation marks omitted).  In the Ninth Circuit, "'[t]he trial court may grant a new trial only if the verdict is contrary to the clear weight of the evidence, is based upon false or perjurious evidence, or to prevent a miscarriage of justice.'" <u>Id.</u>; <u>see also</u> <u>Lucent Techs., Inc. v. Gateway, Inc.</u>, 580 F.3d 1301, 1309 (Fed. Cir. 2009) ("[A] district court in the Ninth Circuit 'may grant a new trial only if the verdict is against the clear weight of the evidence.'").  "Unlike with a Rule 50 determination, [a] district court, in considering a Rule 59 motion for new trial, is not required to view the trial evidence in the light most favorable to the verdict.  Instead, the district court can weigh the evidence and assess the credibility of the witnesses." <u>Experience Hendrix L.L.C. v. Hendrixlicensing.com Ltd</u>, 762 F.3d 829, 842 (9th Cir. 2014).  "'[A] district court may not grant a new trial simply because it would have arrived at a different verdict.'" <u>Wallace v. City of San Diego</u>, 479 F.3d 616, 630 (9th Cir. 2007).

"The grant of a new trial is 'confided almost entirely to the exercise of discretion on the part of the trial court.'" <u>Murphy v. City of Long Beach</u>, 914 F.2d 183, 186 (9th Cir.

16-cv-118-H-KSC

1990) (quoting <u>Allied Chem. Corp. v. Daiflon, Inc.</u>, 449 U.S. 33, 36 (1980)).  On appeal, the Ninth Circuit "afford[s] considerable deference to the district court's new trial decision and will not overturn the district court's decision to grant a new trial absent an abuse of discretion."  <u>Experience Hendrix</u>, 762 F.3d at 842.  A district court's "denial of a motion for a new trial is reversible 'only if the record contains no evidence in support of the verdict' or if the district court 'made a mistake of law.'"  <u>E.E.O.C. v. Go Daddy Software, Inc.</u>, 581 F.3d 951, 962 (9th Cir. 2009).

### C.    Infringement

Under 35 U.S.C. § 271(a), "whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States . . . infringes the patent."  A patent infringement analysis proceeds in two steps.  <u>Markman v. Westview Instruments, Inc.</u>, 52 F.3d 967, 976 (Fed. Cir. 1995), <u>aff'd</u> 517 U.S. 370.  In the first step, the court construes the asserted claims as a matter of law.  <u>See id.</u>  In the second step, the factfinder compares the claimed invention to the accused device.  <u>Id.</u>; <u>see also</u> <u>Verizon Servs. Corp. v. Cox Fibernet Va., Inc.</u>, 602 F.3d 1325, 1340 (Fed. Cir. 2010) ("A determination of infringement is a question of fact . . . .").

The patentee bears the burden of proving infringement.  <u>Medtronic, Inc. v. Mirowski Family Ventures, LLC</u>, 134 S. Ct. 843, 846, 849 (2014).  "To prove literal infringement, the patentee must show that the accused device contains every limitation in the asserted claims.  If even one limitation is missing or not met as claimed, there is no literal infringement."  <u>Riles v. Shell Exploration & Prod. Co.</u>, 298 F.3d 1302, 1308 (Fed. Cir. 2002); <u>accord</u> <u>Uniloc USA, Inc. v. Microsoft Corp.</u>, 632 F.3d 1292, 1301 (Fed. Cir. 2011).

## II.    Analysis of Plaintiff's Motion

Each of the claims asserted at trial from the patents-in-suit contains language stating that the claimed apparatus/movable base station/transmitter is "adapted to" or "configured to" move.  (<u>See</u> Doc. No. 348-1 at 5.)  In the Court's claim construction order, the Court construed "the terms 'adapted to' and 'configured to' as 'constructed to move with the traffic at a rate of speed which is comparable to the speed of the traffic.'"  (Doc. No. 131

7

at 16.)  All of the arguments in Plaintiff's motion center around the "adapted to/configured to" claim limitation.

### A.    The Court's Claim Construction

As an initial matter, in its motion, Plaintiff argues that the Court's claim construction for the term "adapted to/configured to" was erroneous.  (Doc. No. 348-1 at 21-23.) Specifically, Plaintiff argues that the Court erred in construing the term "adapted to/configured to" by finding that the specification contained a disclaimer for that claim term.  (Id.)  In response, Defendants argue that Plaintiff has waived any right to request a revised claim construction for this claim term.  (Doc. No. 353 at 7-8.)  Defendants further argue that the Court's construction for this term was proper and that Plaintiff has failed to provide a sufficient basis for reconsideration of the construction.  (Id. at 17-21.)

The Court agrees with Defendants that Plaintiff waived its right to contest the Court's finding of a disclaimer with respect to the claim term "adapted to/configured to." See Cordis Corp. v. Boston Sci. Corp., 561 F.3d 1319, 1331 (Fed. Cir. 2009) ("[L]itigants waive their right to present new claim construction disputes if they are raised for the first time after trial.").  In their claim construction briefing, Plaintiff proposed that the term "adapted to" be given its plain meaning and be construed as "adjusted to a specified use or situation."  (Doc. No. 123 at 17.)  In addition, Plaintiff proposed that the term "configured to" be given its plain meaning and be construed as "shaped, fashioned, or constructed to." (Id. at 17.)  Defendants argued that the terms "adapted to" and "configured to" should be construed as "constructed to move by a conveying device to track the movement of a mobile unit," or at the very least be construed as "constructed to."  (Doc. No. 120 at 16.)

On September 14, 2016, the Court issued a tentative claim construction order rejecting the parties' proposed constructions and "tentatively constru[ing] the terms 'adapted to' and 'configured to' as 'constructed to move with the traffic at a rate of speed which is comparable to the speed of the traffic.'"  (Doc. No. 129 at 16.)  In the tentative order, the Court explained that its tentative construction was based on a disclaimer contained in the specification describing the invention as a whole.  (Id. at 14-15 (citing

Pacing Techs., LLC v. Garmin Int'l, Inc., 778 F.3d 1021, 1025 (Fed. Cir. 2015); Regents of Univ. of Minnesota v. AGA Med. Corp., 717 F.3d 929, 936 (Fed. Cir. 2013).)  At the claim construction hearing, Plaintiff did not contest the Court's tentative claim construction.  At the beginning of the claim construction hearing, counsel for Plaintiff stated: "Your Honor, for Plaintiff, we'll go ahead and submit on the tentative."  (Doc. No. 352 at 1-2.)  Following the hearing, the Court issued its claim construction order adopting the same construction and supporting analysis for the term "adapted to/configured to" contained in the Court's tentative order.  (Doc. No. 131 at 16.)  Plaintiff never moved for reconsideration or clarification of the Court's claim construction for the term "adapted to/configured to" prior to trial.  By waiting until post-trial motions to contest the Court's construction for the term "adapted to/configured to" and the Court's disclaimer finding related to that term, Plaintiff waived the specific claim construction arguments that it now seeks to present.  See Cordis, 561 F.3d at 1331 ("[L]itigants waive their right to present new claim construction disputes if they are raised for the first time after trial."); GPNE Corp. v. Apple Inc., 108 F. Supp. 3d 839, 850 (N.D. Cal. 2015).

Further, even assuming Plaintiff did not waived its challenge to the Court's claim construction for the term "adapted to/configured to," Plaintiff has failed to present a sufficient basis for the Court to reconsider or alter its construction for that term.  The specification for the patents-in-suit provides:  "In accordance with this invention, a movable base station moves with the traffic at a rate of speed which is comparable to the speed of the traffic and communicates with a moving mobile telephone unit via standard mobile radio transmission."  '904 Patent at 3:21-25.  Here, the specification is clearly describing the invention as a whole and not merely a preferred embodiment of the invention.  The Federal Circuit has explained: "When a patentee describes the features of the present invention as a whole, he alerts the reader that this description limits the scope of the invention."  Pacing Techs., 778 F.3d at 1025; accord Regents of Univ. of Minnesota, 717 F.3d at 936.

The Court acknowledges that the Federal Circuit has also explained that "that use of

the phrase 'present invention' or 'this invention' is not always so limiting, such as where the references to a certain limitation as being the 'invention' are not uniform, or where other portions of the intrinsic evidence do not support applying the limitation to the entire patent." <u>Absolute Software, Inc. v. Stealth Signal, Inc.</u>, 659 F.3d 1121, 1136 (Fed. Cir. 2011).  But Plaintiff has failed to show that this is a situation where the references to the limitation as being part of the invention as a whole are not uniform or where other portions of the intrinsic record are to the contrary.  In arguing that the specification does not support the Court's claim construction, Plaintiff identifies the following language in the specification:

> In operation, the moving base stations 30 may move in the direction of the flow of the traffic at a rate of, for example, 60 miles per hour, which may be faster than some traffic and slower than other traffic.  The moving base station preferably handles telecommunications with mobile units which travel at a rate of not more than 30 miles per hour faster or slower than the moving base station.  For example, the moving base stations 30, 40 may be traveling at the rate of 60 miles per hour to accommodate traffic moving in the range of 30 to 90 miles per hour.  In the arrangement of FIG. 1, fixed base stations 70 would accommodate communications with mobile units traveling at a speed of less than 30 miles per hour including pedestrian traffic and stationary units. It will be readily apparent that instead of having fixed and moving base stations as depicted in FIG. 1, slowly moving and rapidly moving units may be used as well.

'904 Patent at 4:39-54.  (Doc. No. 348-1 at 20, 22-23.)  But this portion of the specification is consistent with the Court's construction for the term "adapted to/configured to" as "constructed to move with the traffic at a rate of speed which is comparable to the speed of the traffic."  Here, the specification describes a system where the moving base station moves in the direction of the flow of traffic at a specific rate of speed, 60 miles per hour, that is comparable to the speed of the traffic at issue, which is traveling at 30 to 90 miles per hour.  In the described system, any traffic moving slower than 30 miles per hour would utilize a different base station, either a fixed base station or a slower moving base station. Accordingly, the Court declines to reconsider its construction for the claim term "adapted

to/configured to."  The Court's construction for the term "adapted to/configured to" remains "constructed to move with the traffic at a rate of speed which is comparable to the speed of the traffic."

B.    Infringement

As the patentee, Plaintiff bore the burden of establishing at trial that the accused products contain every limitation in the asserted claims, including the "adapted to/configured to" limitation as construed by the Court.[3]  See Riles, 298 F.3d at 1308; Uniloc, 632 F.3d at 1301.  Thus, Plaintiff held that burden of proving to the jury that the accused products were constructed to move with the traffic at a rate of speed which is comparable to the speed of the traffic.  (See Doc. No. 131 at 16.)

The jury's finding of non-infringement was supported by substantial evidence and was not against the clear weight of evidence.  As an initial matter, the Court addresses Plaintiff's contention that it proved infringement as a matter of law and that there is no legal basis for the jury's non-infringement finding because the evidence at trial showed that the accused products are capable of being operated while in a moving in a car that is traveling in traffic.  (See Doc. No. 348-1 at 11 ("[T]he evidentiary record is clear, based on Defendants' own admission, that the accused devices were built to work in traffic and were tested extensively to work in various traffic conditions and speeds.").)  The Court agrees with Defendants that this argument by Plaintiff fails to give full meaning to the Court's claim construction for the term "adapted to/configured to."  (See Doc. No. 353 at 9.)  The

---

[3]    The Court notes that Plaintiff appears to imply that Defendants bore the burden at trial of proving their non-infringement theory.  (See, e.g., Doc. No. 348-1 at 11 ("[W]hether Caurcel is entitled to judgment of non-infringement based on the evidence at trial is determined by whether Defendants presented sufficient evidence for a reasonable jury to conclude that its accused MiFi products did not meet the singular 'constructed to move' limitation.").)  Plaintiff, not Defendants, bears the burden of proof with respect to infringement.  See Medtronic, Inc. v. Mirowski Family Ventures, LLC, 134 S. Ct. 843, 849 (2014) ("It is well established that the burden of proving infringement generally rests upon the patentee."); Creative Compounds, LLC v. Starmark Labs., 651 F.3d 1303, 1314 (Fed. Cir. 2011) ("'The patentee bears the burden of proving infringement by a preponderance of the evidence.'  If the patentee fails to meet that burden, the patentee loses regardless of whether the accused comes forward with any evidence to the contrary." (citation omitted)).

Court's claim construction for the term "adapted to/configured to" requires not only that the moving base station is "constructed to move with the traffic" but that it is constructed to move "at a rate of speed which is comparable to the speed of the traffic."

As shown at trial by Plaintiff's own infringement expert, this limitation is not met by simply placing an operating base station in a moving vehicle that is traveling with traffic. At trial, when discussing the prior art reference Uhlirz, Plaintiff's expert, Dr. Kiasaleh, testified that the "adapted to/configured to" claim limitation is not satisfied by simply placing a base station on a moving train that travels along a highway with moving cars. (Doc. No. 340, Trial Tr. Vol. IV at 140; see also id. at 137-141.) Dr. Kiasaleh explained that that particular example was insufficient to satisfy the claim limitation because the speed of the train "is not comparable to [the] rate of traffic." (Doc. No. 340, Trial Tr. Vol. IV at 140.) Thus, Plaintiff's own expert recognized that the Court's claim construction for the term "adapted to/configured to" requires not only that the moving base station is "constructed to move with the traffic" but that it is constructed to move "at a rate of speed which is comparable to the speed of the traffic."

There was ample evidence presented at trial to allow a reasonable juror to conclude that the accused MiFi devices do not infringe the patents-in-suit. At trial, Dr. Slim Souissi, Novatel's former CTO, explained that the accused MiFi devices are portable "like a phone" in that they "can work in any environment, mobile or static." (Doc. No. 337, Trial Tr. Vol. I at 232.) He further explained that because they are portable, they can operate in a "train, car, anything that moves." (Id. at 233.) He also testified that the devices were tested in moving vehicles, but that during the testing, they did not "intentionally set [specific] speeds" for the cars. (Id. at 235-36.) He testified that they only needed to ensure that the devices could operate in normal vehicle conditions. (Id. at 236.) Mr. Tidke, Novatel's Director of Software Engineering, further explained in regards to that testing that the MiFi device has no knowledge of what speed it is traveling at, and it is not aware of any other vehicles around it while it is traveling. (Doc. No. 339, Trial Tr. Vol. III at 32-33.) Similarly, Defendants' expert, Dr. Kenney, testified that the MiFi devices have no way of

telling how fast they might be moving or if they are moving at all and that they have no cognition of any surrounding traffic.[4] (Id. at 84, 102; see also id. at 79-85.)  In addition, Charles Gavrilovich, Jr., a patent attorney and Carucel partner, testified that he qualified as a person of ordinary skill in the art, had written the claims of each of the patents-in-suit, and was very familiar with those claims.  (Doc. No. 337, Trial Tr. Vol. I at 84, 87-90, 158-59.)  Despite his knowledge, Mr. Gavrilovich testified that in 2011, he had an opportunity to use a MiFi device, but did not conclude at that time that the device infringed the patents-in-suit.  (Id. at 140, 159.)  This evidence along with the testimony from Plaintiff's expert Dr. Kiasaleh provided ample and substantial evidence for the jury to find that the accused products did not infringe the patents-in-suit in light of the "adapted to/configured to" claim limitation because the devices were not constructed to move with the traffic at a rate of speed which is comparable to the speed of the traffic.  Whether the accused products satisfied the the "adapted to/configured to" claim limitation was a triable issue of fact, and the jury chose to resolve that factual dispute in favor of Defendants.

Further, the Court rejects Plaintiff's contention that the verdict runs contrary to the Court's claim construction order.  (See Doc. No. 348-1 at 1-2, 23.)  Specifically, the Court rejects Plaintiff's assertion that the Court is altering its prior claim construction.  (See id.)  As the patentee, Plaintiff bore the burden of proving infringement at trial, which included proving that the accused MiFi devices satisfy the "the "adapted to/configured to" claim limitation.  See Riles, 298 F.3d at 1308; Uniloc, 632 F.3d at 1301.  To do so, Plaintiff needed to prove not only that the accused products were "constructed to move with the traffic" but also that they were constructed to move "at a rate of speed which is comparable to the speed of the traffic" under the claim construction set forth in the Court's September

---

[4]     The Court notes that Plaintiff did not object to this testimony from Dr. Kenney and Mr. Tidke. (See Doc. No. 339, Trial Tr. Vol. III at 79-85.)  Plaintiff failed to object despite the Court explaining in its order on Plaintiff's Motion in Limine No. 4 that "any concerns about a party presenting argument or testimony that is contrary to the Court's claim constructions at trial" should be addressed through a contemporaneous objection at trial.  (Doc. No. 305 at 32.)

19, 2016 claim construction order. (See Doc. No. 131 at 16.)  There was ample evidence at trial to allow the jury to conclude that Plaintiff failed to meet its burden on that issue.

Similarly, the Court also rejects Plaintiff's contention that the jury's non-infringement verdict is contrary to the Court's summary judgment order.  In the summary judgment order, the Court concluded that there was a triable issue of fact as to whether the accused products satisfied the "adapted to/configured to" claim limitation.  (Doc. No. 226 at 7-9.)  Unfortunately for Plaintiff, and the jury resolved that dispute in Defendants' favor.[5]

Finally, the Court rejects Plaintiff's assertion that the jury failed to follow the Court's claim constructions and the Court's jury instructions.  (Doc. No. 348 at 14-16.)  Plaintiff's argument regarding the jury is based on its erroneous assumption that no reasonable jury could have found non-infringement based on the evidence presented at trial.  (See id. at 15-16.)  As explained above, there was ample evidence at trial that would permit a reasonable jury to find that the accused products do not infringe the patents-in-suit.  In addition, the Court specifically notes that in presiding over the trial, the Court had ample opportunity to observe the jury, and the Court found the jury to be intelligent and attentive.  "A jury is presumed to follow its instructions."  Weeks v. Angelone, 528 U.S. 225, 234 (2000).  And there is simply no evidence in the record showing that any of the jurors failed to follow the Court's instructions.

In sum, the jury's non-infringement verdict was supported by substantial evidence and was not against the clear weight of evidence.[6]  Accordingly, the Court denies Plaintiff's

_____

[5]      Indeed, the Court notes that although Plaintiff now asserts that the evidence in the record conclusively shows that it satisfied the "adapted to/configured to" claim limitation as a matter of law, Plaintiff did not move for summary judgment on that issue.  (See Doc. Nos. 202; 231.)  Cf. Reeves, 530 U.S. at 150 ("[T]he standard for granting summary judgment 'mirrors' the standard for judgment as a matter of law.").  Further, Plaintiff did not make a Rule 50(a) motion on infringement.  Plaintiff's Rule 50(a) motion only addressed the issue of invalidity.  (See Doc. No. 340, Trial Tr. IV at 154-55.)

[6]      Although the Court addresses the merits of Plaintiff's Rule 50(b) motion, the Court agrees with Defendants that Plaintiff waived its right to file a Rule 50(b) motion on the issue of infringement.  "A Rule 50(b) motion for judgment as a matter of law is not a freestanding motion.  Rather, it is a renewed

1    motion for judgment as a matter of law and Plaintiff's motion for a new trial.[7]

2    ─────────────────────

3    Rule 50(a) motion." E.E.O.C. v. Go Daddy Software, Inc., 581 F.3d 951, 961 (9th Cir. 2009). "Because
     it is a renewed motion, a proper post-verdict Rule 50(b) motion is limited to the grounds asserted in the
4    pre-deliberation Rule 50(a) motion. Thus, a party cannot properly 'raise arguments in its post-trial
     motion for judgment as a matter of law under Rule 50(b) that it did not raise in its preverdict Rule 50(a)
5    motion.'" Id.; accord Duro-Last, Inc. v. Custom Seal, Inc., 321 F.3d 1098, 1105 (Fed. Cir. 2003) ("A
     post-verdict JMOL motion may not be made on grounds not included in the earlier motion."); see also
6    i4i Ltd. P'ship v. Microsoft Corp., 598 F.3d 831, 845 (Fed. Cir. 2010) ("[A] party must file a pre-verdict
     JMOL motion on all theories, and with respect to all prior art references, that it wishes to challenge with
7    a post-verdict JMOL.").

8

9        At trial, Plaintiff made a Rule 50(a) motion, but its Rule 50(a) motion only addressed the issue of
     invalidity; it did not address the issue of infringement. (See Doc. No. 340, Trial Tr. Vol. IV at 154-55
10   ("Plaintiff, Carucel, moves under Rule 50 for judgment as a matter of law for the failure of Novatel and
     Verizon to prove that the patents, any of the patent claims are invalid.").) Plaintiff does not dispute this.
11   Instead, Plaintiff argues that the Court should construe one of its motions in limine as a Rule 50(a)
     motion on the issue of infringement. (Doc. No. 354 at 6-7.) But Plaintiff fails to cite to any case
12   authority where a court has construed a motion in limine as a Rule 50(a) motion. To the contrary, courts
     have held that pre-trial motions do not suffice for a Rule 50(a) motion. See Amor Ministries v. Century
13   Sur. Co., No. 313CV01441GPCBGS, 2016 WL 1388077, at *6 (S.D. Cal. Apr. 7, 2016) ("Nor can
     motions made pre–trial suffice for a Rule 50(a) motion."); Sophia & Chloe, Inc. v. Brighton
14   Collectibles, Inc., No. 12-CV-2472-AJB-KSC, 2016 WL 3211800, at *3 (S.D. Cal. Mar. 21, 2016); see,
     e.g., Tortu v. Las Vegas Metro. Police Dep't, 556 F.3d 1075, 1082 (9th Cir. 2009) (holding party's
15   "motions made pre-trial and during trial . . . do not compensate for his failure to file a Rule 50(a)
     motion"). Accordingly, Plaintiff waived the challenges to the jury's finding of non-infringement
16   presented in its Rule 50(b) motion.

17

18       In addition, the Court does not find persuasive Plaintiff's reliance on Padgett v. Wright, 516 F.
     App'x 609, 611 (9th Cir. 2013). (Doc. No. 354 at 7.) In Padgett, the Ninth Circuit in an unpublished
19   decision held that judgment as a matter of law could be entered in favor of a defendant, despite his
     failure to make a Rule 50(a) motion, "because there was not 'any evidence to support' a verdict against
20   him and a failure to enter judgment in his favor would result in 'a manifest miscarriage of justice.'" 516
     F. App'x at 611. But Padgett is easily distinguishable from the present case. Here, there was ample
21   evidence supporting the jury's verdict of non-infringement. In addition, here, it is the Plaintiff – the
     party bearing the burden of proof on the relevant issue – that failed to bring the Rule 50(a) motion,
22   unlike in Padgett where it was a defendant that failed to bring the Rule 50(a) motion.

23

24   [7]    In its motion, Plaintiff also argues that the Court should amend the judgment pursuant to Federal
     Rule of Civil Procedure 60(b)(6). (Doc. No. 348-1 at 4, 13-14.) Plaintiff argues that allowing the
25   judgment to stand would result in a miscarriage of justice. (Id. at 14.) The Court rejects Plaintiff's
     argument. Because the jury's finding of non-infringement was supported by substantial evidence and
26   was not against the clear weight of evidence, allowing the judgment to stand would not result in a
     miscarriage of justice. See Lal v. California, 610 F.3d 518, 524 (9th Cir. 2010) (explaining that Rule
27   60(b)(6) is to be used "'sparingly as an equitable remedy to prevent manifest injustice'"). In addition,
     Plaintiff has failed to identify any extraordinary circumstances that would warrant relief under Rule
28   60(b)(6). See Lal, 610 F.3d at 524 ("To receive relief under Rule 60(b)(6), a party must demonstrate

16-cv-118-H-KSC

1    **Conclusion**

2    For the reasons above, the Court denies Plaintiff's motion for judgment as a matter

3    of law or, in the alternative, for a new trial.

4    **IT IS SO ORDERED.**

5    DATED:  June 13, 2017

6    _____
     MARILYN L. HUFF, District Judge

7    UNITED STATES DISTRICT COURT

8

9

10

11

12

13

14

15

16

17

18

19

20

21    _____

22    'extraordinary circumstances which prevented or rendered him unable to prosecute [his case].'"); <u>Wood</u>

23    <u>v. Ryan</u>, 759 F.3d 1117, 1120 (9th Cir. 2014) ("The party seeking relief under Rule 60(b)(6) must show
      '"extraordinary circumstances" justifying the reopening of a final judgment.'").

24
         In addition, in its motion, Plaintiff requests that the Court should alter or amend the judgment
25    pursuant to Rule 59(e).  (Doc. No. 348-1 at 2-4.)  But Plaintiff fails to support this request with any
      analysis other than a general statement that the Court should amend the judgment.  (<u>See</u> <u>id.</u>)
26    Accordingly, the Court also denies Plaintiff's motion to alter or amend the judgment under Rule 59(e).
      <u>See</u> <u>Allstate Ins. Co. v. Herron</u>, 634 F.3d 1101, 1111 (9th Cir. 2011) ("A Rule 59(e) motion is '"an
27    extraordinary remedy which should be used sparingly.'"); <u>Exxon Shipping Co. v. Baker</u>, 554 U.S. 471,
      486 n.5 (2008) (A Rule 59(e) motion '"may not be used to relitigate old matters, or to raise arguments or
28    present evidence that could have been raised prior to the entry of judgment.'").

16-cv-118-H-KSC